IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| TIMM ADAMS, et al., | ) | Case No. CV-03-49-E-BLW |
| | ) | |
| Plaintiffs, | ) | **ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## INTRODUCTION

The Court has before it a number of pending motions.  The Court heard oral argument on July 25, 2007, and took the motions under advisement.  For the reasons expressed below, the Court will (1) establish a litigation plan that borrows the best parts of the proposals of the parties; (2) deny DuPont's motion to compel on the ground that the Court's litigation plan addresses DuPont's major concerns; and (3) withdraw the reference to the Special Master.

**Memorandum Decision and Order – Page 1**

## ANALYSIS

### 1.    <u>Litigation Plan</u>

A number of the pending motions have raised the issue of how this litigation should proceed.  This case is huge.  Some 400 plaintiffs claim crop damage on 1,500 fields over a six year period.  They have produced 1.5 million documents in response to discovery requests thus far.

To this point, the litigation has been governed by the Case Management Order (CMO).  The CMO only governs early discovery, known as Phase One discovery.  The pending motions propose plans to establish how this litigation will proceed after Phase One is completed.

The Government's proposal seeks to resolve causation issues first, believing that attention to this purported weak link in plaintiffs' case would reduce considerably the number of claims.  DuPont suggests proceeding with a representative group of bellweather plaintiffs to produce a result that might prompt settlement of remaining claims.  The plaintiffs' first choice is simply to proceed to a full trial on all claims, while their second choice is to bifurcate the case into an initial trial on liability and "general causation," and a second trial on specific causation and damages.

**Memorandum Decision and Order – Page 2**

While each plan has merit, each also has drawbacks that ultimately render it unworkable. The Government's plan would not save much time because the causation issue eclipses all other issues, comprising perhaps as much as 90% of the entire case. DuPont's plan overstates the potential for settlement of non-bellweather claims. Plaintiff's plans ignore the overwhelming complexity of a single mega-trial, as well as the potential benefits of a bellweather trial – including the preclusive effect of a decision in the bellweather trials on common factual and legal issues.

A better approach would combine the best parts of these plans: A bellweather trial with preclusive effect. This approach has a number of benefits. First, it limits the discovery to a manageable number of bellweather plaintiffs, at least for now. Second, it moves more quickly to the summary judgment stage where some hotly contested issues might be resolved, such as the legal sufficiency of plaintiffs' causation evidence and the legal basis for claims against the applicators. Third, it makes trial manageable, given the limited number of bellweather plaintiffs. Fourth, it prevents the repetition of testimony in the trials to come because the initial jury verdict (and bench decision in the case against the Government) will have preclusive effect on common issues.

This approach would begin with plaintiffs picking a limited number of

bellweather plaintiffs (say, 5 to 10) to proceed to trial on all issues – negligence, causation, and damages.  Discovery would be limited to those bellweather plaintiffs.

When discovery on the bellweather plaintiffs was complete, summary judgment proceedings could examine issues such as (1) the legal sufficiency of plaintiffs' causation evidence (*i.e.,* Are claims lacking field-by-field data on herbicide use, irrigation, and/or yields legally sufficient?), and (2) the legal basis for claims against the applicators.

The bellweather trial would involve both a bench trial (on the Government's liability) and a jury trial (on the other defendants' liability).  The jury would answer a detailed Special Verdict Form containing questions on all aspects of negligence, causation, and damages.  The jury's answers would have preclusive effect on common issues in the trial of the remaining claims.

The precise findings that would be accorded preclusive effect (following the bellweather trial) will be identified after further briefing.[1]  Likely candidates for preclusion could include answers to the following questions:  (1) Was DuPont negligent in its design, manufacture, testing, labeling, and marketing of Oust?; (2)

---

[1]  The parties will brief and argue at the summary judgment stage which findings by the Court/jury in the bellweather trial should be given preclusive effect.

Was the Government negligent in selecting Oust for this project?; (3) Is Oust capable of causing crop damage and, if so, under what conditions?[2]; and (4) What was defendants' awareness of these conditions?

