IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TIMM ADAMS, et al, | Case No. CV-03-49-E-BLW |
| Plaintiffs, | **SECOND CASE MANAGEMENT ORDER** |
| v. | |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

## INTRODUCTION

In a decision filed August 1, 2007, the Court directed plaintiffs to file a list of their bellweather plaintiffs by August 31, 2007. Plaintiffs complied with that deadline, and have identified ten of their number to act as bellweather plaintiffs.

The Court also directed counsel to file a proposed second Case Management Order (CMO). When counsel were unable to reach agreement, they contacted the Court's law clerk to discuss their positions. In addition, they have e-mailed proposed CMOs to the Court along with statements of their positions. To resolve this dispute, the Court will resolve each area of disagreement below.

**Second Case Management Order – Page 1**

1. **Who Will Select Bellweather Plaintiffs?**

   Dupont argues that all the parties should nominate bellweather plaintiffs, and the Court should make the final call.  It is only fair, Dupont asserts, that all parties have a say in selecting bellweather plaintiffs because all parties may be bound by their success.

   The Court disagrees.  There is nothing inherently unfair with plaintiffs selecting the 10 "best" of their number to be bellweather plaintiffs because their litigation success, if any, will not automatically be extended to all plaintiffs on all issues.  The scope of preclusion will be determined by the Court only after hearing full argument by all counsel.  Thus, the plaintiffs' selection of bellweather plaintiffs does not divest Dupont of any arguments it may have on preclusion.  The Court therefore reaffirms its prior decision to allow plaintiffs to select the bellweather plaintiffs.  Accordingly, this case will now proceed as to the 10 bellweather plaintiffs identified by plaintiffs in their filing with the Court.

2. **Scope of Discovery of Bellweather Plaintiffs and Non-Bellweather Plaintiffs**

   The Government proposes that all parties be given the option of proceeding immediately with discovery of non-bellweather plaintiffs.  The Court rejects that proposal.  The schedule adopted by the Court is tight, premised on the assumption that discovery will proceed comparatively quickly because it is focused only on the

**Second Case Management Order – Page 2**

bellweather plaintiffs.  Allowing general discovery of non-bellweather plaintiffs will slow the process and destroy the schedule.  The Court therefore finds that discovery of plaintiffs is to be limited for the time being to the bellweather plaintiffs.[1]

The plaintiffs propose that no further written discovery of the bellweather plaintiffs be permitted except for requests for admission based on matters addressed in the Questionnaires.  Plaintiffs seek this limitation because of the extensive work they did answering the Questionnaires.  While that may be true, there are only 10 bellweather plaintiffs, and it is not asking too much for plaintiffs to answer additional written discovery requests regarding these 10 persons or entities.  The Court therefore rejects plaintiffs' proposal to block further written discovery of plaintiffs.

## 3.  Cost of Document Production

The plaintiffs propose putting off all discovery cost-sharing decisions until after the bellweather trial due to the aggressive schedule.  Dupont proposes allowing motions for cost sharing to be filed pre-trial but agrees with plaintiffs that (1) documents should not be withheld pending a cost sharing decision by the Court

---

[1] Of course, upon motion, the defendants may seek to preserve the testimony of a non-bellweather plaintiff if there is evidence of need.  That must be done, however, on an individual basis.

**Second Case Management Order – Page 3**

and (2) the failure to file a cost sharing motion before trial is not a waiver of the right to file one post-trial.

Given the tight schedule, the Court finds the best course is to require that all cost-sharing motions be filed post-trial. The Court finds that no party shall be deemed to waive any rights to cost-sharing by waiting until after trial to file their motions, and that no documents shall be withheld in discovery pending a cost-sharing decision by the Court.

### 4. Early Resolution of Discovery

As discussed in an earlier decision, the Court has withdrawn the reference to the Special Master. If a dispute arises as to any discovery issue, the parties shall contact the Court's law clerk Dave Metcalf (208) 334-9025 and seek his informal assistance resolving the dispute. Mr. Metcalf may, in an appropriate dispute, either discuss the matter with the Court or involve it directly in the mediation of the discovery dispute. If unsuccessful, the parties may file formal discovery motions. The intention is to prevent unnecessary delays in resolving discovery disputes without jeopardizing the parties' right to have such disputes resolved by a formal ruling from the Court, where such a ruling is necessary.

5. **<u>Schedule</u>**

The parties have proposed three different schedules. Plaintiffs' proposal largely tracks the Court's initial proposal, leading to a trial in October of 2008. The Government's schedule stretches deadlines out about three months to set a trial in January of 2009. Dupont's schedule proposes the longest extension, setting trial in June of 2009.

The largest difference between plaintiffs and Dupont is in the time allocated for expert disclosures and discovery. While both parties propose starting the sequential expert disclosures in about April of 2008, plaintiffs propose completing all expert discovery by the end of June of 2008, while Dupont's completion date is six months later in December of 2008. The Government's proposals are closer to plaintiffs', with the deadline for expert discovery falling in June of 2008.

The Court finds Dupont's extension unwarranted. With regard to disclosures of experts, additional time is not needed because this case is now four years old. While the Court is aware of the difficulties of scheduling expert depositions, these deadlines are being set far enough in advance that the experts should be able to set aside time now in their busy schedules for the depositions. Under plaintiffs' proposal, the plaintiffs would disclose their experts by April 1, 2008, and the defendants would have three months to take their depositions. The

Court finds that time sufficient.

Examining the proposals as a whole, the Court finds that the plaintiffs' proposal strikes the best balance between avoiding delay and allowing for full preparation. Those deadlines, now adopted by the Court, are set out in the table below:

| Date | Event |
|---|---|
| September 21, 2007 | Bellweather plaintiffs produce documents regarding Oust, standing, and testing, verify their Questionnaire responses, and identify application sites at issue. |
| September 28, 2007 | Preliminary witness lists to be exchanged by all parties. |
| February 29, 2008 | Close of fact discovery |
| April 1, 2008 | Plaintiffs' expert disclosures due |
| May 1, 2008 | Defendants' expert disclosures due |
| June 2, 2008 | Rebuttal expert disclosures due |
| June 30, 2008 | Close of expert discovery |
| July 15, 2008 | Deadline for filing Daubert, summary judgment, jurisdictional and issue preclusion motions |
| August 15, 2008 | Opposition briefs due |
| August 29, 2008 | Reply briefs due |
| September 12, 2008, at 9:00 a.m. in the Federal Courthouse in Pocatello, Idaho | Hearing on all motions |

| October 27, 2008, at 1:30 p.m. in the Federal Courthouse in Pocatello, Idaho. | Bellweather trial on all issues – negligence, causation and damages |
|---|---|

**6.     Prior CMO**

The first CMO (Docket No. 159) covers a wide variety of matters not addressed in this decision.  While Dupont's proposal contains detailed changes to many provisions of the first CMO, the position of the other parties on some of those changes is not clear to the Court.  Accordingly, the Court will reaffirm the first CMO to the extent it is not altered by this decision. However, this does not foreclose any party from seeking to change provisions of that first CMO that remain in effect by filing an appropriate motion.



DATED:  **September 11, 2007**

Honorable B. Lynn Winmill
Chief U. S. District Judge