IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| TIMM ADAMS, et al., | ) | |
| | ) | Case No. CV-03-49-E-BLW |
| Plaintiffs, | ) | |
| | ) | **MEMORANDUM DECISION** |
| v. | ) | **AND ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## INTRODUCTION

The Court has before it motions in limine filed by DuPont and the

Government challenging plaintiffs' proffers of the expected testimony of the six

non-bellwether plaintiff witnesses.  For the reasons expressed below, the Court will

grant in part both motions in limine, excluding a small amount of the proffered

testimony, but denying exclusion as to most of the testimony.  The Court will also

modify the trial schedule and associated deadlines according to the table at the end

of this decision.

## FACTUAL BACKGROUND

On January 28, 2008, plaintiffs filed a Preliminary Witness List (PWL).  It

stated that six non-bellwether plaintiffs would testify about the "quality and

**Memorandum Decision and Order – Page 1**

damage symptoms of [their] crops and the cause of damage" along with "the

damage symptoms and quality of other's crops in the affected area; the climate; the

weather; and other growing conditions generally and during the years at issue and

local growing practices."  Some of the six were to testify about "communications

with Congressional representatives, and the investigation of the source, cause, and

extent of damage resulting from the BLM's use of Oust."  The Court held that

because these six witnesses "will be strictly limited in the scope of their testimony

to [this] summary . . ., discovery of the six will be likewise limited in scope."

To focus the discovery, the Court directed that plaintiffs file a proffer of

their testimony.  The Court expressed its intent at a hearing on August 1, 2008, that

the proffers would,

> pin down precisely what these non-bellwether plaintiffs will testify to,
> [and that would be] subject[ed] to a[n] . . . analysis . . . by me as to
> whether that would even be admitted and what the limitations would be.
> That would clearly at least give counsel some guidance on what
> discovery you would want to focus on."

*See Transcript of August 1, 2008, hearing* at p. 7.  At the time of that hearing, a

central issue with the non-bellwether plaintiffs' testimony was whether they were

sufficiently similar to the bellwether plaintiffs to pass muster under Rule 403:

> I am not sure that a [non-bellwether] plaintiff farmer whose situation
> is entirely different from that of a bellwether plaintiff would be
> allowed to testify because the dissimilarity as it increased, of course,

**Memorandum Decision and Order – Page 2**

would decrease the relevance.  And then, plus we get into Rule 403 concerns . . . .

*Id*. at 4-5.  The plaintiffs have now filed their proffers, and the defendants have filed their motions in limine.  It remains for the Court to resolve the defendants' challenges.

## 1.      Communications

Defendants first seek to exclude any proffered testimony from the six regarding their communications with anyone not specifically listed on the PWL. For example, the PWL states that Scott Stevenson would testify about communications with DuPont, but the proffer states that Stevenson will testify about communications he had with many others, including other growers and officials from the BLM and ISDA.  As another example, the PWL for Perry Van says he will testify about communications with "Congressional representatives" but his proffer says he will also testify about communications with DuPont officials, and representatives from the BLM, the ISDA, Amalgamated Sugar Company, and other growers.  Defendants argue that these proffers impermissibly expand the scope of testimony beyond that identified in the PWL.

The Court disagrees.  The PWL states for each witness that they will testify about the "investigation of the source, cause, and extent of the damage resulting

**Memorandum Decision and Order – Page 3**

from the BLM's use of Oust."  The individuals listed in the proffers were all

contacted by the witnesses as part of their "investigation."  Although these

individuals were not specifically identified in the PWL as persons with whom the

witness communicated, the term "investigation" should have alerted defendants

that the witness talked to others and that these discussions could be explored in

discovery.

The only exception to this analysis is with regard to witness Randy

Bauscher.  His PWL says nothing about him testifying about an "investigation" or

to his communications with anyone.  Yet Bauscher's proffer states that he will be

testifying about his communications with many persons concerning his

investigation into the cause of the damage to his crops.  In this case, Bauscher's

proffer does expand impermissibly the scope of his testimony as laid out in the

PWL, and the Court will exclude it.

