IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| TIMM ADAMS, et al,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Civ. No. 03-0049-E-BLW<br><br>MEMORANDUM DECISION<br>and ORDER REGARDING<br>MOTION TO EXCLUDE<br>TESTIMONY OF<br>Dr. STEPHEN J. CULLEN |

## INTRODUCTION

The Court has before it the BLM's motion to exclude portions of two expert reports filed by Dr. Stephen J. Cullen. For the reasons expressed below, the Court will deny the motion but will allow the BLM to file a sur-reply.

## ANALYSIS

Dr. Cullen has a Ph.D. in geography, and has worked for 30 years as a hydrogelogist. He has studied extensively the transport of water and contaminants through the vadose zone, the area between the earth's surface and the water table.

**Memorandum Decision & Order re Motion to Exclude Dr. Cullen – page 1**

The BLM has not challenged his expertise in that area.

Dr. Cullen filed two reports: A "Rebuttal Declaration" on January 19, 2009, and a "Supplemental Rebuttal Declaration" on January 26, 2009. The purpose of both reports, according to Dr. Cullen, was to rebut the reports of BLM experts Steve Larson and Remy J. C. Hennet, among others.

The BLM argues that "Dr. Cullen was retained not only as a rebuttal expert, but was retained by plaintiffs to perform a completely new and independent vadose zone model to provide bases for Dr. Shields' opinions regarding dispersion from the BLM Properties downwind to plaintiffs' fields." *See BLM Opening Brief* at p. 5. While the BLM does not challenge Dr. Cullen's point-by-point rebuttal of the opinions of Larson and Dr. Hennet, it does challenge his use of the vadose zone model on the ground that it is a completely new theory rather than a true rebuttal opinion. While the BLM makes some passing references to the reliability of Dr. Cullen's opinion, the arguments are not presented fully, and so the Court will confine this decision to the BLM's objection to Dr. Cullen's use of the vadose zone model.

This dispute has its beginnings with the expert report filed by Dr. Walter Shields for the plaintiffs. Dr. Shields concluded, based on his own work and that of Dr. Qualls, that a large percentage of Oust remained in the erodible layer of soil

**Memorandum Decision & Order re Motion to Exclude Dr. Cullen – page 2**

– the upper .62 cm – and was blown away by the wind.  To reach that result, Dr. Shields testified that if the OUST – in a worst case scenario suggested by other experts – leached down as far as 10 cm into the soil, it subsequently returned to the surface crust in a process known as "wicking."  If the Oust leached as far down as 10 cm, a powerful "wicking factor" was needed to raise the necessary amount of Oust to the erodible layer so that it could be blown away by the wind.

The defendants zeroed in on this wicking factor, considering it the weak link in Dr. Shields' opinions.  They probed its weaknesses at length during Dr. Shields' deposition in November of 2008.  To rebut Dr. Shields, they retained two experts.  The first expert, Steve Larson, a hydrologist, used a model to analyze Dr. Shield's opinions.  Based on his model's results, Larson concluded that "most" of the Oust would leach well below a depth of 10 cm, that this deeper migration would inhibit the ability of the wicking factor to draw the Oust back to the surface, and that the wicking factor in any event was "very limited."  *See Larson Report* at pp. 5-6.

The other expert is Dr. Remy Hennet, who has a Ph.D. in geochemistry and extensive experience and study in the transport and fate of chemicals.  He also found Dr. Shield's opinions unreliable, and concluded that "most" of the Oust "remained in the treated areas and was not just blown away by the wind . . . ."  *See Dr. Hennet Report* at p. 13.

**Memorandum Decision & Order re Motion to Exclude Dr. Cullen – page 3**

After reading the report of Steve Larson, Dr. Shields "recommended [to plaintiffs' counsel] that it would be useful to retain a real specialist in vadose zone modeling." *See Dr. Shields' 2009 Deposition* at p. 486.  Dr. Shields felt that he "personally didn't have the kind of depth of experience." *Id.*  While he had done some vadose zone modeling in his career, he had done none on this case. *Id.*

At his deposition, Dr. Shields was asked if he had "considered" doing vadose zone modeling in this case. *Id.*  He responded, "yeah, actually when Dr. Qualls and I were discussing a preliminary approach to dispersing the Oust after rain, we did have discussions about doing something sophisticated or fairly straightforward, and we decided on the latter." *Id.* at 486-87.

Acting on that recommendation, plaintiffs filed the "Rebuttal Declaration" of Dr. Cullen.  In the first 13 pages of that report, Dr. Cullen rebuts in detail the opinions of Steve Larson, pointing out various weaknesses in Larson's model and its assumptions.

Dr. Cullen then spends the next 6 pages discussing how he applied his own model, a vadose zone model known as "HYDRUS-1D."  His model predicted that about 50% to 65% of the Oust would remain in the erodible layer – the upper .62 cm of the soil.  *See Dr. Cullen Report* at p. 19.  Dr. Cullen then proceeds to rebut in detail the opinions of Dr. Hennet.

