IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| TIMM ADAMS, et al, | ) ) ) | Civ. No. 03-0049-E-BLW |
| Plaintiffs, | ) ) | |
| v. | ) ) ) ) | MEMORANDUM DECISION and ORDER RE MOTION TO EXCUDE EXPERT OPINIONS OF |
| UNITED STATES OF AMERICA, | ) ) ) | DRS. HUTCHINSON & MORISHITA |
| Defendant. _____ | ) ) | |

## INTRODUCTION

The Court has before it Defendant DuPont's motion to exclude any testimony by plaintiffs' experts recounting or relying upon the opinions of two University of Idaho professors, Dr. Pamela Hutchinson and Dr. Don Morishita. The motion is fully briefed and at issue. For the reasons expressed below, the Court will deny the motion in large part, granting it only to the extent it seeks to exclude the testimony of plaintiffs' expert Dr. Alan Dexter that Dr. Morishita told him that Oust caused the damage in this case.

## BACKGROUND

**Memorandum Decision & Order re Hutchinson & Morishita – page 1**

Drs. Hutchinson and Morishita are both weed scientists employed by the University of Idaho. Each specialized in weed control for certain crops: Dr. Hutchinson in potatoes; Dr. Morishita in sugar beets.

In 2002 and 2003, they participated in a field experiment to determine the levels at which Oust was toxic to sugar beets and potatoes. The test plots were in Kimberly and Aberdeen, Idaho. Soil in the plots was mixed with Oust concentrations ranging from 7.5 ppt to 960 ppt "to test the season-long response of potatoes and beets to Oust." *Plaintiffs' Brief* at p. 3.

Soil samples taken from the test plots were sent to MSU to be analyzed for Oust. The results of the soil sample tests from the potato plots were published in the peer-reviewed journal, *Weed Science*, (Sept - Oct. 2007).

The published study contained two statistical analyses of the data. The first analysis, known as the ANOVA analysis, found statistically significant damage beginning at 120 ppt, while the second analysis, known as a log regression analysis, showed a 5% yield loss at 74 ppt.

The results from the sugar beet plot soil samples have not been published, but were presented by Dr. Morishita at a meeting of the Western Society of Weed Science. The validity of a portion of those results is challenged in this motion.

Dr. Morishita used the same two statistical methods to analyze his sugar beet

**Memorandum Decision & Order re Hutchinson & Morishita – page 2**

data. The ANOVA analysis showed statistically significant damage beginning at 120 ppt while the log regression analysis predicted a 10% yield reduction at Oust concentrations as low as 6 ppt.

It is this last piece of evidence – the prediction of the log regression analysis of a yield loss on sugar beets at Oust levels as low as 6 ppt – that DuPont seeks to exclude. DuPont argues that this result was never published, and is based on the use of a statistical analysis that does not work properly with the data collected.

DuPont begins its attack by citing Dr. Morishita's deposition testimony that (1) he did the log regression analysis with Dr. Hutchinson, (2) he had no expertise in the analysis, and (3) he deferred to Dr. William Price, a statistician with the University of Idaho Department of Agriculture, who was invited to assist Dr. Hutchinson in running the model. Dr. Hutchinson needed help because she was, in her own words, "amateurly [sic] stumbling through the log model analysis." *See Exhibit U to Motion to Exclude (docket no. 746)*. She then consulted Dr. Price who assisted her in running the model. At his deposition, Dr. Price was asked by DuPont's counsel, "[i]s that correct that you reached a determination that the sugar beet data from Dr. Morishita did not fit the logistic [log regression] model you'd applied to potatoes well in the case of sugar beets." *See Dr. Price Deposition* at p. 122. Dr. Price answered, "[c]orrect." *Id.* DuPont did not provide the Court with

**Memorandum Decision & Order re Hutchinson & Morishita – page 3**

deposition excerpts showing that DuPont's counsel engaged in any follow-up colloquy with Dr. Price to pursue what he meant by his one-word answer.

Prior to the depositions, Drs. Hutchinson and Morishita received a letter from the University's counsel notifying them about restrictions on their ability to provide opinions in this case:

> In an effort to comply with federal law, the policies of the University, and their contracts with the University, Dr. Morishita and Dr. Hutchinson will not be able to provide any opinions not already published in their research to any of the parties in this litigation. Of course, they will be available to discuss their research and conclusions regarding Oust, and the crops they investigated, to the extent necessary, however they will not be available to provide new opinions or respond to hypotheticals that go beyond the research or conclusions already published.

*Id.*, (Ex. I).

When asked about the effect of this letter, Dr. Hutchinson testified that "I can't act . . . as an expert witness." *See Dr. Hutchinson Deposition* at p. 12. She went on to say that "I can just tell you what I know about the situation in my research, basically." *Id*. at p. 13.

Drs. Hutchinson and Morishita have not been identified as testifying experts in this case. However, they both had discussions with other experts retained by plaintiffs, and their studies (discussed above) are relied upon by those other experts. DuPont moves to exclude any testimony by these other experts (1) that

**Memorandum Decision & Order re Hutchinson & Morishita – page 4**

recounts their discussions with Dr. Hutchinson and Morishita, and (2) relies on their study of Dr. Morishita concluding that Oust in concentrations as low as 6 ppt could be toxic to sugar beets.

## ANALYSIS

### Unfairness

Dupont argues first that although it was precluded from inquiring in discovery about any expert opinion of Drs. Hutchinson and Morishita, both of them rendered opinions to plaintiffs' other experts, who will recount those opinions during the trial. This is simply unfair, DuPont asserts.

