IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TIMM ADAMS, et al., ) | Case No. CV-03-49-E-BLW |
| Plaintiffs, ) | **MEMORANDUM DECISION AND ORDER REGARDING TESTIMONY OF BENBROOK AND SIELATY** |
| v. ) | |
| UNITED STATES OF AMERICA, et al., ) | |
| Defendant. ) | |

## INTRODUCTION

The Court has before it a motion to exclude testimony of Dr. Charles Benbrook and Robert Sielaty. For the reasons expressed below, the Court will grant the motion in part, excluding Sielaty's opinion that the Oust label violated FIFRA Section 2(q)(1)(A). The motion will be denied in all other respects.

## ANALYSIS

Dr. Charles Benbrook had a Ph.D. in agricultural economics. In the early 1980s, he was Staff Director for the House subcommittee with jurisdiction over FIFRA, and worked for 6 years with the National Academy of Sciences on, among other things, pesticide use. He has since worked as a consultant carrying out

**Memorandum Decision and Order re Benbrook and Sielaty – Page 1**

research on pesticide-induced damage to non-target entities.

Robert Sielaty is an attorney specializing in the regulation of pesticides for the last 34 years. He represents companies that market and sell pesticides, working closely with company managers to comply with pesticide regulations. He worked for 14 years for the industry association representing regulatory managers of the major pesticide-producing companies of the world.

Among other things, Benbrook will testify that: (1) the pre-1995 Oust label was effective to prevent off-target movement of Oust and crop damage; (2) the post-1995 Oust label was written by Dupont; (3) The changes significantly relaxed the label's prior prohibition on Oust application in arid lands with nearby irrigated cropland; (4) the label became advisory and hence unenforceable; (5) the EPA had no time to carry out a scientific assessment of the new label; (6) the EPA was under pressure from pesticide manufacturers to expedite the approval of "routine" label changes; (7) a primary purpose of the label changes was to position Oust as a cost-effective option for the BLM's rehabilitation program on fire damaged lands; (8) DuPont violated its stewardship duty and standard industry practice by not assessing the risks of using Oust on fire-damaged lands in southern Idaho; (9) that off-target movement of Oust was a predictable outcome of BLM applications to fire-damaged lands; and (10) the crop damage suffered by plaintiffs would not

**Memorandum Decision and Order re Benbrook and Sielaty – Page 2**

have occurred if the pre-1995 label was still in effect.

Among other things, Seilaty will testify: (1) to the role of the EPA in the registration of pesticides; (2) to the regulatory framework provided by FIFRA; (3) to the roles of the registrant and states in the process; (4) that the crop damage occurred here because DuPont failed to provide the EPA and State of Idaho with pertinent information and label language that would have prevented application of Oust to fire damaged arid lands; (5) that DuPont "worked around the system" and "took advantage" of the system; and (6) that DuPont failed to satisfy its stewardship duty; (7) the Oust label was misbranded as that term is defined under FIFRA because it is misleading

DuPont does not challenge the qualifications of these two experts. Instead, DuPont argues that their testimony should be excluded because (1) it is barred by the doctrine of judicial estoppel, (2) it consists of legal conclusions, and (3) it pertains to the fraud on the agency claim that was dismissed. The Court will consider each ground separately.

**Judicial Estoppel**

Dupont argues that experts Benbrook and Sielaty are judicially estopped from testifying that the labels contain advisory rather than mandatory language. DuPont claims that earlier in this litigation – when the BLM claimed immunity

**Memorandum Decision and Order re Benbrook and Sielaty – Page 3**

under the discretionary function exception – plaintiffs argued that the BLM had no discretion because the labels contained mandatory language.  The Court agreed with the plaintiffs and denied the BLM's motion.  DuPont claims that plaintiffs are now arguing just the opposite, through Benbrook and Sielaty, by asserting that the labels contain advisory rather than mandatory language.  DuPont argues that plaintiffs are judicially estopped from presenting such testimony from these two witnesses.

Judicial estoppel precludes a party from taking inconsistent positions in the same litigation.  *See Yanez v. United States*, 989 F.2d 323, 326 (9th Cir.1993).  Three important principles guide a court in its determination whether to apply judicial estoppel:  (1) A party's later position must be "clearly inconsistent" with its earlier position; (2) The party must have succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position at a later point would create "the perception that either the first or the second court was misled;" and (3) The party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.  *See New Hampshire v. Maine*, 532 U.S. 742 (2001).

These factors are not present here.  Benbrook and Seilaty are testifying about

**Memorandum Decision and Order re Benbrook and Sielaty – Page 4**

whether statements on the § 3 label are mandatory or advisory as defined by the EPA in registration documents. They are not testifying about the subject of the Court's earlier decision – the discretionary function exception.

