IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TIMM ADAMS, et al, ) | Civ. No. 03-0049-E-BLW |
| Plaintiffs, ) | |
| v. ) | MEMORANDUM DECISION AND ORDER |
| ) | Re: DuPont's Motion to Reconsider |
| UNITED STATES OF AMERICA, et al., ) | |
| Defendants. ) | |

## INTRODUCTION

The Court has before it DuPont's motion for reconsideration. The motion is fully briefed and at issue. For the reasons expressed below, the Court will deny the motion to the extent it seeks production of the 4 pages of damage calculations by the Clingers, but will grant the motion to the extent it seeks a finding that the protection previously afforded to two matters has been waived: (1) the amount of the estimate of crop damage itself – $240,694.62, and (2) the statement by Jerome Clinger that "the attorneys increased the claim to $1,700,000."

## ANALYSIS

**Memorandum Decision & Order re DuPont Motion to Reconsider**

In an earlier-filed decision, the Court held that 4 pages of damage calculations by the Clinger plaintiffs were protected by the attorney-client privilege and the work product doctrine. The 4 pages contain the Clingers' calculation of their crop losses in 2000 and 2001 from the Oust application. The Court held that these calculations were prepared in response to counsel's request in anticipation of this litigation, and hence were protected. Plaintiffs had inadvertently provided the documents to DuPont and were seeking to retrieve them. The Court ordered that the documents be returned to plaintiffs.

Since that decision, DuPont deposed Stanford Taysom, a banker with the Idaho Agricultural Credit Association. He testified that the Clingers sought loans with the bank in 2002 and 2004. In pursuing those loans, Jerome Clinger shared information with Taysom about the damage claims of Jerome Clinger Farms and Clingers Inc in this lawsuit.

In the application for the 2002 loan, Clinger claimed a company loss of $236,695 to his 2000 and 2001 crop yields as a result of the BLM's Oust applications. In the application for the 2004 loan, Clinger increased this estimate slightly to $240,694, but told Taysom that "the attorneys increased the claim to $1,700,000." *See Taysom Deposition* at pp. 86-87.

DuPont now argues that this new evidence shows that the Clingers waived

**Memorandum Decision & Order re DuPont Motion to Reconsider**

any protection for the 4 pages of damage calculations for the 2000 and 2001 crop losses.  Waiver is governed by state law.  *See Federal Rule of Evidence 501*. Under Idaho law, waiver of the attorney-client privilege occurs when the "holder of the privilege voluntarily discloses . . . any significant part of the matter or communication."  *See Idaho Rule of Evidence 510*.

Taysom's deposition testimony clearly establishes that the Clingers voluntarily disclosed, and hence waived, any attorney-client privilege for the figure of the damage estimate itself of $240,694.62.  Moreover, assuming that the Clingers could have declared a privilege over any changes their attorneys made to their estimate, that protection was waived when they told Taysom "the attorneys increased the claim to $1,700,000."

While plaintiffs argue that the work product doctrine is more difficult to waive – requiring disclosure where there is a significant likelihood that an adversary will obtain it – Taysom's testimony establishes waiver under this standard as well.  Even after this law suit was filed in 2003, Jerome Clinger continued to share estimates of crop damage, and the changes his attorneys made to the estimate, with Taysom in pursuing a 2004 loan.  Certainly by that time, there was a significant likelihood that DuPont could learn of these representations in discovery.

**Memorandum Decision & Order re DuPont Motion to Reconsider**

This analysis might be different if the Clingers were compelled in some manner to provide this evidence. However, the record shows that the Clingers voluntarily provided the information to the bank while pursuing a loan. While farmers need loans to farm, this need does not translate into the compulsion required to avoid waiver.

While the Clingers have waived the privilege as to the two items listed above that they shared with Taysom, DuPont argues that the waiver should include the 4 pages of calculations that the Clingers provided to their counsel. However, the Clingers never provided those pages to the bank, and never even revealed their existence. Indeed, the Clingers never told Taysom how they arrived at their damage estimate. Thus, other than the $240,694.62 loss figure itself, the rest of the 4-pages of calculations remains undisclosed.

DuPont argues, however, that the waiver of the estimate should extend to the 4 pages of calculations since both share the same subject matter. Rule of Evidence 502 addresses this precise issue – the scope of waiver. Even when Rule 501 dictates that state law will determine if waiver occurred, the scope of the waiver is controlled by Rule 502. *See Rule 502(f)* ("notwithstanding Rule 501, this rule applies even if State law provides the rule of decision"). Under Rule 502, the Clinger's waiver of the protection covering the estimate itself will be deemed to

**Memorandum Decision & Order re DuPont Motion to Reconsider**

extend to the 4-page calculation of that estimate when, (1) the waiver is intentional; (2) the disclosed and undisclosed communications concern the same subject matter; and (3) they ought in fairness to be considered together. *See Rule 502(a).*

The Advisory Committee notes explain that generally a waiver covers only what was discussed, and a "subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." The Advisory Committee cites a case with approval that refused to extend the waiver when there was no evidence of a deliberate partial disclosure designed to gain a tactical advantage.

Thus, the question here is whether Jerome Clinger made a partial disclosure to Taysom designed to obtain a tactical advantage that would require revealing the 4 pages of calculations to avoid a misleading presentation of evidence. The short answer is no. There is no evidence that Jerome Clinger made a partial disclosure to obtain some tactical advantage. By limiting the waiver to the matters discussed – and not including the 4 pages of calculations in the waiver – the Court will not be abetting a misleading presentation of evidence. For these reasons, the Court finds that the 4 pages of calculations remain protected as previously held.

**Memorandum Decision & Order re DuPont Motion to Reconsider**

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for reconsideration (docket no. 642) is GRANTED IN PART AND DENIED IN PART.  It is granted to the extent it seeks to remove any attorney client privilege or work product protection from (1) the Clingers' estimate of Oust related damage for their 2000 and 2001 crops at $240,694.62; and (2) Jerome Clinger's statement that "the attorneys increased the claim to $1,700,000."



DATED:  **April 23, 2009**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision & Order re DuPont Motion to Reconsider**