IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TIMM ADAMS, et al., ) | Case No. CV-03-49-E-BLW |
|         Plaintiffs, ) | **MEMORANDUM DECISION** |
| v. ) | **AND ORDER REGARDING** |
| ) | **MOTION TO EXCLUDE** |
| UNITED STATES OF AMERICA, ) | **TESTIMONY OF** |
| et al., ) | **DR. JOHN GALLIAN** |
|         Defendants. ) | |

## INTRODUCTION

The Court has before it the BLM's motion to exclude expert testimony from Dr. John Gallian. The motion is fully briefed and at issue. For the reasons expressed below, the Court will deny the motion.

## ANALYSIS

**Qualifications and Opinions**

Dr. Gallian has a Ph.D. in plant pathology, and is a Professor Emeritus of Plant Pathology at the University of Idaho. He worked "100% in sugar beets" for 26 years until 2005, "when my responsibilities were expanded . . . to include beans, small grains, and corn for south central Idaho." *See Dr. Gallian Expert Report* at

**Memorandum Decision and Order re Motion to Exclude Dr. Gallian – Page 1**

p. 1.  He has focused primarily on sugar beet diseases, conducting extensive field testing in the locations at issue in this case.  He also has experience with herbicide injury to sugar beets:

> I am familiar with symptoms of ALS inhibitor herbicides on sugar beets and have observed these symptoms on numerous occasions. Specifically, I have observed drift injury from Harmony Extra, soil uptake injury from Matrix, and soil uptake injury from Oust.

In his initial report, Dr. Gallian states that he was retained by plaintiffs to (1) provide opinions "regarding the cause of injury to sugar beets in 2000 and following years in south central and eastern Idaho," (2) to provide opinions on "the validity of a bioassay conducted from growers' fields in 2002," and (3) to provide opinions on "the appropriate investigation of the injury problem that could have been conducted by DuPont had they wished to."  *Id*. at p. 1.

His initial report is limited to sugar beets.  *See Dr. Gallian Deposition* at p. 62.  That report contains a detailed discussion ruling out certain factors as causes of the sugar beet losses suffered by the plaintiffs here.  For example, he rules out seeding disease as a cause, noting that its "symptoms are very different from those" at issue here.  *See Dr. Gallian Expert Report* at p. 5.  He then describes the symptoms in this case that were (1) different from seeding disease symptoms, and (2) characteristic of damage from ALS inhibiting herbicides.  *Id*. at pp. 5-6.

**Memorandum Decision and Order re Motion to Exclude Dr. Gallian – Page 2**

He rules out other diseases such as powdery mildew, leafspot, root and crown rot, rhizomania, and beet curly top virus. He also rules out nutrient deficiency and climate factors (such as frost, heat stress, and wind injury). Before he rules out any factor, he describes in some detail the symptoms associated with that factor, that those symptoms were absent here, and that the symptoms he observed were more consistent with damage caused by ALS inhibitor herbicides.

He then evaluates a bioassay, which was a controlled experiment where Oust was added in different concentrations to pots of sugar beets and compared with a pot where no Oust was added. Finally he rendered an opinion that regarding DuPont's failure to investigate and share soil sample test results with the growers.

Later, Dr. Gallian filed a report rebutting the opinions of a number of defense experts. Most of his opinions in the rebuttal report relate directly to sugar beets, but he also concluded that (1) "only an external factor could have caused the widespread injury on several crops . . . [including] . . . potatoes, corn, alfalfa, and small grains (wheat and barley); (2) "losses also occurred on small grains, alfalfa, and corn and the symptoms on these crops were consistent with those of a sulfonylurea herbicide."

**Memorandum Decision and Order re Motion to Exclude Dr. Gallian – Page 3**

**Prior Decision**

In a prior decision, the Court resolved DuPont's challenge to Dr. Gallian's opinions regarding DuPont's investigation. That issue is not involved in the BLM's motion now under consideration. In that decision, the Court found that Dr. Gillian's long experience in sugar beets gave him expertise to testify about the steps one should take to investigate sugar beet damage. That finding is not at issue here.

**BLM's Objections**

The BLM argues first that Dr. Gallian has no expertise to render opinions on Oust damage. It is true that Dr. Gallian has done no research work on Oust. *See Dr. Gallian Deposition* at p. 57. But with regard to sugar beets, he has had almost 30 years of experience in the field, which includes assessing damage from ALS inhibitor herbicides, as discussed above. The Court finds that this experience gives Dr. Gallian the expertise necessary to render opinions on whether Oust caused damage to sugar beets.

Turning to his testimony regarding other crops, it is important to recognize that the testimony is quite limited. Dr. Gallian never discusses damages to other crops in any detail, and does not proceed though any discussion ruling out factors (such as disease, insects, and climate), as he did with sugar beets. His testimony on

**Memorandum Decision and Order re Motion to Exclude Dr. Gallian – Page 4**

other crops is much more limited, as he explains in his deposition: "And the fact that you have symptoms on a vast number of – or a number of crops tells me that you have an external source for those symptoms. *That would be the extent of what I would say with regard to the other crops*." *Id*. at p. 67 (emphasis added).

In addition to this limitation on his testimony regarding crops other than sugar beets, he will not be relying on his own expertise in concluding that Oust caused damage to those crops: "I will give testimony only referring to potatoes that I knew that they had been affected by something, and *based on my discussions with other people,* these symptoms were those of [Oust]. I have never observed an [Oust] symptom prior to this on potatoes." *Id*. at p. 45 (emphasis added).

