IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| TIMM ADAMS, et al, | Civ. No. 03-0049-E-BLW |
| Plaintiffs, | |
| v. | MEMORANDUM DECISION & ORDER RE DUPONT'S OMNIBUS MOTION IN LIMINE |
| UNITED STATES OF AMERICA, et al., | (Motions 1 through 10) |
| Defendants. | |

## INTRODUCTION

The Court has before it a DuPont's Omnibus Motion in Limine. The motion is fully briefed and at issue. The Court will rule below on ten of the motions raised in the Omnibus Motion and identified as motions that needed to be resolved before trial. The remaining motions raised in the Omnibus Motion will be addressed later. While DuPont requested oral argument on these ten motions, the Court finds that oral argument is not necessary.

**Motion #1 – Exclusion of Fraud Statements**

DuPont seeks to exclude evidence of alleged misleading statements by

**Memorandum Decision & Order re DuPont Omnibus Motion – page 1**

Dupont officials, other than the "plant as normal" statements discussed by the Court in its decision denying DuPont's summary judgment motion. The statements DuPont seeks to exclude include (1) "We're here to help"; (2) "We're going to take care of this problem"; and (3) "Till more."

DuPont argues that these statements were not alleged with specificity in the Third Amended Complaint. But the Court earlier denied DuPont's motion for summary judgment that made the same argument. In fact, plaintiffs' complaint does allege that DuPont promised assistance and then reneged, which is the core of the fraud claim. The Court refuses to exclude these statements.

DuPont also seeks to exclude certain fraud claims that were not heard by certain of the bellwether plaintiffs. This is another request for reconsideration from the Court's summary judgment decision, but the Court continues to adhere to that decision.

DuPont seeks to exclude any testimony from the non-bellwether plaintiffs that they heard misleading DuPont statements and relied on them to their detriment. But as the Court pointed out in its summary judgment decision, the plaintiffs could rely on third-parties communicating DuPont's misrepresentations to them if it was reasonable for DuPont to foresee that would happen. Here, non-bellwether Dan Schaeffer will testify that he heard alleged misleading statements

**Memorandum Decision & Order re DuPont Omnibus Motion – page 2**

from DuPont and passed them onto bellwether plaintiff Gary Hansen. Moreover, evidence that the non-bellwethers heard the statements and relied upon them is evidence that the bellwether's reliance was "justified," which is an element of fraud. For these reasons, the Court will decline to exclude evidence from the six testifying non-bellwether plaintiffs about fraud.

DuPont seeks to exclude evidence that the bellwether plaintiffs "took comfort" or "found relief" in DuPont's promises of assistance. This is some evidence of reliance, however, which is an element of fraud. The Court will not adopt DuPont's argument here.

This motion shall be denied.

**Motion #2 – Evidence of Fraud on the Agency**

DuPont seeks to exclude any attorney argument, expert characterization, or witness speculation that DuPont committed fraud on an agency. The Court has ruled in a prior decision – regarding experts Benbrook and Sielaty – that evidence of communications between DuPont and the agencies is not excludable simply because the Court dismissed the fraud-on-the-agency claim. The evidence of such communications is relevant for other purposes, such as proving the claims of misbranding or failure to warn.

However, by this motion, DuPont is not seeking to exclude those

**Memorandum Decision & Order re DuPont Omnibus Motion – page 3**

communications. Rather, DuPont is seeking the much more limited relief of excluding testimony or argument from counsel that uses the phrase "fraud on the agency." *See DuPont Reply Brief* at p. 5. Exclusion is appropriate given that the underlying claim for fraud on the agency was dismissed.

This motion shall be granted to exclude any testimony or argument that uses the phrase "fraud on the agency."

**Motion # 3 – DuPont's Response to EPA's "Qualitative Assessment"**

In 1994, the EPA published a "Qualitative Assessment of Sulfonylurea Herbicides and other ALS Inhibitors." DuPont responded by pointing out errors. Plaintiffs intend to introduce DuPont's response into evidence, particularly a paragraph stating that the transport of the herbicide by wind blown dust is "not even a theoretical possibility." DuPont seeks to exclude its response under the *Noerr-Pennington* doctrine.

The *Noerr-Pennington* doctrine applies to shield defendants from legal liability for claims based on their legitimate right to petition Government officials. *See Theme Promotions Inc. v. News America Mktg. FSI*, 546 F.3d 991 (9th Cir. 2008). Here, there are no such claims. Instead, DuPont's response will be used for other purposes. For example, as the Court held in a prior decision, there are questions of fact as to whether the EPA's knowledge should be imputed to the

**Memorandum Decision & Order re DuPont Omnibus Motion – page 4**

BLM. Moreover, the statement is relevant to plaintiffs' claims of misbranding and failure to warn, and shows the state of DuPont's knowledge which is relevant to many claims.

This is just the sort of use envisioned by the Supreme Court when it set up the doctrine: "It would of course still be within the province of the trial judge to admit this evidence [of efforts to influence public officials] if he deemed it probative and not unduly prejudicial . . . if it tends reasonably to show the purpose and character of the particular transactions under scrutiny." *See United Mine Workers of America v. Pennington*, 381 U.S. 657, 670 at n. 3 (1965).

So long as plaintiffs use DuPont's petitions for relevant purposes other than imposing liability on DuPont for the petition itself, the Court will not exclude that evidence. Certainly the evidence must not run afoul of Rule 403, but that is a call that the Court must make at trial.

DuPont also argues that its response to the EPA is being used by plaintiffs to show fraud-on-the-agency. But as the Court explained above, the evidence has other relevant purposes.

DuPont argues that its response to the EPA must be excluded under Rule 403. But that requires a finding that the probative value is substantially outweighed by the danger of unfair prejudice, confusion, or delay. As discussed

**Memorandum Decision & Order re DuPont Omnibus Motion – page 5**

above, the probative value of the response is quite substantial.  DuPont has not identified a factor such as prejudice or confusion that would substantially outweigh that probative value.

DuPont also seeks to exclude all pre-2001 communications between EPA and DuPont.  The Court declines to do so.  The evidence is relevant to plaintiffs' misbranding claim, and is not subject to exclusion under Rule 403 or the *Noerr-Pennington* doctrine as set forth above.

This motion shall be denied.

## Motion # 4 – Post Application Changes to Oust

DuPont seeks to exclude any testimony or evidence concerning any changes in the Oust label after the 1999 and 2000 applications, including the 2008 EPA Re-Registration Eligibility Determination (RED) for sulfometuron methyl that discusses a change to the Oust label.

Federal Rule of Evidence 407 states as follows:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

**Memorandum Decision & Order re DuPont Omnibus Motion – page 6**

Rule 407 is largely grounded in "a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." *See* Advisory Committee Notes to FRE 407.

The 2008 RED proposes changes to Oust's label. The EPA has received public comments on the RED and is presently evaluating them to determine whether any changes need to be made. While the BLM considers the RED to be a final document, the Court does not understand how this could be when the EPA has not finished its evaluation of the public comments.

Mere proposed changes are not "measures taken" under Rule 407, and hence would not be excludable under that Rule. But they would be excludable under Rule 401 as irrelevant.

If finalized in time for this trial, the changes become relevant under 401, and yet Rule 407 remains inapplicable because the label changes were mandated by the EPA, and not voluntarily undertaken by DuPont. *See O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1204 (8th Cir. 1990) (holding that Rule 407 does not operate to exclude remedial action mandated by governmental authority). Moreover, even if Rule 407 is applicable, the evidence falls under the last sentence of Rule 407 because it is one factor in showing the feasibility of precautionary measures, which is a defense

**Memorandum Decision & Order re DuPont Omnibus Motion – page 7**

to DuPont's claim that Oust is "unavoidably unsafe." This applies not only to the 2008 RED but to the 2002 label changes as well.

The Court will therefore grant this motion in part, to the extent it seeks to exclude the 2008 RED as irrelevant because it has not yet been finalized. It is denied in all other respects.

**Motion # 5 – Other Bad Acts**

DuPont seeks to exclude evidence of "other bad acts" under Rule 404(b). DuPont seeks to exclude (1) its profit motive; (2) evidence of other litigation growing out of the use of Oust by the Air Force; and (3) DuPont's alleged coercion of EPA officials. Dupont also seeks to exclude generally any evidence of past "bad acts" by DuPont.

Rule 404(b) forbids admission of evidence of a person's other crimes, wrongs, or acts "to prove the character of a person in order to show that he acted in conformity therewith," but provides that such evidence "may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The "rule is one of inclusion" in that other acts evidence is admissible whenever relevant to an issue other than the defendant's propensity to commit bad acts. *See U.S. v. Cherer*, 513 F.3d 1150, 1157 (9th Cir. 2008).

**Memorandum Decision & Order re DuPont Omnibus Motion – page 8**

The evidence is admitted under Rule 404(b) if (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged.  If the evidence meets this test under Rule 404(b), the Court must then decide whether the probative value is substantially outweighed by the prejudicial impact under Rule 403.  *Id.*

Applied to this case, it is not entirely clear that Rule 404(b) covers corporations like DuPont.  A leading treatise on federal evidence concludes that it does not apply.  *See* 22 Wright and Graham, *Federal Practice & Procedure*, § 5233 at pp. 360, 458 (1978).  Even if the Rule did not strictly apply, its guidelines are useful in evaluating the admissibility of evidence.

With regard to the alleged coercion of EPA officials, DuPont complains that plaintiffs plan to use the testimony of EPA scientist Dr. Thomas Pfleeger, who states that DuPont representatives visited him personally and asked questions during talks he gave, and "[o]ne question wasn't particularly friendly."  *See Dr. Pfleeger Deposition* at p. 96.  Dr. Pfleeger identified a specific meeting with DuPont representatives that was "intimidating," and observed that when they left, "[t]hey seemed to be satisfied that we weren't going to conduct very much more research on the sulfonylureas . . . ." *Id.* at p. 97.

**Memorandum Decision & Order re DuPont Omnibus Motion – page 9**

The evidence is material to rebut DuPont's claim that the EPA independently evaluated the risks of using Oust before approving any label. DuPont makes no claim that it is remote in time, and while arguing that it never happened, DuPont does not ask the Court to make that factual determination now. DuPont does argue that the "intimidating" situation described by Dr. Pfleeger concerned an entirely different DuPont product called Glean. But in the deposition excerpts provided to the Court, Dr. Pfleeger is clearly discussing "sulfonylureas" generally, a class of herbicides including Oust.

For these reasons, the Court refuses to exclude the evidence regarding coercion of EPA officials under Rule 404(b). If that Rule is inapplicable, the Court reaches the same conclusion as the evidence is not irrelevant under Rule 401 or unduly prejudicial under Rule 403.

The incident regarding the Air Force is not sufficiently described to allow the Court to make a decision of exclusion under Rule 404(b) or any other Rule. Accordingly, the Court will deny the motion as to the Air Force matter.

Evidence regarding DuPont's profit motive is likewise admissible under Rule 404(b) as going to knowledge and motive. For example, DuPont alleges that the BLM was pursuing Oust for its own purposes. Evidence of DuPont's profit margins would be relevant to rebut this argument by DuPont. No Rule 403

**Memorandum Decision & Order re DuPont Omnibus Motion – page 10**

exclusion appears applicable.

DuPont seeks the exclusion of other "bad acts" but is no more specific about them. Accordingly, the Court will not rule on them at this time.

This motion shall be denied.

## Motion # 6 – Incidents involving Oust or other Sulfonylureas

DuPont seeks to exclude all prior litigation and incidents regarding Oust or other sulfonylureas. DuPont provides no specifics on the litigation or incidents sought to be excluded. The Court discussed Rule 404(b) above, but has no way of evaluating whether the litigation or incidents are dissimilar or too remote under Rule 404(b), or whether they threaten to bog the case down in mini-trials under Rule 403. Without specifics, the Court cannot exclude evidence generally.

This motion shall be denied.

## Motion # 7 – DuPont Knowledge of BLM Application Sites

DuPont seeks to exclude testimony that (1) it had actual advance knowledge of any specific BLM application of Oust, (2) was present at any application, or (3) was consulted by the BLM about any of the specific applications. *See DuPont Reply Brief* at p. 10. DuPont asserts that there is no evidence to support testimony on any of these three matters.

DuPont is concerned because some of plaintiffs' witnesses, during their

**Memorandum Decision & Order re DuPont Omnibus Motion – page 11**

depositions, have speculated that DuPont "must have" recommended specific application sites to the BLM.  However, DuPont provides only one such example.  *See Miller Deposition* at p. 254-58.  DuPont argues that such testimony would violate Rule 602, which requires personal knowledge.

The Court agrees with DuPont's that the deposition testimony of plaintiffs' expert Terry Miller would violate Rule 602 since he was clearly speculating that DuPont recommended specific application sites to the BLM.  *Id.* ("I don't have specific knowledge of that").  Without further specifics, the Court can make no further ruling on this motion.

The Court will grant this motion in part, to the extent it seeks to exclude the testimony of plaintiffs' expert Terry Miller that DuPont recommended the use of Oust for particular applications.  The motion is denied in all other respects.

## Motion #8 – Lay Opinion that Oust Caused Crop Damage

DuPont seeks to exclude any lay opinion that crop damage symptoms were caused by Oust.  In an earlier decision, the Court held that a farmer could testify about "pesticides or fertilizers that he is familiar with."  *See Memorandum Decision (docket no. 697)* at p. 6.  In that decision, the Court noted that proffers of testimony of some of the bellwether plaintiffs indicated that they lacked familiarity with Oust damage to crops and yet were testifying that "Oust adversely impacted

**Memorandum Decision & Order re DuPont Omnibus Motion – page 12**

his crops." The Court stated that "if the farmer has no experience with these symptoms, then any opinion by that farmer that Oust-contaminated dust caused the symptoms has no basis in experience . . . [and] is not admissible under Rule 701."

The Court holds to that decision. For a lay witness to testify that Oust caused crop damage, plaintiffs must lay a foundation under Rule 701 that the witness (1) personally observed certain crop symptoms; and (2) had past experience with Oust damage to crops that allowed him to do more than speculate that Oust caused the symptoms he observed. This foundation for allowing lay witnesses to testify that damage to crops was caused by Oust has already been laid out in a prior decision. Thus, the Court finds no reason to grant the present motion.

This motion shall be denied.

## Motion # 9 – Judicial Estoppel re Mandatory Oust Label

DuPont seeks to bar plaintiffs from arguing that the warnings on the Oust label were advisory, not mandatory. The Court has previously rejected this argument, and finds no reason to change its opinion here. *See Memorandum Decision (docket no. 982).*

This motion shall be denied.

## Motion # 10 – References to Ultrahazardous or Unavoidably Unsafe Product

DuPont seeks to bar attorneys and witnesses from referring to Oust as either

**Memorandum Decision & Order re DuPont Omnibus Motion – page 13**

(1) an ultrahazardous product or (2) an unavoidably unsafe product.  The latter term cannot be banned from the courtroom because DuPont itself has a defense to strict liability that requires proof that Oust was unavoidably unsafe.

With regard to the former term, DuPont does not describe any specific problem that the use of that term would cause – indeed its use might help DuPont establish its defense that Oust is unavoidably unsafe.  For example, DuPont does not identify any remaining cause of action that requires proof that Oust is "ultrahazardous."  Thus, it is unclear why the informal use of that term by a witness would invade the province of the jury, cause confusion, or lead to prejudice.  If a witness uses the term in a descriptive sense, DuPont is free to cross examine the witness on such usage.

This motion shall be denied.

## ORDER

In accordance with the Memorandum Decision above,

NOW THEREFORE IT IS HEREBY ORDERED that the Omnibus Motion in Limine (docket no. 941) is GRANTED IN PART, DENIED IN PART, AND RESERVED IN PART.  It is reserved to the extent that it seeks a ruling on motions numbered 11 through 31. With regard to motions numbered one through ten, they are granted in part to the extent they seek exclusion of the following: (1) use of the

**Memorandum Decision & Order re DuPont Omnibus Motion – page 14**

phrase "fraud on the agency" by witnesses or counsel; (2) evidence regarding the 2008 RED until it is finalized; (3) testimony of plaintiffs' expert Terry Miller that DuPont must have recommended the use of Oust for particular applications or was present at any application site.  The motions numbered one through ten are denied in all other respects.



DATED:  **May 3, 2009**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision & Order re DuPont Omnibus Motion – page 15**