IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| TIMM ADAMS, et al, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> et al., ) <br> ) <br> Defendants. ) <br> _____) | Civ. No. 03-0049-E-BLW <br><br><br><br> MEMORANDUM DECISION <br> ON PRECLUSION |

## INTRODUCTION

The Court has before it an issue regarding issue preclusion. The issue has not been raised by motion, but was fully discussed by all the parties in a series of briefs. The Court analyzes the issue below.

**Memorandum Decision on Preclusion – page 1**

## ANALYSIS

### Legal Standard

Issue preclusion prevents a party from re-litigating an issue decided in a previous action if four requirements are met: (1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action. *Kendall v. Visa U.S.A. Inc.,* 518 F.3d 1042, 1050 (9th Cir. 2008). The burden to prove each of these elements is on the party seeking to rely upon issue preclusion. *Id*. at 1050-51.

Obviously, at this stage of the litigation – prior to the trial – the Court cannot divine the precise issues that will be "actually litigated" and resolved at trial. However, the Court will assume that all claims raised by plaintiffs, and still remaining in the case, will be tried to a resolution by the jury in this bellwether trial. With that assumption, the Court offers the following analysis of the preclusion issue.

### Prior Decision on Preclusion

In a decision filed August 1, 2007, the Court held that this case would

**Memorandum Decision on Preclusion – page 2**

proceed to a "bellwether trial with preclusive effect." The Court reasoned that the large number of plaintiffs made unworkable a single trial on all issues. Instead, the Court decided to select a small representative sample – the bellwether plaintiffs – and proceed to trial on their claims. To avoid wasteful repetition, the Court held that common issues resolved in the first trial would be given preclusive effect in subsequent trials.

As examples, the Court listed issues involving both causation and liability. The Court stated that "[l]ikely candidates" for preclusion could include answers to the following questions: (1) Was DuPont negligent in its design, manufacture, testing, labeling, and marketing of Oust?; (2) Was the BLM negligent in selecting Oust for this project?; (3) Is Oust capable of causing crop damage and, if so, under what conditions; and (4) What was defendants' awareness of these conditions? *See Memorandum Decision filed August 1, 2007 (docket no. 272)* at p. 5.

The Court broke down further the causation issues that appeared amenable to preclusive treatment. They included, (1) the amount of Oust necessary to damage crops; (2) the length of time that Oust remains viable in the soil; (3) how Oust works on plants to cause damage; (4) the winds necessary to transport Oust; (5) the sensitivity of various crops to Oust; and (6) the symptoms of Oust damage.

Finally, the Court noted that "resolution of these issues does not relieve

**Memorandum Decision on Preclusion – page 3**

plaintiffs of the requirement to prove that Oust caused the damage alleged by each and every plaintiff."

**Liability Issues**

With regard to liability issues – that is, issues whether DuPont and the BLM were negligent, for example – the analysis contained in the prior decision stands up over time.  Generally, the liability issues meet all the requirements of *Kendall*.  The two exceptions appear to be (1) the fraud claim in Count 15 that requires individual proof on whether a particular plaintiff heard and relied upon the alleged misrepresentation, and (2) the trespass claim that appears to require individual proof of trespass onto the farms of each plaintiff.  The liability findings on the other 13 claims in the case – whether based on negligence, negligence *per se,* strict liability, or misbranding – will almost certainly be given preclusive effect.

**Causation Issues**

The parties are much more seriously divided on the preclusive effect of causation findings.  While the parties generally agree that preclusion should be limited to issues of general, rather than specific, causation, they cannot agree on how far general causation reaches.

The general causation issues to which preclusion could be applied, according to defendants, are issues like (1) Can Oust harm potatoes or sugar beets?; (2) Can

**Memorandum Decision on Preclusion – page 4**

Oust travel on eroded soil for a distance of X miles?; (3) Can Oust maintain its potency for X months?

Plaintiffs, however, want to go further, and preclude not only what Oust *can* do but also what it *actually did*, to some degree. Specifically, plaintiffs assert that "the essential causation issues can be established with as few as three straightforward questions, which capture the three essential issues: (1) that Oust in fact eroded from the BLM lands and was blown predominately to the east with prevailing winds; (2) that Oust was deposited in an area at least as large as is occupied by the plaintiffs' fields; and (3) that Oust was deposited within the area in sufficient amounts to cause crop damage." *See Plaintiffs' Opening Brief* at p. 11.

The BLM accuses the plaintiffs of "trying to determine in one fell swoop, that (a) *any* plot of land, in (b) *any* location within a roughly 70-mile-wide stretch of southern Idaho, in (c) *any* claimed crop year, was (d) contaminated with Oust from (e) BLM lands in (f) quantities sufficient to cause injury to (g) *any* crop claimed by (h) *any* plaintiff. *See BLM's Brief* at p. 3.

In their reply brief, the plaintiffs do not take issue with this description. Thus the Court understands plaintiffs to be seeking to establish in this bellwether trial a "contamination zone" – a swath of land deemed contaminated by a level of Oust toxic to any crop planted by any plaintiff (not just the four bellwethers)

**Memorandum Decision on Preclusion – page 5**

within the zone.

The Court must maintain a distinction between general causation issues, that apply to all plaintiffs, and specific causation issues, that must be proved by each plaintiff. In analogous cases involving toxic torts, causation "is typically discussed in terms of generic and specific causation." *See In Re Hanford Nuclear Reservation Lit.*, 292 F.3d 1124, 1133 (9th Cir.2002). General or generic causation means "whether the substance at issue had the capacity to cause the harm alleged." *Id.* In *Hanford*, for example, the Ninth Circuit explained that the general causation inquiry was "whether exposure to a substance for which a defendant is responsible, such as radiation at the level of exposure alleged by plaintiffs, is capable of causing a particular injury or condition in the general population." *Id.*

To ultimately prevail in such a lawsuit, however, a plaintiff must show both general and "individual" or "specific" causation. *Id.* Specific causation refers to whether a particular individual suffers from a particular ailment as a result of exposure to a substance. *Id.* "Although many common issues of fact and law will be capable of resolution on a group basis, individual particularized damages still must be proved on an individual basis." *Id*. at 1135 (quoting *Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188, 1200 (6th Cir.1988)).

Here, it would appear that general causation issues would include (1) the

**Memorandum Decision on Preclusion – page 6**

amount of Oust necessary to damage crops; (2) the length of time that Oust remains viable in the soil; (3) how Oust works on plants to cause damage; (4) the winds necessary to transport Oust; (5) the sensitivity of various crops to Oust; and (6) symptoms of Oust damage.  The resolution of these issues will apply to all plaintiffs and will not be subject to change due to variation in individual circumstances.

     Moreover, the results of the first trial on causation will be preclusive on all parties.  In other words, the Court envisions that the first jury will be asked to find whether Oust was or was not transported by wind-blown dust to areas outside of the application area and whether such wind-blown dust is capable of damaging crops in down-wind locations.   If those questions are answered in the negative, they would have a preclusive effect on all other plaintiffs and presumably end the litigation.  On the other hand, if the questions are answered in the affirmative, they will have preclusive effect on the defendants and will be an established fact for all future trials.   The only causation question remaining for subsequent juries is whether the Oust-contaminated dust settled on the non-bellwether plaintiffs' fields and whether it damaged their crops.

     The Court refuses, however, to go further and establish in this bellwether trial a "zone of contamination" that would extend beyond the location of any

**Memorandum Decision on Preclusion – page 7**

specific crops that this jury finds were damaged by Oust.  To establish such a zone would extend this trial immensely.  The evidence would have to establish with precision boundaries of the "zone" and, within it, the toxicity of Oust border-to-border.  The "zone" would include areas and crops that are not even at issue in this bellwether trial.  And how many years will such a "zone" last?  By the second or third year after application – years for which plaintiffs claim damages – different sections of land within any "zone" may have been treated, tilled, and worked much differently than other sections of land within the "zone."  In other words, individual variations matter – establishing a "zone" under those circumstances would deprive defendants of their right to require plaintiffs to prove specific causation.

## Conclusion

Summarizing the discussion above, the following issues will be given preclusive effect:

(1) All liability issues (except for fraud and trespass).

(2) General causation issues including (1) the amount of Oust necessary to damage crops; (2) the length of time that Oust remains viable in the soil; (3) how Oust works on plants to cause damage; (4) the winds necessary to transport Oust; (5) the sensitivity of various crops to Oust; (6) the symptoms

**Memorandum Decision on Preclusion – page 8**

of Oust damage, (7) whether Oust actually was transported by wind-blown dust into areas outside of the application area; and (8) whether such wind-blown dust was capable of damaging crops in down-wind locations.



DATED:  **May 4, 2009**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision on Preclusion – page 9**