IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TIMM ADAMS, et al, | Civ. No. 03-0049-E-BLW |
| Plaintiffs, | |
| v. | MEMORANDUM DECISION AND ORDER REGARDING MOTIONS TO: EXCLUDE DR. ZANNETTI; TO EXCLUDE 54 APPLICATION SITES; TO EXCLUDE POTENTIAL ALTERNATIVE CAUSES |
| UNITED STATES OF AMERICA, et al, | |
| Defendants. | |

## INTRODUCTION

The Court has before it motions by the plaintiffs, DuPont, and the BLM. The Court's rulings are set forth below.

## ANALYSIS

**Motion to Exclude Dr. Zannetti**

DuPont seeks to exclude any testimony from plaintiffs' expert, Dr. Paolo Zannetti, on the ground that plaintiffs failed to disclose him as an expert by the deadline for disclosure, September 2, 2008. There is no dispute that plaintiffs failed to identify Dr. Zannetti as an expert by the deadline for disclosure of experts.

**Memorandum Decision & Order – page 1**

The plaintiffs did, however, timely disclose Dr. Walter Shields as an expert, and his report states that he relied on Dr. Zannetti's air dispersion model – known as the CALPUFF model – to support his soil transport opinions. Dr. Shield's report attaches Dr. Zannetti's report, a detailed 45-page analysis. In addition, plaintiffs provided defendants with an electronic version of Dr. Zannetti's working files.

The BLM sought Dr. Zannetti's deposition, and the plaintiffs and the BLM agreed that the BLM would not object to Dr. Zannetti being called as an expert witness. DuPont refused to waive its objection. Dr. Zannetti's deposition was taken on November 25, 2008, and he was questioned by the BLM and DuPont. Prior to that deposition, plaintiffs provided to defendants Dr. Zannetti's CV and list of publications and prior testimony.

The BLM retained an expert who was critical of Dr. Zannetti's model. Dr. Zannetti provided a rebuttal report to that expert, and gave a rebuttal deposition where he was questioned by both DuPont and the BLM. DuPont's expert David Esterly reviewed Dr. Zannetti's report and commented on his opinions.

Rule 26(a)(2)(A) requires disclosure of the identity of any expert witness, and Rule 26(a)(2)(B) requires the expert to prepare a report containing "a complete statement of all opinions to be expressed and the basis and reasons therefor."

**Memorandum Decision & Order – page 2**

The sanctions for failing to comply with these provisions are set forth in Rule 37(c)(1). Under that Rule, a party that "without substantial justification" fails to disclose information required by Rule 26(a), "is not, unless such failure is harmless, permitted to use as evidence at a trial . . . information not so disclosed." The burden of proving substantial justification and harmlessness lie with the party seeking to avoid sanctions. *See Yeti by Molly LTD. v. Deckers Outdoor Corporation*, 259 F.3d 1101, 1106 (9th Cir. 2001).

The Court finds that plaintiffs have carried their burden here. First, they had substantial justification in believing originally that Dr. Shields' testimony would render Dr. Zannetti's testimony unnecessary. Nevertheless, Dr. Zannetti's full report was provided to DuPont, including his working files in electronic format. About two months later, when it became evident that Dr. Zannetti's testimony would be needed, plaintiffs notified the defendants that they wanted Dr. Zannetti to testify as an expert, and provided him for his deposition. DuPont participated at both that deposition and at a rebuttal deposition. Moreover, DuPont has retained an expert to testify in rebuttal to Dr. Zannetti. Under these circumstances, plaintiffs have proven both substantial justification and harmlessness.

This motion shall be denied.

**Memorandum Decision & Order – page 3**

**BLM's Motion to Exclude Testimony of 54 Application Sites**

The BLM moves to exclude evidence of 54 application sites for which there is no expert testimony that Oust from those sites traveled to any of the Growers' fields. With respect to 17 other application sites, Dr. Shields did testify that Oust traveled on wind-blown dust to the Growers' fields. There was no similar expert testimony as to the 54 application sites identified by the BLM in its motion, and the BLM seeks exclusion of any testimony that Oust from these 54 application sites contributed or caused the Growers' damages.

The BLM argues that expert testimony is necessary to establish off-site transport of Oust. Plaintiffs respond that "[t]he jurors will hear that dust can be transferred long distances by wind. If there is testimony about these other spray sites, and the jurors believe it is reasonable to infer that dust from those sites may also have contributed, this Court should not deprive them of that inference in advance, before the locations, size, and other facts of those sprays are presented." *See Plaintiffs' Brief* at p. 3.

The Court has already held in a prior opinion that a lay witness could testify that crop damage he or she personally observed was caused by Oust if that witness had sufficient prior experience with Oust damage to crops. However, only an expert could render an opinion that Oust was transported from a particular

**Memorandum Decision & Order – page 4**

application site to a farmer's field.  We know from plaintiffs own expert Dr. Shields' that off-site transport depends on application amounts, soil conditions, rainfall, prevailing winds, and other factors.  Only someone with specialized knowledge can evaluate these factors and conclude that Oust could move from a certain site to certain fields.[1]

Yet plaintiffs have offered no expert testimony that Oust moved off these 54 sites.  This requires the exclusion of any testimony that Oust was transported from these 54 sites to any other location.  Plaintiffs retain the right to request a side-bar to make a proffer to identify the support in the record for their assertion that Oust was transported from these 54 sites to another location.

**Potential Alternative Causes**

Plaintiffs move to exclude any mention or suggestion of alternative causes of crop damage for which there is no support or evidence of causation in this case. Plaintiffs anticipate that defendants will present argument inferring that a laundry list of potential causes of crop damage (root maggots, nematodes, field slope, blight, seed variety, etc.) caused the crop damage when there is no evidence

---

[1] The Court does not exclude the possibility that a jury might be able to infer causation from circumstantial evidence of temporal and physical proximity between the application of Oust and observed damage to crops.  However, there is no indication that the application sites here were in such close proximity to the affected fields that such an inference can be drawn without the assistance of expert testimony..

**Memorandum Decision & Order – page 5**

supporting such an inference. Plaintiffs argue that the probative value of introducing evidence of potential alternative causes for which there is no evidence is outweighed by the danger of unfair prejudice under Rule 403.

Defendants argue that plaintiff's motion should be denied for several reasons: (1) the plaintiffs' burden includes proving that Oust caused their damage, versus other factors, and therefore it would be unfair to disallow testimony of other potential causes by the defendants; (2) Idaho cases regarding crop losses make it clear that permissible evidence includes "inferences linking losses to the variety of causes and possible causes," citing *Wing v. Hulet*, 684 P.2d 314, 320 (Ct. App. 1984) and *Zanotti v. Cook*, 129 Idaho 151, 922 P.2d 1077 (1996); (3) it is improper for the Court to determine before the evidence that it is insufficient to establish causation, citing *Chisholm v. JR Simplot*, 94 Idaho 628, 495 P.2d 1113 (1975); (4) the standard for a reliable expert opinion in this case requires a "differential diagnosis," which includes ruling out other possible causes, and that requires that defendants be allowed to present testimony as to what these causes could be; and finally, (5) the cases show that the lack of any evidence supporting these possible alternative causes could be dealt with on cross examination.

In *Wing* – a crop loss case – the Idaho court stated that "the evidence must show that the loss was produced by a defendant's conduct rather than by such other

**Memorandum Decision & Order – page 6**

variables as weather, insects, disease, weeds or the plaintiff's own farming practices." *Wing*, 684 P.2d at 918.  The court did not mean, however, that in every crop loss case the plaintiff must negate a vast list of theoretical causes.  In *Wing*, the plaintiff presented sufficient proof that the cause of the crop loss was lack of water.  *Id*. at 919.  The court did not take the plaintiff to task for failing to negate a long list of other theoretical causes of the crop loss; the plaintiff merely had to negate the single alternative cause on which evidence had been submitted – a hail storm.  *Id.*

*Wing* is consistent with other Idaho cases on crop losses.  In *Zanotti*, the plaintiff prevailed by proving that his crop damage was caused by a failure to irrigate.  *Zanotti,* 922 P.2d at 1080-81.  There was no discussion about an additional requirement that plaintiff negate other common factors of crop loss.  In *Chisholm*, the defendants submitted evidence proving that causes other than that alleged by plaintiff were responsible for his loss.  *Chisholm*, 495 P.2d at 1117.  There is no discussion holding that plaintiffs have the burden of negating causes for which no evidence exists in the record.

Under Idaho law, the plaintiffs need only exclude reasonably likely causes, not every possible cause.  *See Farmer v. International Harvester Co.,* 553 P.2d 1306, 1313 (1976).  No Idaho case allows defendants to argue that theoretical

**Memorandum Decision & Order – page 7**

causes of crop damage – with no support in the record – should have been ruled out by plaintiffs. In other words, to argue that plaintiffs failed to rule out a certain cause, defendants must point to some evidence in the record from which a reasonable juror could find that it was reasonably likely that the cause contributed to the crop damage seen here.

DuPont raises an example of proper supporting evidence in its briefing. DuPont notes that its expert, Dr. Wilson, testified that some of Gary Hansen's sugar beet damage may have been due to the persistence in the soil of an herbicide known as Sencor. With that support in the record, DuPont may ask Hansen and the experts testifying on his behalf whether they considered Sencor as a cause of damage. But DuPont cannot ask whether they considered root maggots, a theoretical cause of crop damage that has not been linked to the damages suffered here by any evidence in the record.

DuPont argues that this is a legitimate area of inquiry in cross-examination of plaintiffs' witnesses. DuPont asserts that to challenge the failure of plaintiffs' experts to perform a differential diagnosis, DuPont must be allowed to ask about potential causes that the experts did not consider. DuPont does not explain, however, why it would be relevant for an expert to fail to consider a potential cause of crop damage for which there is absolutely no evidence.

**Memorandum Decision & Order – page 8**

Accordingly, the Court will grant plaintiffs' motion. The Court will exclude any evidence, testimony or argument of potential alternative causes that have no support in the record. Just as with the motion regarding the 54 BLM application sites, the Court will permit counsel to make a proffer. If plaintiffs object to any attempt by defendants to submit evidence on alternative causes, the defendants may ask for a side-bar to make a proffer to identify the support in the record for the alternative cause.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to exclude Dr. Zanetti (docket no. 941 - part 17) is DENIED;

IT IS FURTHER ORDERED, that the motion to exclude potential alternative causes (docket no. 926) and the motion to exclude testimony regarding 54 BLM application sites (docket no. 911) are GRANTED.

DATED: **May 7, 2009**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge