IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| TIMM ADAMS, et al, | ) ) ) | Civ. No. 03-0049-E-BLW |
| Plaintiffs, | ) ) | |
| v. | ) ) | MEMORANDUM DECISION and ORDER ON DUPONT'S |
| UNITED STATES OF AMERICA, et al., | ) ) | MOTION TO EXCLUDE TESTIMONY OF GALLIAN/DYER |
| Defendant. | ) ) ) | (Docket No. 783) |

INTRODUCTION

Before the Court is the portion of DuPont's motion to exclude or limit testimony of Plaintiffs' Crop experts (Docket No. 783) that pertains to Drs. Dyer and Gallian.  For the reasons expressed below, the Court denies the motion.

**ANALYSIS**

Dupont seeks to exclude or limit the testimony of all of Plaintiffs' "crop experts" on two alternative basis grounded in *Daubert* principles.  First, DuPont argues that the expert's each employ a technique to analyze crop damage ("Comparative Symptomology") that is not scientifically sound.  Alternatively, DuPont argues, that if the Court finds the method sound, the expert's opinions

**Memorandum Decision & Order – page 1**

must still be excluded because they each failed to apply the method consistently and reliably in rendering their opinions regarding crop injury for the years of 2000, 2002, 2003 and 2004.  DuPont takes no issue with the expert's methodology as it pertains to their opinion about crop injury in 2001.

The Court addresses the motion only as it applies to the "Comparative Symptomology" method in general, and Drs. Dyer and Gallian use of that method. The remainder of the motion will be resolved by way of a separate decision.

The Methodology

DuPont argues that the Plaintiffs' crop experts' methodology is not sound science because, generally, the experts start with the conclusion that Oust caused the damage and then work backwards to support the theory by correlating carefully selected facts while ignoring other facts that do not support the theory. Specifically, DuPont argues that Plaintiffs' experts employ a "comparative symptomology" method that involves three steps:

1.   Rule-in the possibility of Oust-caused crop injury by examining the visual symptoms and determining that Oust is a possible cause;

2.   Rule-out alternative causes of symptoms; and

3.   Employ the "Oust-plume" theory, which the Court understands to mean that the experts then confirm that the claim field is within the

**Memorandum Decision & Order – page 2**

known "damage area" (which is in the shape of a "plume") based on prior investigations.

DuPont argues that the method is not sound for a number of reasons including that (1) the experts fail to conduct a field by field analysis ruling out possible alternative causes in each field; (2) the data for the years 2000, 2002-2004 is inherently unreliable because it depends on the growers' own self-serving descriptions of crop injury, (3) the "Oust-plume" theory assumes damage and then looks for ways to support the theory, (4) the experts failed to test their visual observations against "measurable" criteria including the soil sample analysis, comparison of frequency of crop injury outside of the "plume", year-end crop loss numbers, and (5) the experts cherry-picked the studies they would rely upon in support of their theory.

Plaintiffs dispute DuPont's criticism of the Plaintiffs' experts' methodology. Plaintiffs explain that the experts base their opinions on the physical symptoms exhibited by the crops, the elimination of other reasonable causes, and the evidence that Oust moved off the BLM Targe sites.  One component of this analysis – the comparison of the observed symptoms to symptoms caused by known SU herbicides – is the primary focus of DuPont's criticism.

Plaintiffs argue that visual diagnosis of crop injury is a well recognized

**Memorandum Decision & Order – page 3**

method in agronomy.  It is the first step of a multi-step process the plaintiffs'

experts undertook which involves:  visual determination of the symptoms based on

independent studies, compendia and diagnostic manuals; review of observed

symptoms through crop damage reports, photographs, notes and field observations;

cross-referencing the symptoms with information gained as experts in the relative

discipline and published compendia; evaluating the reasonably possible alternative

sources in the area; and, finally, eliminating other reasonably possible causes of the

same symptoms.

Plaintiffs further address DuPont's "Oust-plume" theory by explaining that

the experts considered as a factor in their analysis the independent investigative

studies done by John Cantlon, the USEPA, ISDA and the University of Idaho ag-

extension researchers which concluded that Oust was the most probable

explanation for the wide-spread damage on the growers' fields.

Plaintiffs argue that the methodology is generally accepted in the scientific

community, and is not being used to support a novel theory; that several other

experts in the litigation employed and/or endorsed the same techniques, and that

even DuPont has identified the technique as a method for identifying crop injury

(*Affidavit of Steve Anderson*, Docket No. 848, Ex. 43, p. 8, recommending field

bioassay in Oust product label to determine if injury will occur to desired crop; Ex.

**Memorandum Decision & Order – page 4**

44, DuPont recommending injured growers do field bioassay in area of suspected

Oust contamination; Ex. 41, DuPont researching Oust in late 1980s did field

bioassay.)

The Court agrees with Plaintiffs' position and finds no basis to conclude that

the "comparative symptomology" method is not scientifically sound.   Such an

approach is akin to that used by physicians who identify specific symptoms of a

patient, develops a differential diagnosis, rule out unlikely causes of the symptom,

and – at least partially by a process of exclusion – reach a conclusion to a

reasonable degree of probability as to the cause of the symptoms.    Moreover, this

approach has been directly endorsed by the Plaintiffs' many experts, whose

credentials suggest that they are recognized leaders in their respective disciplines.

As discussed above, the same approach has been indirectly endorsed, in principle,

by DuPont's own experts.   Finally, DuPont has not presented any controverting

evidence or expert testimony in support of its argument that the "comparative

symptom ology" method is untrustworthy, lacks scientific rigor or is at odds with

known science.

The court specifically rejects DuPont's contention that there is a unique

requirement under Idaho law with respect to proving causation in a crop damage

**Memorandum Decision & Order – page 5**

case.[1]  It further rejects the contention that the method is inherently unreliable to the extent an expert relies on the growers' reports of observations of their crop injuries.

In this case, Plaintiffs' experts employed an accepted methodology – field bioassay analysis –  to determine that crops were damaged, determined the possible causes of the type of damage, and then ruled out those that were not reasonably possible based on the conditions of the entire area.  The experts concluded that Oust was the most likely cause to a reasonable degree of scientific probability. This is sufficient to admit the testimony under Rule 702.  The Court denies the motion to exclude the Plaintiffs' experts' opinions or testimony on the grounds that they employ a scientifically unsound methodology.

The Court next considers DuPont's argument that Drs. Dyer and Gallian failed to consistently follow their adopted methodology in rendering their opinions

---

[1]The Court has reviewed the two Idaho cases cited on this issue and does not find any support for the field-by-field analysis requirement to prove 'specific causation' suggested by DuPont.   For example, in *Nelson v. Holdaway Land and Cattle Co.*, 107 Idaho 550, 691 P.2d 796 (Ct. App. 1984) , the plaintiff failed to put forth any evidence that would apportion the cause of crop damage between "numerous causes for which [the defendant] was not responsible."  *Id.* at 798.  The trial court concluded the plaintiff failed to meet his burden to prove that his crops or fields were damaged by the defendant.  The Court of Appeals affirmed on this issue; there was no discussion about the necessity to prove damages on a field-by-field basis.  *Chisholm v. J.R. Simplot*, 94 Idaho 628, 495 P.2d 113 (1972) is in accord.  Both  cases set forth black letter law on the requirements of proving causation and damages generally, apply it to the specific facts of the case, and suggests no additional requirements of causation in crop-loss cases.

**Memorandum Decision & Order – page 6**

regarding crop injury.

Dr. Dyer

DuPont argues that Dr. Dyer failed to follow the comparative symptomology methodology with regard to his opinion concerning the 2002, 2003, and 2004 crop years, because he did not personally confirm the presence of crop injury symptoms or rule out alternative causes for the alleged crop injury in those years.

However, Dr. Dyer is unlike the other challenged experts, in that he does not employ or rely upon the comparative symptomology method at all.   As represented to the Court, Dr. Dyer is an expert in "herbicide modes of action, plant responses to herbicides, herbicide resistance in weeds, and herbicide behavior in the environment."  Docket No. 848, p. 12.   Dr. Dyer's opinions thus focus on the conditions and circumstances that impacted "Oust's behavior" on the farmland, how Oust kills plants and how and why it remained "potent" in the fields for four growing seasons, and why biological detection is more reliable in this instance than soil testing is to detect the presence of Oust.  It does not appear that DuPont has actually challenged any of the methods upon which Dr. Dyer relies.

DuPont has not set forth a proper basis to exclude Dr. Dyer's testimony.  It appears that DuPont has lumped Dr. Dyer in with Plaintiff's other experts, and not properly differentiated between the different role, expertise and approach  of each

**Memorandum Decision & Order – page 7**

expert.  The opinion of each expert must be considered based on the purpose for which it is offered.  Dr. Dyer's expertise was not in the crop injury itself, but in the mode of action of the herbicide.  He does not purport to be a beet or potato expert. Accordingly, he properly relies on the observations of experts in these realms in forming his opinions.   Since DuPont raises no other objection to the opinion, the Court denies the motion to exclude or limit Dr. Dyer's testimony.

Dr. Gallian

DuPont argues that Dr. Gallian did not visit any of the Bellwether fields in 2000 or 2002 or view any photos from these years; that he was not contacted by any plaintiff in 2000 about crop problems; that he did not rule out potential alternative causes on a field-by-field basis for either 2002 or 2002; that he did not assess any yield loss or economic impact due to Oust in crop years 2000 or 2002. DuPont further argues that Dr. Gallian comes to his opinions only by relying on telephone interviews he had with the Plaintiffs and other field men who observed the crops in 2000 and 2002.

Dr. Gallian is a plant pathologist and an expert in sugar beets.  This is the Defense's third attempt at excluding some portion of Dr. Gallian's testimony, and second attempt at excluding it based, in part, on his failure to rule out alternative causes of the sugar beet damage and follow a particular methodology.   The court

**Memorandum Decision & Order – page 8**

has rejected each previous objection to Dr. Gallian's testimony.

In its last decision regarding Dr. Gallian, the Court specifically noted that Dr. Gallian's report contains a detailed discussion ruling out certain factors as causes of the sugar beet losses suffered by the plaintiffs here. *See* Order, Document No. 1000, p. 2. (These causes included powdery mildew, leafspot, root, and crown rot, rhizomania, beet curly top virus, nutrient deficiency and climate factors. *Id.* at p. 3.)  DuPont's argument focuses on the alleged Idaho requirement of a field-by-field analysis ruling out alternative causes, which, as stated above, the Court rejects.  The Court has also sanctioned Dr. Gallian's reliance upon interviews with the growers and field men of their observations of the crops.  (See Document No. 1000, p. 7 - 9).  DuPont presents no new basis upon which the Court would reconsider its prior ruling that Dr. Gallian's opinion should not be excluded on this basis.

Finally, Dr. Gallian is not being offered as an expert on the extent of Plaintiffs' economic loss.  Accordingly, the fact that he did not conduct any yield loss or economic loss analysis in his opinion is irrelevant.

The motion is denied with respect to Dr. Gallian.

Finally, DuPont contends that Dr. Dyer, along with several other experts, testified that he would not offer any opinion as to crop injury due to Oust in 2000.

**Memorandum Decision & Order – page 9**

They request that the Court enter an order prohibiting him from doing so.  The

Court finds it unnecessary to issue such an order, however, since it has routinely

prohibited any expert from offering opinions not disclosed in the expert's Rule 26

report or in his/her deposition.

### ORDER

In accordance with the terms of the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that DuPont's

Consolidated Motion to Exclude or Limit Testimony from Plaintiffs' Crop Experts

(docket no. 783) is DENIED, to the extent indicated herein.



DATED:  **May 22, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision & Order – page 10**