IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TIMM ADAMS, et al., | Case No. CV-03-49-E-BLW |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER REGARDING BLM'S MOTION FOR SANCTIONS, BLM'S MOTION IN LIMINE, AND JURY INSTRUCTION REGARDING EXHIBIT 20040** |
| v. | |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

## INTRODUCTION

The Court has before it a motion for sanctions and a motion in limine, both filed by the BLM concerning a document known as the Pesticide Fact Sheet (PFS) and identified as exhibit 20040. For the reasons expressed below, the Court will deny both motions, but will address issues raised in the motions by an instruction to the jury. The Court's denial of the motion for sanctions is without prejudice to the BLM's refiling the motion at the conclusion of the trial to recover any costs which it may have incurred unnecessarily because of DuPont's failure to acknowledge, in a timely manner, that the BLM was not involved in the creation or issuance of the PFS.

**Memorandum Decision and Order – Page 1**

## ANALYSIS

The BLM seeks to exclude the PFS on the ground that it contains inaccurate and misleading statements, and also seeks sanctions against DuPont for improperly attempting to link the PFS with the BLM. It is undisputed that DuPont did not obtain the PFS from the BLM, but rather downloaded it off an undisclosed website not associated with the BLM in any way.

The PFS is a two-page document, titled "Sulfometuron Methyl – Pesticide Fact Sheet." Just below that title is a statement that it was "[p]repared for the U.S. Department of Agriculture, Forest Service by Information Services, Inc." Just below that line is a statement that the document "is one of a series issued by the Forest Service, the Bureau of Land Management, and the Bonneville Power Administration for their workers and the general public."

The PFS goes on to discuss characteristics of sulfometuron methyl. Under the heading "Special Precautions," it contains the "do not apply" language of the pre-1995 Section 3 label.

The PFS was bundled into a thick packet of documents – identified as exhibit 20040 in this trial – with a cover memo provided by Dupont and delivered to the ISDA, which was investigating the crop damage at issue here. DuPont also delivered a copy to Idaho's congressional delegation.

**Memorandum Decision and Order – Page 2**

A member of the DuPont core team – Daniel Goicoechea – sent the packet to the ISDA. The cover memo stated that DuPont had "issued FOIA requests and we have gotten some information from [involved parties] . . . ." *See Exhibit F to Motion for Sanctions.* In the cover memo, DuPont implies that the BLM misapplied Oust to dry soils in violation of the label restrictions, although the restrictions cited by DuPont were those discussed in the PFS from the pre-1995 label. DuPont's cover memo states that,

> [a]n Oust fact sheet issued by the BLM and other federal agencies says "Do not apply to dry, powdery or sandy soils which may blow off-target. Do not apply to paved or highly compacted surfaces or frozen ground as off-target movement may occur.

*Id.*

Plaintiffs seek to use exhibit 20040 – including the PFS – to show how DuPont was seeking to influence the ISDA and the Idaho congressional delegation. Used for that purpose, exhibit 20040 is clearly relevant under Rule 401.

However, the BLM seeks to exclude the PFS on the ground that it is misleading. Indeed, the PFS, and the cover memo, contain two critical errors. First, the document was not "issued" by the BLM, and the BLM had nothing whatsoever to do with its issuance. Second, the document was not obtained in a

**Memorandum Decision and Order – Page 3**

FOIA request from the BLM, as represented by DuPont.

Such misleading errors are prejudicial to the BLM. This prejudice could be compounded by the delays created by a trial-within-a-trial, as each party strives to explain its version of the events surrounding the PFS. The parties are already "on the clock" with an allotted amount of hours to try their case, and they will be forced to expend precious time explaining an issue that is little more than a minor side-show.

At the same time, the misleading statements in the PFS have substantial probative value to plaintiffs, as they show the lengths to which DuPont was going to influence the ISDA and Idaho's congressional delegation. To redact this document would deprive plaintiffs of an important element of their case.

The PFS therefore represents an irresistible prejudice colliding with immovable probative value. To reduce the prejudice, the Court has decided to give a jury instruction that will avoid the substantial delays of a trail-within-a-trial, described above, and avoid any misleading impressions that the PFS could give to the jury. This jury instruction – given pursuant to the Court's authority under Rule 611(a) – explains the facts surrounding DuPont's discovery of the PFS and delivery of it to the ISDA. Most importantly, the jury instruction identifies and explains the undisputed inaccuracies in the cover memo to exhibit 20040, and the

**Memorandum Decision and Order – Page 4**

PFS.  The jury instruction further explains how the Forest Service took steps in March of 2001 to remove the PFS from the web.  This instruction will ensure that the probative value of exhibit 20040 to plaintiffs is not substantially outweighed by the danger of unfair prejudice to the BLM.  Accordingly, the Court concludes that the PFS is not excludable under Rule 403.

  The BLM seeks sanctions against DuPont for asserting that the PFS was a BLM document.  The BLM claims that DuPont acted improperly in discovery by pursuing a connection between the PFS and the BLM.  As a sanction for what the BLM describes as DuPont's "blatant disregard of the judicial process," *see BLM Reply Brief* at p. 10, the BLM seeks to (1) exclude the PFS, (2) identify all other documents it produced in discovery that it represented as received from the BLM, which in fact were not received from the BLM, (3) exclude these other documents – not received from the BLM – as well, and (4) pay the fees and costs the BLM incurred in opposing DuPont's attempts to link the BLM to the PFS.

  At this point in time, the Court cannot find that DuPont disregarded the judicial process or acted improperly.  The PFS stated that it was "issued" by the BLM.  This gave DuPont reason to pursue in discovery a connection between the PFS and the BLM.  Although BLM witnesses denied any knowledge of the document, the BLM's Cottonwood office cited the PFS in a 2001 Biological

**Memorandum Decision and Order – Page 5**

Assessment.

The BLM complains that in a discovery exchange, DuPont provided the PFS to the BLM with a stamp indicating that the document had been received from the BLM. This caused no prejudice to the BLM, and appears to have been a justifiable mistake given the Court's imposition of tight discovery deadlines and the massive amount of documents produced.

The Court's principal concern with DuPont's conduct is with the misleading statements in the cover memo to the ISDA. That raises questions about whether the ISDA report is trustworthy, a necessary predicate for admission under Rule 803(8)(C). The Court is not aware of any motion pending that challenges the ISDA report on the ground that DuPont's misleading statements render the report untrustworthy under Rule 803(8)(C). The Court will therefore depend on counsel to either raise that motion or point out that it has been raised.

## ORDER

In accordance with the Memorandum Decision filed above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for sanctions (Docket No. 1028) is DENIED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED, that the motion in limine to exclude certain documents (Docket No. 910) is DENIED IN PART AND RESERVED IN PART.

**Memorandum Decision and Order – Page 6**

It is denied to the extent it seeks exclusion of the Pesticide Fact Sheet.  It is reserved in all other respects.



DATED: **May 26, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order – Page 7**