IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| | ) | |
| TIMM ADAMS, et al, | ) | Civ. No. 03-0049-E-BLW |
| | ) | |
| Plaintiffs, | ) | |
| | ) | MEMORANDUM DECISION |
| v. | ) | AND ORDER REGARDING |
| | ) | EXCLUSION OF SCHEDULE F |
| | ) | TAX RETURNS OF PLAINTIFFS |
| UNITED STATES OF AMERICA, | ) | |
| et al, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## INTRODUCTION

The Court has before it an issue regarding the admissibility of ten years of

tax returns for the bellwether plaintiffs Jerome and Tina Clinger.  More

specifically, the dispute centered on their Schedule F returns ("Profit or Loss From

Farming") for the tax years 1996 through 2006.  The Court excluded this evidence

at trial, and explains that ruling in more detail here.

## ANALYSIS

DuPont offered these returns after establishing from Tina Clinger that these

were the authentic tax returns.  The Court initially admitted some of the returns

(for tax years 1996 through 2003), over plaintiffs' objection, relying on the well-

**Memorandum Decision & Order – page 1**

established rule that tax returns are generally relevant to damage claims.

When DuPont's counsel almost immediately ended his cross-examination after getting the returns admitted, plaintiffs' counsel renewed his objection. *See Transcript June* 2, *2009,* at p. 4742. Following a sidebar discussion of plaintiffs' objection, the Court reserved ruling on the renewed objection pending further consideration. The Court allowed the BLM to cross-examine Tina Clinger regarding the Schedule F documents. *Id.* at p. 4744-45.

The next morning, outside the presence of the jury, the Court heard further argument, and then ruled that the returns were not admissible. The Court instructed the jury that the tax returns previously admitted were now excluded, and therefore "any testimony that you've heard yesterday concerning the substance of those tax returns and the numbers reflected on those tax returns will be stricken, and you are to disregard that in your deliberations." *See Transcript for June 3. 2009,* at p. 4824.

The Court's ruling was based on Rule 403. While the Court finds the tax returns authentic under Rule 901 and relevant under Rule 401, the Court finds that Rule 403 warrants their exclusion.

The Court will begin its Rule 403 analysis by describing the Schedule F tax returns. They show on line 36 that the Clingers were earning a net profit on their

**Memorandum Decision & Order – page 2**

farms for each of the years where they claimed Oust-caused crop loss:  2000

through 2002.  The returns also show a steady increase in those years in the amount

reported on line 11 for "sales of livestock, produce, grains, and other products you

raised."

The Clingers grow sugar beets and wheat, *id.* at p. 4612, both of which were

allegedly severely damaged by Oust, and there is no indication that the Clingers

have significant sales of any products that were not allegedly affected by Oust.

Thus, tax returns showing steadily increasing profits and production during the loss

years have some relevance for purposes of impeaching plaintiffs' damage claims.

However, this probative value is slight, because the tax returns contain no

figure for crop losses, and that figure is the basis for plaintiffs' damages.  *See Boyd*

*v. United Farm Mutual Reinsurance Company*, 596 N.E.2d 1344 (Ill.App.Ct. 1992)

(stating that tax returns showing profits and losses have little relevance to crop loss

case where lost profits not sought).  Mr. Hofman, the plaintiff's damages expert,

calculated damages by subtracting the value of actual crop production from the

value of expected production, and then, from that figure, subtracting costs saved,

and adding mitigation costs.  While Schedule F does list "Farm Expenses" in Part

II, the form contains nothing regarding lost crop yields, which are the crucial figure

in the damage calculation.  Mr. Hofman testified that the "numbers . . . driving this

**Memorandum Decision & Order – page 3**

base claim [are] . . . actual yields, expected yields, lost yield, acres, and lost

bushels." *See Mr. Hofman Deposition* at p. 419-20.  None of those figures are

anywhere to be found on Schedule F.

Moreover, the figures on Schedule F are not straightforward accounts of

income and expenses incurred during the year.  Many complex provisions of the

Internal Revenue Code such as loss carryforward make it very difficult to tell what

the numbers actually mean.  *See Watkins v. FMC*, 531 P.2d 505, 508

(Wash.App.Ct. 1975) (affirming exclusion of Schedule F in crop loss case because

its figures on lost profits said nothing about lost crops and "would be confusing to

the jury").

Thus, a lay person could not make a direct comparison between Schedule F

and Jentzsch's crop loss allegations.  Instead, a tax expert would have to explain

what the figures on Schedule F tell us about lost crop yields.  Without that expert

testimony, the probative value of the Schedule F is minimal.

Here, plaintiffs assert – and defendants offer no rebuttal – that the defense

damage expert made no attempt to compare Schedule F with plaintiffs' damage

claims or to explain more generally how any of the plaintiffs' tax return

information affects their damages or their allegations of crop losses.  Plaintiffs'

experts likewise did not offer any such analysis.  Without any expert analysis, the

**Memorandum Decision & Order – page 4**

probative value of Schedule F can never rise above a minimal level.

And without any witness to explain Schedule F, it appears defense counsel simply plans to use the form in closing argument to argue to the jury that since plaintiffs were making a profit, it is unlikely they suffered a crop loss.  At the risk of mixing metaphors, this is akin to the blind leading the blind, while at the same time comparing apples to oranges.  Counsel and jurors are both "blind" to the complexities of the tax code, and profits are apples compared to the oranges of crop losses.

The plaintiffs would be prejudiced by having lay persons interpreting a tax document that should have been the subject of expert testimony.  Yet if the Court allows tax experts to testify, the delays would be substantial.  This case is in its fifth week, and is expected to run more than three months before completion.  Such delays would be completely unacceptable.  *See Grassi v Information Resources, Inc.,* 63 F.3d 596, 602 (7th Cir. 1995) (affirming exclusion under Rule 403 of tax return in part because of delay that would result from calling tax experts in the middle of trial to explain the return).

Under Rule 403, even relevant evidence is subject to exclusion if its probative value is substantially outweighed by the "danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay

**Memorandum Decision & Order – page 5**

. . . ."  If the Court allows defense counsel to use Schedule F in closing without any expert testimony explaining the form, this would cause unfair prejudice to plaintiffs, confusion of the issues, and would be misleading to the jury.

A similar issue was faced in *LeSueur Creamery, Inc. v. Haskon, Inc.,* 660 F.2d 342 (8th Cir. 1981).  There, plaintiff LeSueur Creamery sought damages for defective pasteurizing equipment provided by defendant Haskon.  Haskon sought to introduce LeSueur's tax returns to show that LeSueur was making record profits in the years the pasteurizing equipment was allegedly defective.

The Eighth Circuit found the tax returns relevant under Rule 401, but affirmed their exclusion under Rule 403.  The court found that "the overriding issue is not whether LeSueur made any profit during the years in controversy, but rather whether LeSueur would have made a larger profit but for the actions of Haskon."  *Id*. at 352.  Thus, the court concluded that the probative value was minimal.  Moreover, the tax returns "may well have misled or confused the jury and prejudiced LeSueur."  *Id.*  Accordingly, the court affirmed the exclusion of the tax returns under Rule 403.  *Id.*

For all of these reasons, the Court finds that the evidence should be excluded under Rule 403.

**ORDER**

**Memorandum Decision & Order – page 6**

In accordance with the Memorandum Decision filed above,

NOW THEREFORE IT IS HEREBY ORDERED, that the objection of

plaintiffs to the admission into evidence of plaintiffs' Schedule F tax returns is

SUSTAINED.



DATED:  **June 5, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision & Order – page 7**