IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| TIMM ADAMS, et al., | ) | Case No. CV-03-49-E-BLW |
| | ) | |
| Plaintiffs, | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER REGARDING** |
| v. | ) | **DR. HADERLIE** |
| | ) | |
| UNITED STATES OF AMERICA, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## INTRODUCTION

The Court has before it an undecided portion of DuPont's motion to exclude or limit testimony of Plaintiffs' Crop experts (Docket No. 783) relating to Dr. Haderlie. The motion is fully briefed and at issue. For the reasons set forth below, the Court denies the motion.

## ANALYSIS

The Court previously ruled on other portions of DuPont's motion (Docket No. 783) with respect to its arguments to exclude the crop experts' "comparative symptomology" method generally, as well as Drs. Dyer and Gallian specifically, pursuant to Fed. R. Evid. 702. *See Memorandum Decision and Order of DuPont's*

**Memorandum Decision and Order re Dr. Needham – Page 1**

*Motion to Exclude Testimony of Gallian/Dyer,* Order (Docket No. 1121).  In that Order, the Court ruled that the experts' methodology in general did not run afoul of Fed. R. Evid. 702, and denied DuPont's motion to exclude on this basis. There is no basis to decide otherwise as to Dr. Haderlie.  To the extent he employed the comparative symptomology method in his analysis and opinion, the Court's prior ruling applies.

The Court turns now to DuPont's argument that Dr. Haderlie's opinion specifically should be excluded nonetheless because Dr. Haderlie failed to apply the methodology in an analyzing the Bellwether Plaintiffs' claims for the crop years of 2000, 2002, 2003 and 2004 in a consistent and reliable manner.

In short, DuPont argues that since Plaintiffs' crop experts rely heavily on a subjective evaluation of the field bioassay, it is critical that they properly perform and evaluate the field bioassay for the method to have any scientific validity. In its motion, DuPont made arguments regarding each experts' application of the methodology that applied across the board, including, for example, the failure to rule out alternative causes of damage on a field-by-field basis and the failure to personally confirm the presence of "Oust symptoms" as opposed to relying on other consultants and plaintiffs for this information.  The Court rejected some of these bases for excluding the expert witness opinions in it is prior opinion (Docket

**Memorandum Decision and Order re Dr. Needham – Page 2**

No. 1121), and to the extent DuPont criticizes Dr. Haderlie for the same reasons, the Court's prior opinion applies again.[1] The Court will only address the arguments DuPont raised which are specific to Dr. Haderlie's opinion and not previously addressed.

DuPont's principal argument unique to Dr. Haderlie is that he failed to conduct any personal confirmation of the presence of Oust symptoms in 2000, 2002, 2003 and 2004 and based his opinion on Oust damage instead upon crop yield information he gained in working with the Plaintiffs' economics expert, Mr. Hofman.

Dr. Haderlie was personally involved in the Oust investigation in 2001. He visited all of the affected fields at some time, and developed the soil sampling plan in cooperation with the University of Idaho, BLM and the ISDA, and approved additionally by these agencies as well as by DuPont and Amalgamated Sugar Company. During his investigation in 2001, he saw similar symptoms over a wide-spread area which he concluded were Oust caused damage.

In February 2002, Dr. Haderlie was retained as an expert for Plaintiffs and

---

[1] Specifically, on the same bases as the Court set forth previously, DuPont's motion to exclude Haderlie's opinion on the basis that he relied upon growers crop descriptions regarding damage for the year of 2000, or any later years, or that he failed to rule out other causes of damage on a field-by-field basis for any year is denied.

**Memorandum Decision and Order re Dr. Needham – Page 3**

continued his Oust investigation. For the prospective years of 2002, 2003 and 2004, Dr. Haderlie's investigation appears to have included making several visits to fields in the summer and fall of 2002, consulting with other experts (Drs. Miller and Shields) and then working closely with Mr. Hofman and his firm, General Economic Consulting ("GEC"), on their damage analysis. He reviewed Hofman and GEC's methods and agreed with them, and testified that he was comfortable that the information he received from the economists regarding crop yield from the other relevant years (2001, 2002, 2003 and 2004) supported his opinion that Oust damage was present during these years.

The Court has already determined that the method Dr. Haderlie employed to arrive at his conclusion that Oust caused damage is admissible under Fed. R. Evid. 702. It appears to the Court that after 2001, Dr. Haderlie's method changed to a yield-loss confirmation based upon the data collected and analyzed by Mr. Hofman and GEC. In other words, once Dr. Haderlie determined the fact of Oust damage, he relied on the yield-loss analysis to determine that the damage continued. Dr. Haderlie testified that this type of analysis is one that is reasonably relied upon by other expert agronomists to opine regarding causation under the same circumstances. Thus, Dr. Haderlie's opinion satisfies Fed. R. Evid. 702 & 703.

The Court will therefore deny Dupont's motions to restrict Dr. Haderlie

**Memorandum Decision and Order re Dr. Needham – Page 4**

from testifying as to his opinion regarding Oust damage in 2000 and 2002-2004.

## ORDER

In accordance with the terms of the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to exclude Plaintiffs' crop experts (Docket No. 783) is DENIED as to Dr. Haderlie.



DATED: **June 16, 2009**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order re Dr. Needham – Page 5**