IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TIMM ADAMS, et al., ) | Case No. CV-03-49-E-BLW |
| ) | |
| Plaintiffs, ) | **MEMORANDUM DECISION** |
| ) | **AND ORDER REGARDING** |
| v. ) | **DR. MILLER (Docket No. 783)** |
| ) | |
| UNITED STATES OF AMERICA, ) et al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## INTRODUCTION

The Court has before it an undecided portion of DuPont's motion to exclude or limit testimony of Plaintiffs' Crop experts (Docket No. 783) relating to Dr. Miller. The motion is fully briefed and at issue. For the reasons set forth below, the Court denies the motion.

## BACKGROUND

According to DuPont, which is not disputed by Plaintiffs, Dr. Miller's expert opinion regarding Oust damage is limited to the Jentzsch-Kearl and Hansen claim fields, and the Funk 2002 potatoes. Dr. Miller was farming sugar beets in 2000. In his Report, he states that he personally experienced an unexplained sulfonylurea

**Memorandum Decision and Order re Dr. Miller – Page 1**

(SU) injury to one of his sugar beet fields, which other growers in a widespread area also began to experience.  In 2001, he was retained by other affected growers to investigate and determine the cause of the crop injury.

From his 2001 investigation, which involved the "comparative symptomology" method previously described in the Court's prior decisions, Mr. Miller concluded that Oust was the source of the SU damage that the growers were experiencing in 2001, but also the source of the unexplained SU damage he and other growers experienced in 2000.  During his investigation, he used a hand held recorder to record his notes which were transcribed into his "Oust Investigation Field Notes."

In the later years, Dr. Miller states in his report, that he continued to document crop injury through at least 2004.  He evaluated sugar beet damage by observing fields during growing season, and at various receiving stations, and then correlating the frequency and intensity of root symptoms observed at both.  He describes the specific parameters of his observations which were necessary for him to conclude that particular fields were or were not evidencing visual symptoms of Oust damage.

With respect to potatoes, Mr. Miller states in his report, that he made multiple field visits and "routine visits to potato facilities in the downwind area"

**Memorandum Decision and Order re Dr. Miller – Page 2**

and scored the observed injury in the same manner as with the sugar beets. He also conducted storage surveys during 2003 for the 2002 crop.

With respect to the grain fields, Mr. Miller reported that he continued to observe symptoms, which included root damage as well as symptoms that were visible by the field itself. He explained that healthy plants were "found next to severely retarded and/or dead plants" and "less affected fields exhibited uneven height cross the field creating the appearance of rolling waves." (Docket 758-4, p. 13). Dr. Miller's report otherwise lacks specificity with respect to when or exactly where he conducted further field and/or storage-type observations for the Oust injury.

Dr. Miller also investigated and found no other "common factor that could account for the crop damage." (Docket Nos. 758-4, p. 19; 758-5, p. 9).

## ANALYSIS

The Court previously ruled on other portions of DuPont's motion (Docket No. 783) requesting that the Court exclude Drs. Dyer, Gallian and Haderlie's use of the "comparative symptomology" method. (Docket Nos. 1121 & 1199). In these prior orders, the Court ruled that the experts' methodology in general did not run afoul of Fed. R. Evid. 702, and denied DuPont's motion to exclude on this basis. Likewise, there is no basis to decide otherwise as to Dr. Miller. To the

**Memorandum Decision and Order re Dr. Miller – Page 3**

extent he employed the comparative symptomology method in his analysis and opinion, the Court's prior ruling applies.

The Court turns now to DuPont's argument that Dr. Miller's opinion should also be excluded because Dr. Miller failed to apply the methodology in analyzing the Bellwether Plaintiffs' claims for the crop years of 2000, 2002, 2003 and 2004 in a consistent and reliable manner.

DuPont argues, as it did with Drs. Dyer, Gallian and Haderlie, that since Plaintiffs' crop experts rely heavily on a subjective evaluation of the field bioassay, it is critical that they properly perform and evaluate the field bioassay for the method to have any scientific validity. DuPont's argument with respect to Mr. Miller in general is that he failed to confirm the presence of Oust symptoms in all of the crops for which he renders a damage opinion for the years 2000, 2002, 2003 and 2004 and, that the symptomology he did view does not support his conclusions. The Court will address, in turn, each of DuPont's specific arguments as to why Dr. Miller's analysis should be excluded.

Year 2000:

For his 2000 damage opinion, DuPont argues that Dr. Miller did not view the claim fields or observe any symptoms in Bellwether Plaintiff fields and did not take any soil samples or pesticide records. Instead, he testified in his deposition

**Memorandum Decision and Order re Dr. Miller – Page 4**

that he relied on other growers' statements and upon the accountants' yield loss analysis for his opinion that Oust caused damage in 2000.

As set forth above, Mr. Miller was a grower in year 2000 and specifically observed SU injury to his sugar beet crop, which he discussed with other growers. From those discussions, he learned of similar symptoms in other areas. Based on his personal observation, as well as reports from other growers, he concluded that the Oust damage he discovered in 2001 also caused the unexplained damage he and others saw in 2000.

The Court has already opined that the crop experts may rely on reports of symptomology from others, including growers (Docket No. 1121), and sanctioned the method of confirming on-going Oust damage by working with the economists and their yield loss analyses (Docket No. 1199).  These findings apply equally to Dr. Miller.   His personal observations of crop injury symptoms in 2000 further support his opinion of their cause.   The Court finds no basis to exclude Dr. Miller's opinion regarding 2000 crop damage.

<u>2002 - Funk potatoes, Jenzsch-Kearl and Hansen potatoes and sugar beets</u>:

For the year 2002, Dr. Miller will testify that Oust damaged the Funk potato fields and the Jentzsch-Kearl and Hansen potato, sugar beet and grain fields.  For each of these crops and years, with the exception of the grain fields, DuPont makes

**Memorandum Decision and Order re Dr. Miller – Page 5**

essentially the same argument that Dr. Miller's opinion is unreliable because he failed to confirm symptoms of Oust injury on a field-by-field basis.

For example, DuPont argues that in 2002, Dr. Miller only visited the Funk potato storage once and observed potatoes harvested out of only two of 16 claim fields. Likewise, in 2002, Dr. Miller visited either a field or storage with potatoes harvested from only six out of 11 Jentzsch-Kearl potato claim fields. DuPont argues that these failures highlight the weakness of the "comparative symptomology" method.

In particular, for example, with respect to one of the Jentzsch-Kearl potato fields – the Dalley field – Mr. Miller concluded during a storage visit that he saw no damage in these potatoes and excluded the Dalley field from the Potato Storage Survey. However, based on the "comparative symptomology" method, he later opined that the Dalley field was injured by Oust in 2002. DuPont argues accordingly that Mr. Miller improperly *assumed* Oust damage.

DuPont makes a similar point with respect to Dr. Miller's investigation of the Jentzsch-Kearl sugar beets in 2002. DuPont argues that while Dr. Miller observed minimal symptoms in the field he did view, there is no evidence that he assessed how the infrequent symptoms that he observed were different from areas outside of the "Oust-Plume" area.

**Memorandum Decision and Order re Dr. Miller – Page 6**

DuPont's objections to Dr. Miller's investigation of the potato and sugar beet fields in 2002 are not really objections to his *application* of the "comparative symptomology" as DuPont suggests; rather they are objections to the method itself and amount to little more than a re-submission of its objection to the lack of a field-by-field analysis. The Court has already determined that the "comparative symptomology" is sufficiently valid to come into evidence under Fed. R. Evid. 702 and finds no reason to revisit the issue with respect to Dr. Miller. Dr. Miller confirmed the presence of Oust damaged crops for each crop, plaintiff and year, then ruled out other causes – which is what was required of the comparative symptomology method.

<u>2002 Jentzsch-Kearl and Hansen Grain/2003 Hansen potatoes/2004 Jentzsch-Kearl sugar beets</u>:

Dr. Miller will offer an opinion that Oust caused damage to the Jentzsch-Kearl and Hansen Grain fields in 2002, the Hansen potato fields in 2003 and the Jentzsch-Kearl sugar beets in 2004. DuPont argues that for each of these claim fields, there is no evidence whatsoever (no field or storage facility or dump facility visits) that Dr. Miller observed any damage.

Specifically, with respect to the 2002 grain fields, Dr. Miller testified in his deposition that he observed damage when he drove by the grain field on a road that

**Memorandum Decision and Order re Dr. Miller – Page 7**

he traveled regularly.  Similarly, for the 2003 Hansen potatoes, DuPont states the Dr. Miller testified that he "does not know if he was even aware in 2003 that Hansen was claiming injury to the 2003 potato crop."  He further testified that he could confirm symptoms generally by driving by a field.  Finally, with respect to the 2004 Jentzsch-Kearl sugar beets, although the Court is not entirely clear, DuPont appears to be arguing that Dr. Miller's notes were inaccurate with respect to the field he was observing, and that the fields he did observe in fact showed no damage; accordingly, DuPont argues, there is no evidence that Dr. Miller observed damage to these sugar beet fields in 2004.

There is no specificity in either Plaintiffs' opposition to DuPont's motion, or Dr. Miller's report or rebuttal report, as to what exact steps he did take to confirm Oust damage to the 2002 grain fields or the 2003 Hansen potatoes.  The testimony cited is also confusing.  For example, with respect to the 2003 Hansen potatoes, although DuPont is objecting to his testimony regarding his grain analysis, Dr. Miller appears to be referring to a sugar beet field and not a grain field.   The Court is not inclined to read Dr. Miller's entire deposition to sort out its questions on this matter at this time.

The Court has previously denied DuPont's motion to exclude the crop experts' testimony for failing to personally observe the Oust damage symptoms

**Memorandum Decision and Order re Dr. Miller – Page 8**

within the Oust damage area after 2001 when the fact of the Oust damage had been established.  Accordingly, the Court has found, that relying on the economists' yield loss analysis and methods to confirm the continued damage, so long as reasonably relied upon by other professionals in the same field, passes muster under Fed. R. Evid. 702.  Dr. Haderlie testified at trial that this method is not only reasonably relied upon, but is the best possible methodology under the circumstances.   This satisfied the Court's condition for the admissibility of this method as a basis for the expert's opinion.

The Court finds no basis to change course at this point in the case.  Dr. Miller has stated in both his Report and Rebuttal report that he ruled out any other cause for such a widespread and unique symptomology within the area for the specified years, and determined that the non-affected areas did not display the unique Oust injury symptoms.  Considering these facts and a multitude of others (e.g., known SU herbicide behaviors, exclusion of environmental factors, etc.), he concluded that the Oust damage continued based on his observations and the economists' yield loss analysis.[1]   Accordingly, despite the substantial reduction in

---

[1] The deposition transcript  DuPont cited in its motion, and Dr. Miller's report, suggest that he not only personally observed damage symptoms but also relied upon the yield loss analysis to confirm continued Oust damage in post-2001 years.  On the other hand, his reliance on that analysis was not as critical since he engaged in more post-2001 observations, than did Dr. Haderlie, in determining that the alleged Oust effect continued into the 2002-5 time frame.

**Memorandum Decision and Order re Dr. Miller – Page 9**

personal observations conducted by Dr. Miller in the 2003-2004 time frame, as compared to the intense evaluation conducted in 2001, his opinion is admissible under Fed. R. Evid. 702.  For this reason, the Court will deny the motion.

## ORDER

In accordance with the terms of the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to exclude Plaintiffs' crop experts (Docket No. 783) as to Dr. Miller is DENIED.



DATED: **June 18, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order re Dr. Miller – Page 10**