IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| TIMM ADAMS, et al, | Civ. No. 03-0049-E-BLW |
| Plaintiffs, | |
| v. | MEMORANDUM DECISION AND ORDER REGARDING 13 DOCUMENTS OFFERED BY PLAINTIFFS INTO EVIDENCE WITHOUT A SPONSORING WITNESS |
| UNITED STATES OF AMERICA, et al, | |
| Defendants. | |

## INTRODUCTION

This decision is a detailed resolution of the admissibility of 13 documents plaintiffs seek to introduce without a supporting witness. In an earlier decision (docket no. 1234), the Court explained generally the governing rules, and that decision is incorporated by reference herein.

## ANALYSIS

**1.   Exhibit 20326**

This is an internal DuPont e-mail dated October 11, 2000, from Peter Thomas, DuPont's Oust Product Manager, to John Cantlon, a DuPont Sales Manager. In the e-mail, Thomas accepts Cantlon's offer to come "west" to see the

**Memorandum Decision & Order – page 1**

terrain of BLM rehabilitation sites, and reminds Cantlon that he is "no stranger to the West, BLM lands, Oust or C-130s." He talks of prior visits to "BLM sites [and] Oust Rehab demonstrations . . . ."

The Court finds this document authentic under Rule 901 because (1) it is an internal DuPont e-mail between DuPont employees, and (2) it was provided by DuPont from its e-mail files during discovery. The Court further finds that it is not hearsay under Rule 801(d)(2)(D) because Thomas is a DuPont employee speaking within the scope of his employment during the existence of that employment relationship. He has personal knowledge under Rule 602, and the material is relevant under Rule 402 to show DuPont's knowledge of the BLM spray sites. The Court cannot find that it is unfair or misleading to introduce this document without a supporting witness, and thus finds no barrier to its admissibility under Rules 106, 611 or 403.

**2.     Exhibit 20406**

This is an internal DuPont e-mail dated October 1, 2001 from Jack Cain, DuPont's Registration Manager, to Frank Lichtner, a DuPont scientist. Cain's e-mail forwards a memo from a George Ramsey stating that the "most plausible explanation for the phenomenon reported in Idaho . . . is . . . secondary drift on soil particles." The Ramsey memo goes on to state that the particles could be blown

**Memorandum Decision & Order – page 2**

"longer distances downwind."

The question here involves the position of George Ramsey with DuPont. During oral argument, plaintiffs' counsel represented, without rebuttal from DuPont, that Ramsey was a DuPont employee. That is enough to establish that the internal DuPont e-mail, provided by DuPont in discovery, is authentic under 901. But it is not enough to establish that Ramsey was speaking within the scope of his employment so as to render his statement non-hearsay under Rule 801(d)(2)(D). Thus, Ramsey's statement is hearsay, and the Court has not been provided any foundation for the application of an exception under Rule 803.

If Ramsey's employment position is established, and he is speaking within the scope of his employment, the Court would find the statement non-hearsay under Rule 801(d)(2)(D), and its admission without a supporting witness would not mislead the jury or cause undue prejudice to the defendants in violation of Rules 106 or 403. However, until the foundation is laid to avoid hearsay concerns, the document cannot be admitted at this time.

3.  **Exhibit 20604**

This is a 1997 "Interoffice Memo" from Michael Link, DuPont's Product Development Manager. The memo deals with the problem of cleaning tanks used for spraying Oust before those same tanks are used to spray other materials on

**Memorandum Decision & Order – page 3**

crops. The portion plaintiffs seek to introduce states, "[e]xperience indicates that if potatoes are sprayed we could have a major problem with minimal Oust residues."

The statement passes muster under Rule 901 as it was contained in a document authored by a DuPont employee and provided by DuPont in discovery. With regard to the hearsay issue, testimony at this trial from Dr. Benbrook and Rik Miller established that Link, as Product Development Manager, worked closely on the Oust labeling change, and thus his statement about the risks of Oust residue on potatoes would be within the scope of his employment and not hearsay under Rule 801(d)(2)(D). The statement is relevant under Rule 401 to show DuPont's knowledge of Oust's risks, an important issue in the case. Finally, the Court finds that its admission without a supporting witness would not mislead the jury or cause undue prejudice to the defendants in violation of Rules 106 or 403.

**4.    Exhibit 20319**

This is an unsigned and undated letter from John Cantlon of DuPont to Joe Russell of the BLM. In his deposition, Cantlon says he "assumes" the letter was sent to the BLM. This is the type of document that cannot be admitted without a supporting witness. It is not clear if the letter is a mere draft that was never sent. While plaintiffs argue that the letter nevertheless shows Cantlon's state of mind, it is not clear when, or even if, Cantlon agrees with its contents. The lack of a

**Memorandum Decision & Order – page 4**

signature casts doubt on whether the letter expresses Cantlon's views; the lack of a date makes it difficult to tell when Cantlon held these views, if he did in fact hold them. Hence, the Court finds this exhibit inadmissible at this time under Rules 106, 611, and 403 because there is no supporting witness to fill in the gaps discussed above.

5.  **Exhibit 20238**

This is a July 31, 2001, e-mail from Thomas Evans of DuPont to Jack Cain of DuPont where Evans characterizes the language in the Oust labels as "advisory." The document is authentic under Rule 901 as it is an internal DuPont e-mail between DuPont employees that was provided by DuPont from its files during discovery.

It is unclear, however, from the materials provided to the Court whether the author of the e-mail, Thomas Evans, is speaking within the scope of his employment. The materials did not specify the job Evans held at DuPont. While there may have been testimony during trial on that point, the Court cannot recall it, and counsel must provide it before the Court can determine whether this document falls under Rule 801(d)(2)(D).

For this reason, the Court will deny admission of this exhibit at this time.

6.  **Exhibit 34650**

**Memorandum Decision & Order – page 5**

This is a DuPont letter dated January 9, 2009, from DuPont's Dr. Barefoot to the EPA concerning the re-registration of Oust. This document – unlike the e-mails – does not appear to have been provided by DuPont in discovery. While the document contains an EPA stamp indicating that it was "Received," there is no further evidence that it was "recorded" or "filed" in the EPA's offices, or was received from the EPA in this litigation, as required by Rule 901(7). Moreover, there is no certification under Rule 902's self-authentication provisions for public records.

For these reasons, the Court cannot admit this exhibit at this time.

7. **Exhibit 20139**

This is an "Interoffice Memorandum" dated September 30, 1994, from Rik Miller of DuPont to Duncan Allision. The portion plaintiffs wants to read states that Oust has a "high tolerance . . . for Xmas trees" but that its use is not promoted due to the proximity of such trees to crops.

This document is authentic under Rule 901 as it was provided by DuPont from its own files in discovery and was authored by a DuPont employee. Rik Miller has testified in this trial, and his statement in this document is within the scope of his employment and is hence non-hearsay under Rule 801(d)(2)(D). The statement is within his personal knowledge under Rule 602. Finally, the Court

**Memorandum Decision & Order – page 6**

finds that its admission without a supporting witness would not mislead the jury or cause undue prejudice to the defendants in violation of Rules 106 or 403.

7. **Exhibit 20296**

This is an "Interoffice Memorandum" dated March 23, 1998, from John Cantlon, a DuPont sales manager, to Lisa Chapaitis, Frank Aulgur, and Kent Pittard. The memo lists burned acres in 10 states, and quantifies the number of acres in each state for "Oust Treat Potential." In his deposition, Cantlon explains how he prepared the memo for the three individuals, who were all DuPont sales managers, and that he was listing the states with their treatment potential to determine how to marshal DuPont's resources in the 24(c) label efforts.

The document is authentic under Rule 901 as it was provided by DuPont in discovery from its files and is authored by a DuPont sales manager. It is not hearsay, as Cantlon is speaking within the scope of his employment under Rule 801(d)(2)(D). It is relevant under Rule 401 to show DuPont's efforts to promote Oust. Cantlon is expressing his personal knowledge under Rule 602. Finally, the Court finds that its admission without a supporting witness would not mislead the jury or cause undue prejudice to the defendants in violation of Rules 106 or 403.

8. **Exhibit 21107**

This is an e-mail dated September 24, 2001, from Darwin Jeppesen to Mike

**Memorandum Decision & Order – page 7**

Pellant of the BLM. It notes that wind erosion "in the Oust treated areas are averaging 10 tons per acre per month on the Flat Top Fire west of Aberdeen . . . ."

Jeppesen is a soil scientist with the BLM, who has been in the Idaho Falls Field Office for about 25 years. His employment consists of specialization in soils, and includes going into the field to examine and classify soils.

This is an internal BLM e-mail provided by BLM from its files in discovery and hence is authentic under Rule 901. However, the Court cannot tell if Jeppesen is speaking within the scope of his employment when he talks about soil erosion on the Oust treated areas. Was part of his job the evaluation of erosion in that area? Or is he repeating the work of others? The Court cannot tell from the materials provided. Because this e-mail may be inadmissible hearsay, the Court will decline to admit this document.

9.    **Exhibit 40418**

This is an e-mail dated December 12, 2000, from Mike Pellant of the BLM to Cindy Fritz of the BLM. The memo states that "our Oust treatments are tiered to the 1989 vegetation Treatment EIS and we are exceeding the herbicide application acreages we identified in this document by four times."

At the time of this e-mail, Pellant was the BLM's rangeland ecologist for the State of Idaho. Pellant explained in his deposition that he was concerned that the

**Memorandum Decision & Order – page 8**

BLM would soon be exceeding the herbicide treatments on Idaho BLM lands that had been contemplated by the EIS. While the EIS contemplated the treatment of about 25,000 acres, Pellant was concerned that soon the BLM would have treated four times that acreage.

This memo, provided by the BLM in discovery from its files, is authentic under Rule 901. However, it is unclear whether Pellant is speaking within the scope of his employment as BLM rangeland ecologist. The materials provided to the Court do not explain what his duties were in that position. Hence, the Court cannot tell if his statements fall within Rule 801(d)(2)(D). If the statements are hearsay, there is not indication that the requirements of Rule 803(6) have been met. Hence, the Court cannot admit this document at this time.

## 11. Exhibit 20143

This is an internal DuPont e-mail, dated March 28, 2001, from DuPont's John Cantlon to DuPont's Frank Aulgur and Lisa Moore. It states that "we are about to enter a fierce battle for the 2 million dollar BLM market in the arid PNW," and it attaches a document entitled "Oust Herbicide Restoration" that promotes Oust for use on cheatgrass.

The document was provided by DuPont from its files during discovery and was an internal DuPont e-mail. It is hence authentic under Rule 901. Cantlon is a

**Memorandum Decision & Order – page 9**

DuPont sales manager speaking about a sales opportunity, and hence his statements are within his scope of employment and are non-hearsay under Rule 801(d)(2)(D). He speaks from his own personal knowledge under Rule 602. Finally, the Court finds that its admission without a supporting witness would not mislead the jury or cause undue prejudice to the defendants in violation of Rules 106 or 403. This document will be admitted.

**12.    Exhibit 32804**

This is an e-mail dated July 27, 2001 from Dr. Arne of the EPA to various other EPA employees, reporting on his trip to Idaho to investigate the Oust incident in late July of 2001. Plaintiffs questioned Dr. Arne about this report during his deposition. That excerpt of the deposition was played to the jury. *See Dr. Arne Deposition at p. 188 line 20 to p. 189 line 8, compared with Plaintiffs' Notice of Intent to Introduce Video Deposition Testimony of Dr. Arne at p. 2, bottom of left hand column.*

Given this, the e-mail is authentic under Rule 901. Moreover, it contains statements by Dr. Arne clearly within the scope of his employment, as he was reporting on the results of a trip he undertook pursuant to his work duties for the EPA. Thus, the e-mail is non-hearsay under Rule 801(d)(2)(D) to the extent that it contains his statements, and not the statements of others. The statements of others,

**Memorandum Decision & Order – page 10**

contained in the e-mail, would be inadmissible hearsay – at least no foundation has been laid before the Court to permit a finding that any exception under Rule 803 applies.

Dr. Arne's own statements concerning his personal observations are within Rule 602. Finally, the Court finds that the admission of Dr. Arne's own observations would not mislead the jury or cause undue prejudice to the defendants in violation of Rules 106 or 403.

The plaintiffs have not indicated what portion of the e-mail they want admitted, and so the Court will assume that they want it all admitted. This presents a problem because, among other things, (1) he recites the study by Dr. Morishita that the Court recalls excluding, and (2) he speculates that the BLM was "counting on rain and snow to hold the soil and Oust in place" and fails to explain his source for that speculation.

There is also a serious question remaining about relevancy under Rule 401, as the knowledge of the EPA is only relevant if it can be ascribed to the BLM.

For all these reasons, the Court will not admit this document.

### 13. <u>Exhibit 32812</u>

This is a memo from Dr. Pfleeger regarding his July 2001 and November 2001 trips to Idaho with Dr. Arne and others to investigate the Oust incident. It

**Memorandum Decision & Order – page 11**

appears the seven-page memo contains numerous accounts from persons other than Dr. Pfleeger.  It is unclear what portions of the document the plaintiffs intend to read to the jury – they did not designate any portions and so the Court must assume they intend to read the entire exhibit.  Because it contains a substantial amount of inadmissible hearsay, the Court cannot admit the document at this time.

## ORDER

In accordance with the Memorandum Decision filed above,

NOW THEREFORE IT IS HEREBY ORDERED, that the following exhibits are DEEMED ADMITTED: 20326; 20604; 20139; 20296; and 20143.

IT IS FURTHER ORDERED, that the following documents are DEEMED NOT ADMITTED AT THIS TIME: 20406; 20319; 20238; 34650; 21107; 40418; 32804; and 32812.

DATED:  **June 28, 2009**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision & Order – page 12**