IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| TIMM ADAMS, et al., | ) ) ) | Civ. No. 03-0049-E-BLW |
| Plaintiffs, | ) ) | |
| v. | ) ) | MEMORANDUM DECISION AND ORDER ON THE UNITED |
| UNITED STATE OF AMERICA, et al., | ) ) ) ) ) | STATES' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF SOIL CONDITIONS ON BLM LAND NOT TREATED WITH |
| Defendants. | ) ) ) | OUST (Document No. 913) |

## INTRODUCTION

The Court has before it the Government's motion to in limine to exclude evidence of soil conditions of BLM land not treated with Oust. The motion is fully briefed and at issue. For the reasons expressed below, the Court will deny the motion without prejudice.

## ANALYSIS

The Government's motion asks the Court to exclude "all evidence" of soil conditions on BLM land not treated with Oust including, specifically, a portion of an opinion and/or analysis of one of the Plaintiffs' soil experts, Dr. Walter Shields. The Government makes its motion pursuant to Fed. R. Evid., Rules 401, 402 and

403.

Although the Government's original motion asks the Court to exclude "all" of this type of evidence, the Government criticizes the Plaintiffs and DuPont in its reply memorandum for failing to address the specific evidence the Government seeks to exclude – which is the "detailed erosion monitoring data" from the non-Oust treated burn sites. The Government points specifically to a portion of Dr. Shields' opinion in which he recalculate's the Government's erosion rates using monitoring data ("3F Bridge") compiled by the Government and includes information from the Tin Cup burn site - which was not treated with Oust.

Because the Government limits the focus of its motion primarily to "detailed soil erosion monitoring" which is relied upon and presented in Dr. Shields' expert opinion (Document No. 913-22 - 24, at 913-24, pp. 2 - 11), and fails to explain any other evidence which is implicated by its motion, the Court will treat this motion as a request to exclude that portion of Dr. Shields' testimony and/or opinion. The Court notes, however, that because it is true that neither Plaintiffs nor DuPont specifically addressed Dr. Shields' opinion in response to the motion,[1] the Court

---

[1]Both Plaintiffs and DuPont argued that BLM's inclusion of a conflated soil erosion rate from all three of the fire sites contained in the Big Desert 2000 Emergency Fire Rehabilitation Plan and Environmental Assessment (two of which were later treated with Oust and one that was not treated) (1) is relevant to BLM's knowledge of the potential erosion rates, and what BLM should or should not have done under the circumstances, and (2) supports that BLM did not consider the soils from certain non-treated sites as particularly unique. BLM agrees that the

renders its opinion without the benefit of a response on this issue.

Plaintiffs rely on the opinion of Walter J. Shields, Ph.D., to establish the wind erosion rates of soil from the areas of the burned range-land that was treated with Oust. In his report, Dr. Shields claims that "[in] the first year following the burn, wind erosion rates of 80 tons/acre/year were reported on lands treated with Oust (see Attachment D1)." *Motion*, Exh. K, at Exh. K-3, p. D-3. (Document No. 913-24, p. 3.) He set forth his soil erosion calculations in the referenced "Attachment D1." *Id.* (Docket No. 913-24, at p. 5). He claims to have included in his calculations only data from monitoring locations that were treated with Oust, and that met his criteria for "burned ground" in 1999 and 2000. *Id.*, at p. D1-2 (Document No. 913-24, at p. 7). However, the following monitoring locations were included in his calculations: Cedarbutte 01, Cedarbutte 04, Coffee Point #2 Well, Deadman 1 and 2, Grandview (including data from a 1997 fire), Mulebutte 113-2, Mulebutte 113-3, Mulebutte 115 MU-1, Mulebutte 115-2, Mulebutte 121-2, Mulebutte 178-1 and both Flat Top stations.

BLM contends that some of the monitored site locations included in Dr. Shields's recalculation were not Oust treated sites. Specifically, Deadman 1 and 2

---

information contained in the fire emergency plans created prior to the Oust applications is relevant to knowledge, and does not dispute its admissibility.

which were part of the Tin Cup fire burn site, were not treated with Oust.[2] BLM argues that the soil erosion rate of the Tin Cup site is completely irrelevant to any material issue in this litigation because (1) the claim in this case is that Oust-treated soil caused the damage alleged in this case and non-Oust treated soil is not relevant to any issue, and (2) the soil conditions of the non-Oust treated burn sites (particularly the more northern Tin Cup fire site) are completely different than the actual Oust treated sites; therefore, the erosion rate information from the non-treated sites have no probative value in determining the soil erosion rate for the Oust treated sites. The Government argues further that by conflating the non-relevant soil erosion rates with the relevant soil erosion rates, Plaintiffs have made it impossible for the jury to separate relevant from irrelevant information and created the potential for a jury determination based on confusion of the evidence. For these reasons, the Government argues that the evidence regarding soil erosion

---

[2]BLM also points to a document in the record which purports to be a copy of a BLM internal communication with attached soil monitoring data. A hand-written note purportedly by Darwin Jeppeson, who conducted the 3F Bridge monitoring for BLM, states that "[t]he Flat Top, #Two Well and Mule Butte fires are the only fires that relate to Oust treatments." *Motion*, Exh. D, BLM0181454 (Document No. 913-7, p. 3). The Court assumes that the BLM is suggesting that the other site monitoring data is also not relevant; but BLM leaves it to the Court to decipher the data and the notes. The data attached does not correspond directly with other documents purporting to identify which burn sites were treated and which were not. (*See* Document 911-4, p. 3.) The Court cannot conclusively ascertain which locations included in Dr. Shields' calculations were or were not Oust treated sites from the record before it in this motion.

on non-treated sites should be excluded.

The Court agrees, based on the record before it, that the actual detailed monitoring information on soil erosion rates from the non-Oust treated burn sites that have significantly different soil characteristics[3] is probably not relevant to the material issues in this litigation, and further, that combining the relevant soil erosion rates with the irrelevant soil erosion rates conceivably skews the soil erosion rates to the detriment of the Government.  The Court also agrees that the soil erosion monitoring data for the burn sites that is available would further diminish any possible probative value of the monitoring data from the non-treated sites.

The record is not clear, however, exactly which sites included in the data were or were not Oust treated, and to what extent including the non-Oust treated site data impacts the result.  No alternative calculation that provides this comparison has been offered.  Accordingly, BLM seems to be asking the Court to exclude the result of Dr. Shields's recalculation rather than simply to redact the non-treated land data from the opinion/analysis.  Without a basis to determine the extent to which Dr. Shields's calculations (or recalculations) are actually affected by the inclusion of the non-treated site data, the Court declines to do so.

---

[3]Neither Plaintiffs nor DuPont dispute that the soil conditions at the Tin Cup fire site, or the other non-treated burn sites, are significantly different than on the Oust treated sites.

Moreover, the Court recalls that the soil erosion studies have not been admitted into evidence during trial. However, Dr. Shields testified to the soil erosion studies and other studies upon which he relied. Those studies apparently included the non-Oust treated lands. The BLM did not object to that testimony. *See* Trial Trans., Day 11, May 18, 2009, 2174 - 2177. Accordingly, the Government's motion in limine to preclude this evidence at trial is apparently moot.

**ORDER**

For the foregoing reasons,

IT IS HEREBY ORDERED that Defendant United States of America's Motion in Limine to Exclude Evidence of Soil Conditions on BLM Land Not Treated With Oust (Document No. 913) is DENIED WITHOUT PREJUDICE. Counsel may renew the objection if an effort is made to admit the soil erosion studies or data for non-Oust treated lands, or to use them at trial in any manner beyond the limited manner in which they were used during Dr. Shield's testimony.

DATED: **July 15, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge