IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| TIMM ADAMS, et al,  <br>    Plaintiffs,  <br>v.  <br>UNITED STATES OF AMERICA,  <br>    Defendant. | Civ. No. 03-0049-E-BLW  <br><br>MEMORANDUM DECISION  <br>and ORDER REGARDING  <br>MOTION TO EXCLUDE  <br>TESTIMONY OF  <br>DR. R. THOMAS SCHOTZKO |

## INTRODUCTION

The Court has before it plaintiffs' motion to exclude the testimony of an expert shared by DuPont and the BLM, Dr. R. Thomas Schotzko. For the reasons expressed below, the Court will grant the motion in part and exclude Dr. Schotzko's opinions that (1) certain quality declines in Jentzsch-Kearl potatoes were not caused by Oust, (2) that the quality declines were caused by other factors such as planting the same variety two years in a row; and (3) that exposure levels to Oust were low. The motion will be denied in all other respects.

**Memorandum Decision & Order re Motion to Exclude Dr. Cullen – page 1**

## ANALYSIS

Dr. Schotzko has a Ph.D. in agricultural economics, and was an agricultural extension specialist for Washington State University for 27 years. In that position, he worked with growers to help them improve their management practices by examining the prices they were receiving in the marketplace. *See Deposition of Dr. Schotzko* at p. 25. He specialized in "major tree fruits and potatoes." *Id*. at p. 28. With regard to potatoes, his area of expertise relates to "price or quality." *Id*. at p. 33. He helps farmers "better understand the system within which they operated in terms of producing and marketing their crops." *Id*. at pp. 27-28. He admits to having no expertise regarding the cause of plant injury to potatoes, and has had no experience with Oust. *Id*. at p. 88.

To resolve plaintiffs' motion, the Court turns first to their challenge to the first two opinions of Dr. Schotzko: That in determining quality of potatoes, post-harvest samples are accurate and pre-harvest samples are not. Dr. Schotzko based these opinions on a comparison of (1) the percentages of number 1 and 2 potatoes derived from pre-harvest hill digs to (2) the percentages of number 1 and 2 potatoes actually harvested. He found that the pre-harvest percentages underestimated the actual percentages, meaning that the grower – in this case Jentzsch-Kearl – actually received a higher return for his potato crop than the pre-

**Memorandum Decision & Order re Motion to Exclude Dr. Cullen – page 2**

harvest figures predicted.

This is irrelevant as rebuttal to plaintiffs' evidence of economic damages. Those damages were based on actual production data generated after the sale of the crops. Thus, the weak predictive power of pre-harvest sampling does nothing to rebut plaintiffs' economic damage testimony.

But it is relevant for another reason. Rodney Jentzsch testified to injury suffered in his potato crop by using the pre-harvest sampling done by his agronomist Mike Larsen. *See Transcript* at pp. 5163-71. Dr. Schotzko will testify that Larsen's sampling overestimates the injury. Thus, Dr. Schotzko is directly rebutting part of Jentzsch's testimony, and hence his first two opinions are relevant.

The plaintiffs next object to the following statements contained in Dr. Schotzko's Rule 26 report:

> The low level of Oust found, where it was found, in the soil samples on or near bellwether farms was nearly always below the levels researchers (Westra, Hutchinson and Callihan) have found to have statistically significant effects on quality. Since the extent, if any, of the quality effects have not been established, the level of exposure must, indeed, be low, implying even less impact or no impact on yield.

The first sentence is merely an observation and an indication of reliance on the work of others; it is not an opinion. However, the second sentence is an

**Memorandum Decision & Order re Motion to Exclude Dr. Cullen – page 3**

opinion on the level of exposure to Oust. As set forth above, Dr. Schotzko has stated that he has no expertise in Oust or the causation of injury to potatoes. Thus, this second sentence must be excluded.

The plaintiffs next object to Opinion 3, that the harvested results from the Norkotah fields do not offer any support for the claim of reduced quality due to the alleged exposure to Oust. In reaching that opinion, Dr. Schotzko reviewed production data for Jentzsch-Kearl from 1997 through 2007. He observed that the percentage of number 1 Norkotah potatoes went from 44-59% in the late 1990s to over 70% in the alleged loss years 2000-03. Dr. Schotzko concludes that these figures do not support a claim of reduced Norkotah quality in the loss years.

This conclusion is well-within Dr. Schotzko's area of expertise and his methodology does not appear unreliable. But Dr. Schotzko's opinion 3 does not stop there. He also renders an opinion that the reduced quality was not due to Oust, and may have been caused by other factors such as planting Norkotahs two years in a row. As discussed above, Dr. Schotzko has no expertise on the cause of potato problems generally, and no expertise on Oust in particular. Thus, the Court will exclude any opinion that (1) quality declines were not caused by Oust, and (2) quality declines were caused by other factors such as planting Norkotahs two years in a row. The Court will not exclude, however, the remainder of the opinion that

**Memorandum Decision & Order re Motion to Exclude Dr. Cullen – page 4**

discusses the quality of harvested Norkotahs – it does not depend on the causation discussion that was stricken.

Plaintiffs seek to exclude even the quality discussion in opinion 3 on the ground that Dr. Schotzko gave halting and uncertain answers in his deposition testimony related to his opinion 3. Yet those answers related to causation, and were directly responsive to questions posed by plaintiffs' counsel. *See Dr. Schotzko Deposition* at pp. 204-05. Those answers did not form the foundation for his opinion 3; plaintiffs have essentially raised a straw man (by their own deposition questions) and knocked it down. The Court assumes plaintiffs will not ask similar questions regarding causation at trial, and that Dr. Schotzko will not attempt to speculate about causes of injury to potatoes. On that basis, the Court will not exclude that portion of opinion 3 that discusses the quality of harvested Norkotahs.

Plaintiffs next challenge opinion 4 that the Warren Field had an unusually low percent of number 1 potatoes for 2001. In the course of explaining that opinion, Dr. Schotzko calculates a hypothetical loss of sales revenue from the Warren Field underproduction, and concludes that "there is insufficient evidence to indicate that this hypothetical loss was caused by Oust." *See Report* at pp. 13 to 14.

**Memorandum Decision & Order re Motion to Exclude Dr. Cullen – page 5**

Here is another straw man, this one set up with a hypothetical revenue projection, and then knocked down with a conclusion about Oust causation. While Dr. Schotzko might have the expertise to set up this straw man, he had no expertise to knock it down – as stated above, he has no expertise in Oust causation issues, and thus this testimony contained within opinion 4 must be excluded. But this does not mean opinion 4 itself must be excluded. Dr. Schotzko's opinion that the Warren Field under-produced does not depend on his straw man revenue calculations and Oust causation conclusion. Thus, the offending provisions can be carved out and opinion 4 remains valid. The heart of the opinion – that the Warren Field under-produced – is within Dr. Schotzko's expertise and his methodology does not appear so unreliable that it must be excluded.

Opinion 5 is likewise within Dr. Schotzko's expertise as he compares the Russet Burbank potatoes produced by Jentzsch-Kearl to state-wide averages and finds no abnormal changes that fall outside the normal range of variability. In his report he notes one field did have a reduced quality, and noted that its "location is relatively close to the roads that were sprayed by Young and Young Farms." *See Report* at p. 16. He says nothing further about Young or his applications. This brief reference to Young – not as a separate opinion but simply as an observation – is much different than the full-blown opinion by Robert E. Thornton that the

**Memorandum Decision & Order re Motion to Exclude Dr. Cullen – page 6**

Young Oust applications were transported to bellwether fields. Dr. Schotzko's brief mention of Young is akin to the lay testimony the Court has allowed on third-party sprays that are close in proximity to the bellwether fields. The Court will therefore not exclude this part of opinion 5.

Finally, plaintiffs challenge opinion 6 that several of Jentzsch-Kearl's mitigation expenses – including the expenses incurred in expanding to the south – have no connection to Oust contamination. As an agricultural economist whose expertise is in production and marketing of potatoes, Dr. Schotzko's opinion 6 is within his area of expertise and the Court cannot find it so unreliable that it must be excluded.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to exclude the testimony of certain experts (docket no. 771) is GRANTED IN PART, RESERVED IN PART, AND DENIED IN PART. It is granted to the extent it seeks to exclude Dr. Schotzko's opinions that (1) quality declines were not caused by Oust, (2) that quality declines were caused by other factors such as planting Norkotahs two years in a row; and (3) that exposure levels to Oust were low. As to Dr. Schotzko, the remainder of the motion is denied. As to other experts

**Memorandum Decision & Order re Motion to Exclude Dr. Cullen – page 7**

challenged in the motion, the motion is reserved.



DATED: **July 16, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision & Order re Motion to Exclude Dr. Cullen – page 8**