IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| TIMM ADAMS, et al, | ) ) | Civ. No. 03-0049-E-BLW |
| Plaintiffs, | ) ) ) |  |
| v. | ) ) ) ) | MEMORANDUM DECISION and ORDER REGARDING MOTION TO EXCLUDE |
| UNITED STATES OF AMERICA, | ) ) ) | TESTIMONY OF DR. CAROL MALLORY-SMITH |
| Defendant. | ) ) |  |

## INTRODUCTION

The Court has before it plaintiffs' motion to exclude the testimony of an expert shared by DuPont and the BLM, Dr. Carol Mallory-Smith. For the reasons expressed below, the Court will exclude her opinions on third-party applications, and exclude any testimony relying on her sugar beet bioassay study, but deny the remainder of the motion.

## ANALYSIS

Dr. Mallory-Smith has a Ph.D. in plant science and teaches classes in weed management at Oregon State University. She has studied ALS inhibitors her entire

**Memorandum Decision & Order – page 1**

career.  *See Mallory-Smith Deposition* at p. 24.  As part of her class on weed management, she teaches the analysis of herbicide labels and the interpretation of label language.  She is a licensed consultant who lectures to chemical applicators on the analysis of herbicide labels.  For about six years, she worked with the EPA on establishing pesticide labeling guidelines, and has had frequent input in the processing of 24(c) herbicide labels in Oregon.  *See Dr. Mallory-Smith Deposition* at pp. 255-57.

In her report, she testifies to the following opinions: (1) The BLM's decision to use Oust to control cheatgrass was "a reasonable choice," *see Report* at p. 1; (2) The BLM followed the label in its applications; (3) DuPont had a stewardship duty to provide all information it had about the movement of Oust in the soil; (4) Third-party applications of Oust "could be responsible for crop damage on adjacent or nearby fields," *id*. at p. 2; (5) it is not possible to determine if Oust was responsible for crop loss "because analysis of herbicide symptoms is not an exact science," *id*.; (6) It is not possible to tell if Oust caused the crop damage here or whether it was due to "at least 10 other ALS-inhibiting herbicides . . . used in the region," *id*.; and (7) the Growers' failure to abide by plant-back restrictions on their own spraying "could result in injury" especially since 2001 was a "dry year."  *Id*.

In an earlier decision, the Court found that her opinions (2) and (3) satisfied

**Memorandum Decision & Order – page 2**

the requirements of Rule 702.  *See Memorandum Decision (docket no. 905).*  The plaintiffs now challenge the other opinions, and the Court will begin its analysis with the causation opinions (4) and (6) listed above.  Both of those opinions depend on an analysis of wind erosion and herbicide transport issues to reach conclusions that third-party applications on sites other than the farms at issue resulted in Oust being transported to plaintiffs' farms.

These two opinions fail to satisfy Rule 702 because Dr. Mallory-Smith has no expertise on the subjects of wind erosion or herbicide transport.  *See Dr. Mallory-Smith Deposition* at p. 30 (admitting no expertise in fugitive dust or soil science issues).  For her to testify that third-party applications could be responsible for plaintiffs' crop damage, she must have expertise to evaluate how the herbicide applied by the third parties would be transported to the plaintiffs' fields.  She has none.

It is true that the Court has held that geographic proximity, rather than expert testimony, may be all that is needed to allow counsel to argue that a third-party spray close-by a plaintiffs' field caused the crop damage.  The defendant's are still free to make that argument to the jury.   What they may not do, however, is bolster their argument with testimony from an expert witness who lacks any expertise in wind erosion and herbicide transport.   This analysis requires the exclusion of

**Memorandum Decision & Order – page 3**

opinions (4) and (6) listed above.

The plaintiffs argue next that Dr. Mallory-Smith has failed to consider the extent of plaintiffs' claims. Her Rule 26 report states that "it is my understanding that the plaintiffs claim that the off-target movement of Oust (sulfometuron) on soil particles from [BLM] sites caused widespread crop damage in Southeastern Idaho in 2001." *Id*. at p. 3. When asked about this at her deposition, she responded that "[i]t is my understanding that is the only time that damages were claimed by the growers was in 2001." *See Dr. Mallory-Smith Deposition* at p. 23.

Thus, Dr. Mallory-Smith ignored the fact that plaintiffs are also claiming damages for the years 2000, 2002, 2003, and 2004. There has been extensive expert testimony in this case that the extent of the damage – both geographically and over time – is a crucial factor to consider in determining causation. There has been no testimony to the contrary.

An expert's opinions must be based on "sufficient facts or data" under Rule 702. Testimony is not based on "sufficient facts or data" when "the expert has not considered *enough* information to make the proffered opinion reliable." *Id*. at § 6266, p. 63 (Supp. 2008) (emphasis in original). Ignoring 4 out of the 5 years of Oust damage claims raises a serious question regarding whether Dr. Mallory-Smith's opinions pass muster under Rule 702. The Court cannot tell, however,

**Memorandum Decision & Order – page 4**

whether she has the same opinions regardless of the additional 4 years of claims. She will need to explain this at trial. The Court will then resolve any objections raised to her testimony at that time.

Another matter that concerns the Court is that Dr. Mallory-Smith kept no field notes on her bioassay study of how sugar beets respond to ALS inhibitors. Her failure to keep field notes gives plaintiffs no way to cross-examine her on the bioassay, making it unfair for her to rely upon it in any manner. The Court therefore excludes any part of her testimony that would rely on the bioassay study involving sugar beets.

Plaintiffs argue that if the bioassay is excluded, she has no expertise on the effects of ALS inhibitors on sugar beets. She admitted that her expertise on the effects of ALS inhibitors on sugar beets is "very limited." *See Dr. Mallory-Smith Deposition* at p. 32. Nevertheless, her entire career has been spent studying the effects of ALS inhibitors on various crops. It is simply unclear at this point whether her general expertise is enough to support her sugar beet opinions. The Court will evaluate this matter at trial, just as it will with her lack of knowledge of the four years of plaintiffs' damage claims.

With regard to her other opinions, the Court finds her sufficiently qualified, and the opinions sufficiently reliable, to satisfy Rule 702. Accordingly, the

**Memorandum Decision & Order – page 5**

plaintiffs' motion will be granted only in part, excluding opinions (4) and (6) listed above, and any reliance on the sugar beet bioassay study.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to exclude the testimony of certain experts (docket no. 771) is GRANTED IN PART, DENIED IN PART, AND RESERVED IN PART. It is granted to the extent it seeks to exclude Dr. Mallory-Smith's opinions (4) and (6) listed above, and any reliance on the sugar beet bioassay study. It is denied in all other regards as to Dr. Mallory-Smith. It is reserved as to challenges to any other experts listed in the motion and not yet resolved.

DATED: **August 2, 2009**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision & Order – page 6**