IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| TIMM ADAMS, et al, | Civ. No. 03-0049-E-BLW |
| Plaintiffs, | MEMORANDUM DECISION AND ORDER REGARDING BLM'S MOTION TO STRIKE TESTIMONY OF PLAINTIFFS' EXPERTS HOFMAN, SHIELDS, MILLER & HADERLIE and BLM'S RULE 52(C) MOTION AS TO DAMAGES |
| v. |  |
| UNITED STATES OF AMERICA, et al, |  |
| Defendants. |  |

## INTRODUCTION

The Court has before it the BLM's motions (1) for judgment under Rule 52(c) on damages, and (2) to strike the testimony of plaintiffs' experts Cornelius Hofman, and Drs. Shields, Miller, and Haderlie. For the reasons expressed below, the Court will deny the motions.

## ANALYSIS

### 1. Motion to Strike

The BLM argues that the opinions of four testifying experts for plaintiffs – Hofman and Drs. Shields, Haderlie & Miller – are not supported by facts admitted into evidence. The BLM argues that "[w]hen expert testimony depends upon

**Memorandum Decision & Order – page 1**

certain facts, those facts must exist in the record in order for the testimony to be admissible." *See BLM Reply Brief* at p. 3. The BLM cites a number of cases, a representative sample of which is discussed later in this decision.

An analysis of this argument begins with Rules of Evidence 703 and 705. Rule 703 states that the "facts or data need not be admissible in evidence in order for the opinion or inference to be admitted" so long as they are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Rule 705 allows an expert to testify to an opinion "without first testifying to the underlying facts or data, unless the court requires otherwise." Considered together, Rules 703 and 705 "shift the burden to the cross-examiner to reveal the bases of an expert's opinion and the deficiencies therein." *See* 29 Wright and Gold, *Federal Practice & Procedure* § 6272 at p. 306 (1997).

While an expert may render opinions based on inadmissible facts, the expert's opinions cannot be based on assumptions that have no basis in fact. For example, an expert cannot testify that a defendant's drug use caused him to falsely confess to a crime when there is no evidence that the defendant used drugs. *See Pecoraro v. Walls*, 286 F.3d 439 (7th Cir. 2002). Similarly, an expert cannot testify that a train conductor keeping a proper lookout should have seen track defects in time to stop the train when there was no evidence that the defects would

**Memorandum Decision & Order – page 2**

be visible in the evening hours at issue.  *See Guidroz-Brault v. Missouri Pac. R.R. Co.,* 254 F.3d 825 (9th Cir. 2001).  As a final example, an expert cannot rely on assumptions about the market for boat engines that have no basis in the actual marketplace for those engines.  *See Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039 (8th Cir. 2000).

In each case, predicate facts – that is, facts critical to the expert opinion – were not established or did not exist.  While these cases, and others cited by the BLM, do not always cite the Federal Rules of Evidence, the common flaw they identify can be restated as a failure to comply with Rule 702.  That Rule requires, among other things, that the expert opinion "assist the trier of fact to understand the evidence or to determine a fact in issue," and be based on "sufficient facts or data."  Testimony does not "assist the trier of fact" when it is "based on factual assumptions that are not supported by the evidence."  *See* 29 Wright and Gold, *Federal Practice & Procedure*, § 6264 at p. 211 (1997).  Testimony is not based on "sufficient facts or data" when "the expert has not considered *enough* information to make the proffered opinion reliable."  *Id*. at § 6266, p. 63 (Supp. 2008) (emphasis in original).

Thus, the expert in *Concord Boat* ran afoul of Rule 702 because his assumptions about the market for boat engines had no basis in fact and hence failed

**Memorandum Decision & Order – page 3**

to assist the jury. Likewise, the experts in *Guidroz-Brault* did not assist the jury under Rule 702 because their assumptions about what a train engineer should have seen on the tracks were not supported by any facts.

Pulling all this authority together, the expert's opinions must assist the jury under Rule 702, and that may require that certain predicate facts be admitted into evidence, but beyond that, the expert has no obligation to rely on admitted evidence and may testify without any discussion of the underlying facts and data, pursuant to Rules 703 and 705.

2.  **Motion to Strike – Hofman**

Hofman rendered an opinion on the economic losses suffered by the Growers. He took the difference between the value of actual yields and expected yields, subtracted costs saved and added mitigation costs, multiplied by a debt rate, and arrived at a value of total economic loss. *See Demonstrative Exhibit 35167*. Hofman rendered this opinion before the Growers themselves established the fact of their crop damage. This ordering rendered Hofman's testimony irrelevant under Rule 401 and of no assistance to the jury under Rule 702 – testimony on the dollar figures of damage is neither relevant nor helpful until the predicate fact of damage is established. *See Pecoraro*, 286 F.3d at 446 (expert's opinion that defendant's drug use caused false confession irrelevant in absence of evidence of defendant's

**Memorandum Decision & Order – page 4**

drug use). The Court expressed its concern to counsel at the time of Hofman's testimony:

> Well, part of the problem is the order. You know, I had really anticipated Mr. Hofman would testify at the end of the trial after all of this had been laid. . . . But I can tell you that if I allow this testimony and there's not a factual basis for it submitted through other witnesses, where he's testified to anything factual as opposed to just his opinion, it's going to be subject to a motion to strike. And an instruction will probably go into the jury room telling the jury what the court has stricken so it's very clear to them . . . . So you know, there's a risk at what you've done here in terms of calling the expert this early in the game.

*See Trial Transcript* at p. 3748-49. The Court then issued a written opinion setting forth the reasoning behind its decision to allow Hofman to testify out of order and setting forth the consequences if the predicate facts necessary to support his testimony was never admitted into evidence. *See Memorandum Decision* at docket no. 1138.

When the relevancy of testimony is dependent on a predicate fact that has not yet been established, the Court has the authority to admit the testimony conditionally, "subject to the introduction of evidence sufficient to" establish the predicate fact. *See Federal Rule of Evidence 104(b).* Based on Rule 104(b), the Court admitted Hofman's opinions on the dollar figures of damages to the Growers conditioned on the later admission into evidence of predicate facts that would

**Memorandum Decision & Order – page 5**

establish the fact of damage.

When the Growers testified, they established generally the widespread damage suffered by their crops. They also testified at length on the mitigation costs they incurred as a result of Oust contamination.

They did not testify, however, about precise figures of their actual yield losses, leaving the calculation of those figures to Hofman. For example, Funk testified that while he had "a rough estimate" of actual yield loss, "the final number, you have to go to Mr. Hofman on." *See Trial Transcript* at p. 6354. Hofman, in turn, relied on numerous documents to compute actual yields, including tax returns, legers, and settlement sheets. *Id*. at 3657 to 3668. Those documents were not admitted into evidence.

The Growers also did not testify in any detail on their expected yields. Again, they provided documents to Hofman who calculated the final figures. Hofman relied on interviews with the Growers, their historic yields in non-claim years, the opinions of Drs. Haderlie and Miller, and a comparison with Cassia County average crop yields. *Id*. at pp. 3690 to 3711, 3842 to 3851. None of the documents Hofman relied upon to calculate expected yields was admitted into evidence.

The BLM argues that Hofman's opinions should be stricken because

**Memorandum Decision & Order – page 6**

plaintiffs failed to introduce any of the underlying yield, price, revenue and acreage documents into evidence. This failure, the BLM argues, means that plaintiffs "have wholly failed to meet their burden to provide the necessary factual predicate for Mr. Hofman's opinions on economic damages." *See BLM Brief (docket no. 1252)* at p. 10.

The Court disagrees. The predicate facts were established when the Growers testified that they suffered crop damage. Their testimony was extensive regarding the symptoms suffered by their crops and the general declines in yield and quality. That testimony constituted the "tie-up" required by Rule 104(b) to make Hofman's opinions putting a dollar figure on the damages relevant under Rule 401 and of assistance to the jury under Rule 702.

The precise yield numbers went to the extent of damage, not its existence. It was the existence of damage – not its extent – that was a predicate fact required to be admitted into evidence to make Hofman's testimony relevant and of assistance to the jury. That predicate fact was established, and hence Hofman's opinions are not subject to being struck for the failure to admit into evidence documents setting out the extent of damage.

The Court further finds that Hofman relied on "sufficient facts and data" under Rule 702. The defendants do not argue that Hofman failed to consider

**Memorandum Decision & Order – page 7**

enough facts, and his testimony showed that he considered thousands of documents of the type experts in his field reasonably rely upon in determining economic loss from crop damage.  *See* 29 Wright and Gold, *Federal Practice & Procedure*, § 6266, p. 63 (Supp. 2008) (Rule 702's requirement that opinion rely on "sufficient facts or data" is "quantitative rather than qualitative" and looks to whether the opinion is based on "enough information" to make it reliable).  Those facts and data need not be admitted into evidence pursuant to Rule 703, and the burden was on the defense to challenge any underlying facts or data pursuant to Rule 705.  There is no claim that the facts and data relied upon by Hofman were not provided in a timely manner to the defense.

For these reasons, the Court will deny the motion to strike Hofman's testimony.

### 3.     **Motion to Strike – Drs. Shields, Haderlie & Miller**

The BLM makes similar arguments regarding plaintiffs' experts Drs. Shields, Haderlie, and Miller.  Applying the same analysis as set forth above, the Court can find no reason to strike these opinions.  These experts were entitled to rely on facts and data that were not admitted into evidence.  The Court cannot find that plaintiffs failed to admit into evidence any predicate facts necessary to satisfy Rules 702 and 401.  The motion to strike these experts will be denied for the same

**Memorandum Decision & Order – page 8**

reasons as expressed above.

**4.      Motion for Judgment Under Rule 52(c) as to Damages**

The BLM seeks a judgment under Rule 52(c) as to damages.  Part of the motion is based on the motion to strike discussed above, and that argument will be rejected.  The BLM also argues that the plaintiffs should have set forth their damage calculations for actual and expected yields plaintiff-by-plaintiff and crop-by-crop.  As discussed above, Hofman was not required to discuss the facts or data on yields in rendering his opinions – the burden was on defendants to point out any shortcomings in the facts or data relied upon by Hofman.  Thus, the Court finds this argument unpersuasive.

The BLM also argues that the plaintiffs failed to support their claim for mitigation expenses with admitted evidence.  But each bellwether plaintiff testified at length on their mitigation expenses.  They testified that each mitigation expense set forth in Hofman's calculations was in fact incurred, and was incurred to cure Oust damage.  The Court rejects this argument.

Finally, the BLM argues that the plaintiffs cannot recover interest prior to a judgment against the United States, and that they have not introduced into evidence their actual cost of borrowing.  The Court has already held that plaintiffs are seeking lost opportunity costs, not prejudgment interest, and that Hofman's

**Memorandum Decision & Order – page 9**

testimony considered the actual lost opportunity costs.  *See Memorandum Decision at docket no. 1138.*  The Court can find no reason to strike or dismiss these claims for damages.  Accordingly, the BLM's motion for a Rule 52(c) judgment on damages will be denied.

## ORDER

In accordance with the Memorandum Decision filed above,

NOW THEREFORE IT IS HEREBY ORDERED, that the BLM's motion to strike testimony of plaintiffs' experts (docket no. 1252) is DENIED.

IT IS FURTHER ORDERED, that the BLM's motion for judgment under Rule 52(c) as to damages (docket no. 1255) is DENIED.



DATED:  **August 1, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision & Order – page 10**