The Court finds that this approach moves the case forward while at the same time preserves the rights of all parties to the individual treatment of each claim. The Court would invite the parties to confer among themselves and with Mr. Metcalf, the law clerk assigned to this case, as to appropriate deadlines which would move this case forward in an expeditious fashion.   As a starting point for those discussions, the Court would propose the following:

(1)   August 31, 2007   –   Plaintiffs select bellweather plaintiffs and notify all parties;

(2)   February 29, 2008 –   Deadline for all discovery on bellweather plaintiffs;

(3)   March 28, 2008   –   Deadline for filing of summary judgment motions

---

[2]   The Court assumes that there will be a "battle of the experts" over this issue.  For example, the experts may differ over (1) the amount of Oust necessary to damage crops; (2) the length of time that Oust remains viable in the soil; (3) how Oust works on plants to cause damage; (4) the winds necessary to transport Oust; (5) the sensitivity of various crops to Oust; and (6) the symptoms of Oust damage.  When the experts differ on points common to all cases, the Court and jury will resolve the difference, and that resolution will have preclusive effect on all claims.  As plaintiffs recognize, and as the Court affirms, resolution of these issues does not relieve plaintiffs of the requirement to prove that Oust caused the damage alleged by each and every plaintiff.

**Memorandum Decision and Order – Page 5**

(and briefing on identifying which findings from

bellweather trial will be given bellweather effect);

(4)     Late May, 2008     –     Summary judgment hearing;

(5)     August/October, 2008 –   Bellweather trial on all issues – negligence,

causation, and damages.

The Court recognizes that this is an aggressive schedule.  However, the point

of adopting a bellweather trial is to speed up the process, recognizing the long line

of cases awaiting the results of the bellweather trial.

Moreover, the Court is open to counsel changing these suggested dates, if all

can reach agreement.  The Court will direct the parties to meet and confer within

the next 10 days as to the form and content of a Proposed Second Case

Management Order that memorializes the parties' agreement, and to submit a

stipulated Proposed CMO to the Court within 14 days.

If an agreement cannot be reached, the dates proposed above will be adopted

by the Court.  The Court is mindful that there are additional details – both

substantive and procedural – which should be included in the Second Case

Management Order.  The Court will expect counsel to reach agreement on what

those details are and how they should be resolved.   The Court and its staff will be

available to conduct a case management conference to work through any such

**Memorandum Decision and Order – Page 6**

issues.  To request such a conference, counsel may call the Court's Law Clerk,

David Metcalf (208-334-9025).

Counsel shall present the stipulated Proposed Second Court Management

Order to the Court for approval.

## 2.      **DuPont's Motion to Compel**

Pursuant to the Court Management Order (CMO), a set of common

interrogatories – known as the "Questionnaire" – was propounded to 20 "test"

plaintiffs.  The CMO contemplated that if this sample of plaintiffs was "unable to

file complete answers, defendants could depose these plaintiffs to find out why."

*See Memorandum Decision* (docket no. 156) at p. 4.

The Questionnaire asked plaintiffs to describe, for each field contaminated

by Oust, what was planted, what pesticides, fertilizers, and herbicides were used,

how the fields were irrigated,  whether any soil test results exist, and what was

harvested, among other things.  The plaintiffs could answer most of these questions

for their sugar beet crops, because they kept their records on that particular crop on

a field-by-field basis.  But on their other crops, they only kept records on a crop-

wide basis.  For those crops, the plaintiffs could not provide a narrative answer to

the Questionnaire, but instead produced documents, such as invoices, delivery

tickets, settlement sheets, contracts, inspection records, storage records, and related

**Memorandum Decision and Order – Page 7**

documents concerning the fields at issue.  From these records, plaintiffs assert, DuPont can derive answers to the questions on harvest data.

DuPont objected to plaintiffs' approach, and filed a motion to compel plaintiffs to either provide a direct answer (by combing through the documents themselves) or to state that they could not provide an answer.  The plaintiffs responded that their approach was authorized under Rule 33(d), which permits a party to answer interrogatories by filing documents.

The Special Master sided with plaintiffs.  He held that it was unreasonable to require plaintiffs to "sort, reconstruct, and recalculate the data to present the information in any particular format demanded by the defense, regardless of the business realities of the plaintiffs' operations."  *See Report & Recommendation* (docket no. 218) at p. 12.  He concluded that "[DuPont] may do this itself, if the information is truly essential to its case . . . ."  *Id*. at pp. 12-13.

DuPont filed an objection to this Report, while plaintiffs urge the Court to adopt the Report.  While the plaintiffs ask the Court to give deference to the Report, the Court finds that the standard of review is set by Rule 53(g)(3) and (4), which requires *de novo* review of both the findings of fact and conclusions of law contained in the Report of a Special Master, absent a stipulation.  The Court will follow that requirement.

**Memorandum Decision and Order – Page 8**

Rule 33(d) authorizes a party to answer an interrogatory by providing business records from which the answer may be "derived or ascertained."  To comply with Rule 33(d), the "responding party must affirm that the information sought by the interrogatory in fact is available in the specified records."  8A Wright, Miller and Marcus, *Federal Practice & Procedure*, § 2178 at p. 330 (1994).

Plaintiffs concede that for many questions, the answers cannot be found in their documents.  Plaintiffs' own briefing recognizes that while DuPont cannot find answers in the documents, "neither can plaintiffs – which is precisely what they have repeatedly warned defendants."  *Id*. at p. 28.  DuPont confirmed this by making a convincing showing in its briefing that in some instances, the documents contain no answer.  Any lingering doubt on this issue was resolved at oral argument when plaintiffs' counsel conceded that for some crops, like potatoes, he cannot produce data like harvest yields on a field-by-field basis.

Thus, much of plaintiffs' document production is not authorized by Rule 33(d) because the documents do not contain an answer to the interrogatory questions.  This concerns defendants for three main reasons.  First, defendants would have to comb through 1.5 million documents to ascertain which contained answers.  Second, defendants alleged that while plaintiffs gave spotty answers

**Memorandum Decision and Order – Page 9**

here, they gave detailed answers to the State in response to its investigation.  Third, the follow-on depositions of plaintiffs would be considerably longer to cover the large gaps in interrogatory answers; defendants estimated that over 500 deposition-days would be required, while only 150 days would be needed if they had full answers to the interrogatories.

These are legitimate concerns.  To resolve them, the Court would typically analyze, for each interrogatory answered by a document production, whether Rule 33(d) applied and, if not, whether an answer should be compelled.  However, the litigation plan set forth above mitigates defendants' concerns, at least in the short term.  The defendants will not have to search through a massive amount of documents or engage in endless depositions: The focus instead will be on a sharply limited number of bellweather plaintiffs.  The defendants can pursue the document production as it relates to these plaintiffs and determine its sufficiency much more quickly.  If defendants believe the document production is insufficient, they are free to seek summary judgment on that basis.  The resulting resolution of that motion may affect large categories of other claims for which similar documentation exists.

Accordingly, the Court will deny DuPont's motion to compel.  The Court will neither affirm nor reverse the decision of the Special Master, finding that the

litigation plan adopted herein moots the defendants' concerns, at least for the time being.  Defendants remain free to re-file the motion at a later date if necessary.

**3.    <u>Special Master</u>**

The Court is greatly appreciative of the dedicated effort and intelligent analysis provided by the Special Master.  However, the Report and Recommendation process is inherently cumbersome.  The Court has recognized this in its other cases by withdrawing the reference of discovery matters to the Magistrate Judges.  The Court finds that this case should be treated the same way.  Accordingly, the Court will take back the discovery issues, and withdraw the reference to the Special Master.

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the following motions are DENIED: Motion to clarify (Docket No. 210); motion to compel (docket no. 216); motion for trial setting (Docket No. 221); motion for interim CMO (docket no. 222); and motion for discovery (Docket No. 224); DuPont's objection to Report (Docket No. 227); motion to bifurcate (Docket No. 239).

IT IS FURTHER ORDERED, that the case shall proceed in the manner set forth above.

**Memorandum Decision and Order – Page 11**

IT IS FURTHER ORDERED, that within ten (10) days from the date of this decision, Counsel are directed to meet together to stipulate to the details of a Second Court Management Order (as specified in this decision).

IT IS FURTHER ORDERED, that within fourteen (14) days from the date of this decision, Counsel are directed to either file a stipulated Proposed CMO with the Court, or to contact the Court's Law Clerk David Metcalf (208-334-9025) to schedule a conference with the Judge to resolve any differences.

IT IS FURTHER ORDERED, that the Court shall withdraw the reference to the Special Master.



DATED:  **August 1, 2007**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order – Page 12**