## 2.   Lay Opinion Testimony

DuPont attempts to exclude much of the proffered testimony on the ground

that it is inadmissible opinion testimony.  The six non-bellwether witnesses were

not designated as experts and so any lay opinion they offer must be admissible

under Rule 701.  In other words, it must be rationally based on their own

perception, helpful to a clear understanding of testimony or a fact in issue, and not

**Memorandum Decision and Order – Page 4**

based on scientific, technical or other specialized knowledge within Rule 702.

Dupont does not object to testimony about the witnesses' observations regarding the damage to their crops, but objects to testimony that the damage was caused by Oust.  An expert is required to explain a causal connection when the link is based on scientific or technical analysis or is not within the common knowledge of a lay person.  *See Caro v. Calderon*, 165 F.3d 1223, 1227 (9th Cir. 1999) (noting the need for expert testimony to explain a possible causal connection between the defendant's exposure to toxic pesticides and aggressive behavior because an understanding of that kind of link is not within the common knowledge of lay persons).  But a lay person may testify on the basis of "particularized knowledge that the witness has by virtue of his or her position in the [day-to-day affairs of that person's] business."  *See Advisory Committee Notes To 2000 Amendments.*

For example, a farmer can testify that he knows what frost damage looks like and that, in his opinion, the symptoms he observed in his crops were not caused by frost.  He is testifying here as to particularized knowledge that he gained though his experience farming, and is not offering opinions that require scientific or technical analysis.  The same analysis would hold true for damage caused by hail, drought, soil conditions, insects, weeds, water quality, seed variety, planting &

**Memorandum Decision and Order – Page 5**

cultivating & harvesting methods or times, and the use or non-use of pesticides or fertilizers that he is familiar with.  Assuming that the farmer testified that he had experience with all these factors during his years of farming, he could testify, consistent with Rule 701, that he knew the symptoms of damage caused by those factors; did not observe those symptoms in his crops; and concluded that the symptoms were not caused by those factors.

That covers much of the non-bellwether testimony set forth in the proffers. However, the proffers go further by stating that the witness will testify that (1) "the symptoms he observed were unique, were like nothing he had ever seen before, or were like nothing he has seen since," (2) "his belief that the symptoms identified above were not attributable to any environmental issues, other than dust, which blew off the lands upon which the BLM applied Oust . . .", and (3) "[h]is belief that Oust adversely impacted [his] crops . . . ."

The Court has no concern with the testimony set forth in point (1) above. But if the farmer has no experience with these symptoms, then any opinion by that farmer that Oust-contaminated dust caused the symptoms has no basis in experience.  Lacking experience with the symptoms of Oust damage, the farmer's testimony on parts (2) and (3) is not admissible under Rule 701.

**Memorandum Decision and Order – Page 6**

3.      **Character**

DuPont seeks to exclude any testimony from the non-bellwether plaintiffs about the character of the bellwether plaintiffs.  DuPont characterizes as inadmissible character evidence testimony from the non-bellwethers that the bellwether plaintiffs are good farmers.  For example, the proffer for Van Tassel states that he will testify that the bellwether plaintiffs "have a reputation [in the area] as very good growers . . . ."  As another example, the proffer for Duncan states that he will testify that the bellwether plaintiffs "have a reputation in the farming community as good growers."

First, testimony about the farming ability of the bellwether plaintiffs is not character evidence – it relates to their skill, not their honesty.  Secondly, their skill is directly relevant because causation of crop damage is the central issue in the case.  The Court will therefore deny this attempt to exclude testimony.

4.      **Religious Beliefs**

DuPont seeks to exclude evidence of religious beliefs.  For example, Stevenson's proffer states that he intends to testify as to "church involvement, including a mission for the LDS church to North Carolina in 1979 to 1981."  As another example, the proffer for Duncan states that he intends to testify as to his "involvement in the Church of Jesus Christ of Latter-day Saints, including the

**Memorandum Decision and Order – Page 7**

Elder Quorum, as the Young Men's President, as a Counselor to the Bishop, on the High Council . . . ."

The general religious involvement of the non-bellwether plaintiffs is irrelevant, and is unnecessary even as background information. The proffers did not indicate that any of the testimony regarding religious affiliation would go to farming skill, such as, for example, testimony that the witness operated a church farm or obtained some agricultural training on a church mission. Accordingly, the motion to exclude this testimony will be granted.

**5.     Cumulative Testimony**

DuPont claims that much of the testimony of the non-bellwethers is cumulative. That was due, however, to the nature of the proffers. Plaintiffs had to include each area of potential testimony. At trial, some of that will be unnecessary. The Court will make that call at trial, and will deny the motion on this issue as premature at this time.

**6.     DuPont's Request for Reconsideration**

DuPont seeks reconsideration of the Court's earlier decision to allow the non-bellwether plaintiffs to testify about their own crop damage on the ground that it will distract and confuse the jury from limiting its consideration to the bellwether plaintiffs. The Court has ruled on this issue in a past decision, and reaffirms that

**Memorandum Decision and Order – Page 8**

decision here.  DuPont's request is denied.

**7.**   **Testimony as to other growers**

DuPont seeks to exclude testimony from the non-bellwethers concerning crop damage to other grower plaintiffs.  For example, Young's proffer states that he intends to testify that in investigating his own crop damage, he observed the crops of other growers, including 27 named growers from late May through July 2001 in the area where he farmed.  He will testify that the damage to their crops was similar to his own.  Three other non-bellwethers will each testify about the crop damage to between six and ten other growers.  Given an overlap between the identities of the other growers, the non-bellwethers will discuss about 33 other growers.

This is testimony going to the investigation that the non-bellwether plaintiffs did to evaluate their own crop damage.  As the Court discussed above, plaintiffs gave notice of this testimony in their PWL.  It is relevant because (1) damage that is widely-spread is consistent with, among other things, aerial spraying; and (2) damage that is prevalent across farms is some evidence that the individual farmer was not at fault.  Given that causation is a key issue in this case, plaintiffs cannot be generally excluded from proffering evidence that the crop damage was wide-spread and similar on various farms.

**Memorandum Decision and Order – Page 9**

Approaching exclusion from another angle, DuPont argues that it has rendered the evidence unnecessary by offering to agree to a jury instruction "that the Bellwether Trial addresses only 4 of about 115 grower groups alleging damages from the Oust applications at issue." *See DuPont's Reply Brief* at pp. 9-10. DuPont also states that "it has not and will not dispute the widespread nature of plaintiffs' claims." *Id*. at 9.

This offer does not render the evidence unnecessary. It is the fact of common damage – and not the mere claim of it – that plaintiffs want to prove. Claims of damage are not evidence of anything; it is the observation of common damage that has evidentiary significance. Thus, DuPont's offer, even if accepted, would not change the analysis.

8. **Government's Motion to Exclude Testimony of Van Tassel and Bauscher**

The Government seeks to exclude certain specific testimony from two non-bellwether plaintiffs who will testify at the bellwether trial: (1) Perry Van Tassel's testimony about his crop losses for 2000, 2002, 2003, and 2004; and (2) Randy Bauscher's testimony about his crop losses on four fields. The Government points out that these two non-bellwether plaintiffs had a full opportunity to identify their claims, in response to this Court's direction that the claims must be nailed down,

**Memorandum Decision and Order – Page 10**

but failed to mention any damage in these areas.

The Government has since retracted part of its motion on Van Tassell, agreeing with plaintiffs' assertion that proper notice was given as to all loss years except 2000.  The Government maintains its objection to any testimony from Van Tassell as to the year 2000, and the Court finds the objection well-taken.  It is too late in the litigation to be identifying new loss years, even if the only issue revolves around testimony rather than an actual claim.  Either way, the late identification prejudices the defendants.  The Court will therefore grant the Government's motion seeking to exclude Van Tassell's testimony regarding his loss year 2000.

With regard to Randy Bauscher, the plaintiffs allege that they did give notice of two of the four fields, and that the two new fields pose little prejudice to the Government.  With regard to the two new fields, the Court disagrees for the reasons stated above, and will exclude any evidence as to them.  With regard to the two other fields, they were listed as loss fields regarding other crops in other years. That is not sufficient, and the motion will be granted as this issue as well.

**9.**    **Additional Discovery**

In a prior decision, the Court rejected defendants' attempt to exclude the testimony of the non-bellwethers on the ground that the Court had precluded discovery of them.  The Court held that no such preclusion had been ordered. The

**Memorandum Decision and Order – Page 11**

defendants then argued that the trial date – then set for February 9, 2009 – should be continued to a date sometime in the summer or fall of 2009.

The Court rejected that request, stating during an oral argument that "[w]e are not going to bump things back six months . . . .  I see nothing that the plaintiffs did that justify that kind of an extreme delay in the case." *See Transcript of hearing held on June 27, 2008,* at p. 38.  The Court stated that a continuance of about six or seven weeks would be all that was necessary given that no discovery would need to be done on the non-bellwethers financial losses (since they were not testifying to such) and the remaining discovery on their crop damage could be completed within that time frame.  *Id.* at 7.  Accordingly, the Court set trial for April 6, 2009, representing a seven week continuance.  *See Docket Entry Order* (docket no. 563).

The defendants now argue that if the Court generally rejects their exclusion arguments on the proffers – as the Court has done above – they will need to take an additional 150 depositions, including an inquiry into the financial affairs of the non-bellwethers.  The Court rejects this request.  First, the financial losses of the non-bellwethers have been declared off-limits in discovery and nothing has arisen to change that decision.  Moreover, the defendants have already had a full opportunity to conduct discovery on the six non-bellwethers.  In January of 2008,

**Memorandum Decision and Order – Page 12**

the plaintiffs filed notice that they would be calling the six non-bellwethers to testify in the bellwether trial about their investigation of crop damage to their own crops and those of others.  Yet defendants took no action to depose these witnesses over the next six months, deciding instead to file a motion to exclude their testimony in late June of 2008.  The Court quickly denied that motion. The Court cannot relieve defendants of the consequences of their choice to seek exclusion rather than discovery.

The parties did file a Stipulation to extend the expert disclosure deadlines. That Stipulation moves the defendants' Rule 26 expert deadline to December 3, 2008, and the plaintiffs' Rule 26 deadline for rebuttal experts to January 19, 2009. The Stipulation also closed expert discovery on February 2, 2009.  The Court approves the Stipulation.

Due to the delays in resolving the issues concerning the proffers, the Court will extend the trial date by four weeks to May 4, 2009.  The Court will also extend some other deadlines to correspond with the trial date extension.  Any dispositive motions, *Daubert* challenges, and motions to add punitives must be filed on or before February 9, 2009.

Finally, the Court will set a pretrial hearing for April 13, 2009, at 8:00 a.m.

**Memorandum Decision and Order – Page 13**

in Boise, and a hearing on the dispositive motions, *Daubert* challenges, and

punitive damage issues for March 17, 2009, at 9:00 a.m. in Boise.  The pretrial

hearing date of April 13, 2009, will also be the due date for all trial filings, such as

trial briefs, proposed jury instructions, proposed voir dire, exhibit and witness lists,

and motions in limine.

     This schedule is summarized below:

**Memorandum Decision and Order – Page 14**

| Event | Date |
|---|---|
| Defendants' Rule 26 expert reports | December 3, 2008 |
| Plaintiffs' Rule 26 rebuttal expert reports | January 19, 2009 |
| All expert discovery deadline | February 2, 2009 |
| Dispositive Motion deadline | February 9, 2009 |
| *Daubert* challenge deadline | February 9, 2009 |
| Punitive damage amendment deadline | February 9, 2009 |
| Hearing on dispositive motions, *Daubert* challenges, and punitive damage issues | March 17, 2009, at 9:00 a.m. in Boise |
| Pretrial Hearing (and due date for all trial briefs, jury instructions, proposed voir dire, motions in limine, exhibit & witness lists) | April 13, 2009, @ 9:00 a.m. - Boise (in person) |
| Trial date | May 4, 2009 @ 1:30 p.m. - Boise |

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the Government's motion in limine  (Docket No. 658), is GRANTED IN PART AND DENIED IN PART.  The motion is granted in full as to the four fields listed in the motion of Randy Bauscher and as to Perry Van Tassell's 2000 loss year, but is denied in all other respects.

**Memorandum Decision and Order – Page 15**

IT IS FURTHER ORDERED, that DuPont's motion in limine (Docket No. 660) is GRANTED IN PART AND DENIED IN PART as set forth above.

IT IS FURTHER ORDERED, that the trial date and associated deadlines be modified as set forth in the table above.

DATED:  **November 21, 2008**



B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision and Order – Page 16**