**Memorandum Decision & Order re Motion to Exclude Dr. Cullen – page 4**

Dr. Cullen later realized that two inputs into his HYDRUS-1D model needed to be changed. About 7 days after he filed his initial "Rebuttal Declaration," he filed his "Supplemental Rebuttal Declaration," discussing the change to the two inputs. One of the changes involved an increase in the organic carbon concentration at the top of the soil profile that resulted in more of the Oust remaining in the erodible layer where it could be blown away by the wind. It was Dr. Shields who provided that information in a literature review to Dr. Cullen. While Dr. Cullen does not go on to provide an exact figure for the additional Oust that would remain in the erodible layer, Dr. Shields later concluded that Dr. Cullen's figures supported a finding that about 70% of the Oust remained in the erodible layer. *See Dr. Shields' Deposition* at p. 544.

The BLM is not seeking to exclude Dr. Cullen's point-by-point rebuttal of Larson and Dr. Hennet. Instead, the BLM is only seeking to exclude Dr. Cullen's use of the vadose zone model. The BLM argues that the use of the model is a new theory that could have been discussed in the initial round of plaintiffs' expert reports, but was not. It would be unfair, the BLM asserts, to allow plaintiffs to insert a new expert theory into the case during the rebuttal phase, when the BLM has no opportunity for sur-rebuttal. The BLM requests that if its motion is denied, it be permitted to file a sur-rebuttal.

**Memorandum Decision & Order re Motion to Exclude Dr. Cullen – page 5**

Dr. Cullen's discussion of his vadose zone model is both a new theory and true rebuttal. It is a new theory in the sense that Dr. Shields never discussed the use of that particular model in his original report. Dr. Cullen's use of the model in his rebuttal reports was the first use of the model, and this prevented the BLM from being able to respond.

At the same time, Dr. Cullen's use of his model is true rebuttal in the sense that it directly contradicts the opinions of Larsen and Dr. Hennet. True rebuttal consists both of picking apart your opponent's model and introducing your own contrary model. Dr. Cullen used both rebuttal tactics. No rule or authority has been cited that categorically limits an expert to the former and prohibits the latter.

And so Dr. Cullen's use of the model is both true rebuttal and new theory – his testimony has a hybrid character. Such hybrid testimony is not discussed in the cases cited by the parties. However, it is discussed in the context of trial practice in the leading treatise on federal procedure. *See* 28 Wright and Gold, *Federal Practice & Procedure*, § 6164 at p. 383 (1993). The treatise suggests that in resolving objections to testimony that is both true rebuttal and a new theory, the Court first inquire into whether the proponent is "sandbagging by withholding evidence until the defendant . . . [is] unable to mount an effective response." If there is no evidence of sandbagging, the treatise notes that "prejudice to the

**Memorandum Decision & Order re Motion to Exclude Dr. Cullen – page 6**

defendant can be reduced or even eliminated by permitting sur-rebuttal." *Id*. at p. 384.

Here, the Court can find no evidence of sandbagging. It appears that plaintiffs were responding legitimately to a vigorous attack on Dr. Shield's wicking testimony. The BLM argues that Dr. Cullen's vadose zone model should have been discussed by Dr. Shields in his initial report. But the deposition testimony quoted above shows that Dr. Shields was not well-versed in the vadose zone model, and that he decided with Dr. Qualls to avoid such a "sophisticated" analysis in his initial report. *See Dr. Shields' Deposition* at p. 486-87.

There is no evidence that Dr. Shields was keeping the model under wraps, all the while intending to spring it on the BLM in rebuttal when it was too late for the BLM to respond. Instead, it appears that Dr. Shields initially decided not to use the model due to a lack of confidence, but then later recommended – after being subjected to a withering attack by the defense – that plaintiffs retain somebody who was qualified.

Dr. Cullen stepped in appropriately after the defense had turned up the heat on Dr. Shields. The BLM is correct that Dr. Cullen was used to bolster the opinions of Dr. Shields. That is a legitimate function of rebuttal, to respond to attacks on an aspect of an expert's testimony by retaining another expert who has

**Memorandum Decision & Order re Motion to Exclude Dr. Cullen – page 7**

special expertise on that very aspect under attack.  Dr. Cullen was not trying to slip in a new theory, but was legitimately responding to the criticism of Larson and Dr. Hennet.

These circumstances do not smack of sandbagging.  Nevertheless, the fact remains that the BLM has never had an opportunity to respond to Dr. Cullen's vadose zone model.  As *Federal Practice* suggests, that prejudice can be overcome by allowing the BLM to file a sur-reply.  The BLM has indicated that it has a sur-reply by Steve Larson ready to file, and the Court will authorized the filing of that sur-reply.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to strike portions of the rebuttal reports of Dr. Cullen (docket no. 762) is DENIED.

IT IS FURTHER ORDERED, that the BLM is authorized to file a sur-reply expert report to the reports of Dr. Cullen on or before April 20, 2009.

IT IS FURTHER ORDERED, that the BLM's motion to file a corrected Exhibit G (docket no. 788) is GRANTED.

**Memorandum Decision & Order re Motion to Exclude Dr. Cullen – page 8**

DATED: **April 9, 2009**



*[signature]*

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision & Order re Motion to Exclude Dr. Cullen – page 9**