The Court agrees with DuPont that if it was blocked from pursuing the expert opinions of Drs. Hutchinson and Morishita during discovery, those expert opinions cannot be introduced by plaintiffs through other experts. However, DuPont only points to one such incident. A plaintiffs' expert, Dr. Alan Dexter, is prepared to testify that he asked Dr. Morishita if Oust was "the causal agent in this situation" and Dr. Morishita told him that "it was, that he was confident." *See Dr. Dexter Deposition* at p. 82. This appears to be just the type of expert opinion that was precluded by the University's letter and that was avoided in discovery by DuPont. It would thus be unfair to DuPont to allow Dr. Dexter to testify to Dr. Morishita's opinion about causation when DuPont could reasonably understand

**Memorandum Decision & Order re Hutchinson & Morishita – page 5**

from the University's letter that it was blocked from pursuing such an opinion in discovery.

The other incidents cited by DuPont, however, all involve experts asking Drs. Hutchinson and Morishita about their data and studies, and whether defense experts were properly interpreting their data and studies. These discussions all concerned subject matter that was expressly carved out as permissible by the University letter. *See Exhibit I (University Letter) to Motion To Exclude (docket no. 746)*("they [Drs. Hutchinson and Morishita] will be available to discuss their research and conclusions regarding Oust, and the crops they investigated"). Thus, DuPont could not reasonably have relied on the letter to forgo pursuit of these conversations in discovery. Indeed, DuPont does not point the Court to a single incident involving this subject matter where DuPont was blocked from obtaining answers in discovery due to the University's restrictions.

The parties have not briefed the issue of whether testimony by an expert recounting what he was told by Drs. Hutchinson and Morishita is hearsay under Rule 801(c), and thus they also did not identify any applicable exceptions to the hearsay rule under Rule 803. With regard to experts, Rule 703 states that facts or data "that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their

**Memorandum Decision & Order re Hutchinson & Morishita – page 6**

probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." Because this issue has not been raised by counsel, the Court will not address it at this point.

**Vouching**

DuPont argues that plaintiffs' experts are merely parroting the opinions of Drs. Hutchinson and Morishita. The Court disagrees. Plaintiffs' other experts, in reaching their own opinions, relied on their discussions with, and the data collected by, Drs. Hutchinson and Morishita. DuPont provides no authority that this is improper, and it is in fact common with expert testimony under Rules 702 and 703.

In the deposition excerpts provided by DuPont, the Court finds no incidents where the plaintiffs' experts provide nothing of substance beyond vouching for Drs. Hutchinson and Morishita. Obviously, if bare vouching occurs at trial, the Court will examine any objection thereto. But there is no evidence of it in the present record.

**Unpublished Results**

DuPont asks the Court to bar plaintiffs' experts from offering any testimony that relies upon the conclusion in Dr. Morishita's unpublished sugar beet abstract that Oust causes damage to sugar beets at rates as low as 6 ppt. See Exhibit H to Motion to Exclude (docket no. 746). This conclusion is based on the log

**Memorandum Decision & Order re Hutchinson & Morishita – page 7**

regression statistical analysis – discussed above – run originally by Dr. Hutchinson who later was assisted by Dr. Price.

DuPont points out that Dr. Morishita's abstract was never published. While this is a factor in the *Daubert* analysis, it is not determinative by itself.

DuPont also points out that (1) Dr. Hutchinson admitted in an e-mail that her attempts to run the log regression analysis could be described as "amateurly stumbling," and (2) she depended on the expertise of Dr. Price, who answered "correct" in his deposition when asked if he had determined that the sugar beet data from Dr. Morishita did not fit well with the log regression model. *See Dr. Price Deposition* at p. 122.

While these two statements might somewhat diminish the weight to be given to the evidence, they are simply two isolated statements not pursued by DuPont in discovery (at least according to the deposition excerpts provided by DuPont). In this record, DuPont never asked Dr. Price to explain his one-word response or Dr. Hutchinson to explain her one-sentence e-mail remark. The two statements are too slight to support a whole-scale exclusion of Dr. Morishita's opinion regarding harm to sugar beets at 6 ppt of Oust. Even adding the factor that the opinion is unpublished does not provide the necessary weight to tip the analysis over to exclusion.

**Memorandum Decision & Order re Hutchinson & Morishita – page 8**

**Expansion of Dr. Hutchinson's Potato Study by Other Experts**

DuPont asks the Court to exclude unidentified expert testimony that may "extrapolate or expand" upon the content of Dr. Hutchinson's published report on her potato studies. DuPont bases its request on the fact that "several of Plaintiffs' experts" cite (1) conversations they had with Dr. Hutchinson about her study and the interpretation of her study, and (2) their own observations of the fields subject to her study.

DuPont requests a broad exclusionary ruling in the abstract without specifically identifying the improper testimony or opinion sought to be excluded. For that reason, the request shall be denied.

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that DuPont's Motion to Exclude Evidence Reciting or Relying on the Opinions of Drs. Hutchinson and Morishita (Docket No. 746) is GRANTED IN PART AND DENIED IN PART. It is granted to the extent it seeks to exclude testimony from plaintiffs' expert Dr. Alan Dexter that he asked Dr. Morishita if Oust was "the causal agent in this situation" and Dr. Morishita told him that "it was, that he was confident." It is denied in all other respects.

**Memorandum Decision & Order re Hutchinson & Morishita – page 9**



DATED: **April 19, 2009**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision & Order re Hutchinson & Morishita – page 10**