There is no danger or perception here that the Court has been misled by plaintiffs' arguments. In that earlier decision, the Court found that the specific BLM decisions concerning when and how to use Oust were not covered by the discretionary function exception because they were "related to weather and ground condition factors rather than policy concerns." *See Memorandum Decision* at p. 5. The BLM argued that the label created no mandatory duties for application because the label merely warned of consequences rather than banned outright certain types of applications. The Court rejected the BLM's argument, pointing out that the label went beyond merely listing consequences when it stated, (1) "Do not use on food or feed crops," and (2) "Avoid gusty conditions." *Id*. at p. 6. The Court was not confronted with, and did not comment on, the subject matter of the testimony of Benbrook and Seilaty concerning the EPA's classification system of advisory and mandatory terms.

DuPont argues, however, that "since 2006, Dupont has conducted discovery and defended this case in part relying on the Court's ruling based on plaintiffs' arguments urging the mandatory nature of the warnings in the Oust label in effect."

**Memorandum Decision and Order re Benbrook and Sielaty – Page 5**

*See DuPont's Reply Brief* at p. 5.  Dupont asserts that the "last minute change of position" by plaintiffs "would seriously prejudice DuPont and its ability to defend itself at trial."  *Id.*

Yet plaintiffs have alleged all along in this case that DuPont improperly changed the label language in 1995.  The Court's decision on the discretionary function exception did not purport to resolve those allegations.  Accordingly, the Court cannot find that DuPont was prejudiced by any last minute change of position by plaintiffs.

Ultimately, the doctrine of judicial estoppel is "intended to prevent improper use of judicial machinery, [and hence] is an equitable doctrine invoked by a court at its discretion."  *New Hampshire*, 532 U.S. at 750.  Exercising its discretion here, the Court cannot find that plaintiffs are making improper use of the judicial machinery, and thus will refuse to apply the doctrine of judicial estoppel to block the testimony of Benbrook and Seilaty.

**Legal Conclusions**

Dupont argues that Benbrook and Seilaty will render legal conclusions, an improper role for experts.  Experts generally are not allowed to render legal conclusions, *Nationwide Transp. Fin. v. Cass. Info. Sys.,* 523 F.3d 1051, 1058 (9th Cir. 2008), but there may be "instances in rare, highly complex and technical

**Memorandum Decision and Order re Benbrook and Sielaty – Page 6**

matters where a trial judge, utilizing limited and controlled mechanisms, and as a matter of trial management, permits some testimony seemingly at variance with the general rule." *Flores v. Arizona*, 516 F.3d 1140, 1166 (9th Cir. 2008) (quoting *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 101 (1st Cir.1997)). After analyzing the case law, the leading treatise on federal practice concludes that "the courts seem more open to the admission of expert legal opinions where the subject is the application of some complex regulatory or legal standard to a specific factual background." *See* 29 Wright and Gold, *Federal Practice & Procedure*, § 6264 at p. 220 n. 36 (1997).

Applying these principles to Benbrook and Sielaty, the Court finds proper their testimony (1) about the general roles of the EPA, the registrant, and the state in the registration process for pesticides; (2) the general regulatory framework set up by FIFRA; (3) the industry standards and the stewardship duty; (4) the factual circumstances surrounding the 1995 changes to the label and the obtaining of the 24(c) label; and (4) their opinions on whether DuPont's conduct satisfied industry standards and any stewardship duty.

The Benbrook report largely follows these guidelines. Sielaty, however, goes further and renders an opinion that the Oust label violated FIFRA's "misbranding" prohibition. The misbranding claim in Count 11 alleges that

**Memorandum Decision and Order re Benbrook and Sielaty – Page 7**

DuPont's violation of FIFRA constitutes misbranding. The opinion that DuPont violated FIFRA invades the province of the jury by telling them what their verdict should be on Count 11. Accordingly, it is subject to exclusion. Other than that single opinion, the Court finds that no other opinions contain legal conclusions.

**Fraud on the Agencies**

DuPont also seeks to exclude their testimony on the ground that it pertains to the dismissed claim of fraud on the agencies. The Court disagrees. Their testimony relates to other claims that remain in the case such as misbranding and failure to warn. The Court declines to exclude the testimony on this ground.

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to exclude portions of Benbrook and Sielaty testimony (Docket No. 738) is GRANTED IN PART AND DENIED IN PART. It is granted to the extent it seeks to exclude Robert Sielaty's opinion at page 21 of his report that the Oust label violated FIFRA, section 2(q)(1)(A).

It is denied in all other respects.



DATED: **April 20, 2009**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order re Benbrook and Sielaty – Page 9**