Thus, with regard to other crops, Dr. Gallian will be testifying only that (1) other experts told him that Oust damaged those crops, and (2) widespread damage across different crops signals to him that an "external source" is the cause of damage. *Id*. at p. 67

Dr. Gallian must limit his testimony regarding other crops because the deposition testimony quoted above demonstrates he has no expertise in determining Oust damage to crops other than sugar beets. The issue is whether this particular limitation is sufficient.

**Memorandum Decision and Order re Motion to Exclude Dr. Gallian – Page 5**

As the Court has held in past decisions in this case, an expert who lacks expertise in a subject may rely on the opinions of experts in that subject. So Dr. Gallian can rely on others to conclude that crops other than sugar beets were damaged by Oust. That reliance bridges his "expertise gap" and allows him to make his next point, on which he has expertise, that widespread damage across different crops indicates that an "external source" is at work.

Thus, to that point, the Court finds the limitation proper, and will refuse to exclude the testimony. The Court does have some remaining concerns, however.

First, it appears Dr. Gallian may go further and testify that the "external source" was Oust – that is, that Oust caused the damage not only to sugar beets but to all crops. *See Dr. Gallian Expert Report* at p. 2 ("[i]t is my opinion that Oust caused the damage to growers' fields").

However, the Court's understanding of Dr. Gallian's deposition testimony is that he will merely testify that the widespread nature of the damage means that some "external source" was responsible, not that it was Oust. With that understanding, the Court finds Dr. Gallian's testimony is properly limited.

The Court's second concern is that it appears Dr. Gallian may be relying to some degree on Dr. Morishita's opinion that Oust caused the damage to potatoes. *See Dr. Gallian Deposition* at p. 45 ("Don Morishita's office is four steps form

**Memorandum Decision and Order re Motion to Exclude Dr. Gallian – Page 6**

mine, you know . . . [w]e see each other every day . . . [a]nd we knock ideas back and forth"). In a prior decision, the Court has banned another expert from testifying that Dr. Morishita told him that Oust caused the damage to potatoes; the Court based its decision on the fact that the defendants were barred from pursuing discovery into certain expert opinions held by Dr. Morishita.

The parties did not brief this issue, and the record is unclear on whether Dr. Gallian is relying on Dr. Morishita. Thus, the issue will not affect this decision, but the Court notes it as it may arise later in the litigation.

The BLM argues next that in this case Dr. Gallian "merely examined photographs to infer symptoms," an approach he rejected in his standard investigation protocol. *See BLM Reply Brief* at p. 3. But Dr. Gillian did not just use photographs – he also interviewed each of the bellwether plaintiffs, asking them "what they saw, what they had experience with, [whether] the fieldmen . . . found anything that was out of the [ordinary] . . . ." *See Dr. Gallian Deposition* at p. 306.

The BLM cites to Dr. Gallian's deposition to support its claim that Dr. Gallian had a strict protocol for evaluating sugar beet damage, but in that citation, Dr. Gallian merely describes "usually what's done." *Id*. at p. 27. At another part of his deposition, he testifies that he has no written protocol but just uses his

**Memorandum Decision and Order re Motion to Exclude Dr. Gallian – Page 7**

experience, *id*. at 34-35, and often can diagnose causes of damage merely by appearance. *Id*. at p. 36.

This testimony does not demonstrate that Dr. Gallian so departed from standard investigation techniques that his opinions should be excluded. Accordingly, the Court will reject this argument.

The BLM argues next that Dr. Gallian's opinions regarding crop damage in 2000 to 2004 must be excluded because he admitted examining only photographs from 2001 and a few from 2002. He has no objective basis, the BLM asserts, to testify about crop injury for the years 2000, 2002, 2003, or 2004.

But he has only a single minor opinion that might arguably fall into this category. In ruling out powdery mildew as a factor in the crop loss, he testified that "the observed symptoms in the years 2000 to 2004 [of sugar beets] were not those of powdery mildew." *See Dr. Gallian Expert Report* at 6. Although he did not review photographs for 2000, 2002, 2003, and 2004, the photographs were not his only investigative technique, as the Court discussed above – he also interviewed the bellwether plaintiffs. Thus, the premise of the BLM's argument (that he only reviewed photos) is faulty and cannot support exclusion of this opinion.

The BLM cites other pages of his report where he allegedly renders similar

**Memorandum Decision and Order re Motion to Exclude Dr. Gallian – Page 8**

opinions, but his opinions there are quite different.  For example, at page 8 he states that "[t]here was no indication or report that rhizomania was more serious in 2000 through 2004 than expected."  This statement does not describe crop damage suffered by plaintiffs but merely comments on the lack of reports of rhizomania, a sugar beet disease that is a specialty of Dr. Gallian.  The statement did not require examining photographs, and concerns a subject on which Dr. Gallian is a leading authority.

The other pages cited by the BLM – pages 9 and 11 – contain almost precisely the same comment.  Because these statements are not descriptions of crop damage but are instead comments on sugar beet diseases within Dr. Gallian's area of expertise, they cannot be excluded on the ground Dr. Gallian failed to examine photos for those years.

The BLM argues that Dr. Gallian ruled out factors based solely on *ipse dixit* reasoning.  The Court disagrees.  Dr. Gallian's report contains a detailed statement of the typical symptoms of factors such as disease, insects, and climate, and then discusses their absence in this case.  The Court's reading of the report does not support the BLM's interpretation that is uses *ipse dixit* reasoning.

For all of these reasons, the Court will deny the BLM's motion.

**Memorandum Decision and Order re Motion to Exclude Dr. Gallian – Page 9**

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to strike the testimony of Dr. Gallian (Docket No. 770) is DENIED.



DATED: **April 27, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge