IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| TIMM ADAMS, et al., | ) ) ) | Civ. No. 03-0049-E-BLW |
| Plaintiffs, | ) ) | MEMORANDUM DECISION AND ORDER RE: RULE 50 MOTION |
| v. | ) ) ) | FOR FAILURE TO PROVE CAUSATION ON CERTAIN |
| UNITED STATES OF AMERICA, et al., | ) ) ) | CLAIMS AND TO ELICIT PROOF ON SPECIFIC CLAIMS (Docket No. 1246) |
| Defendants. | ) ) | |

## INTRODUCTION

The Court has before it DuPont's Motion for Judgment as a Matter of Law Under Rule 50(a) For Failure to Prove Causation on Certain Claims Of Negligence and Product Liability and For Failure to Elicit Proof on Specific Claims ("Rule 50 Motion"), which the Government joins. The motion is fully briefed. For the reasons set forth in the following Memorandum Decision, the Court will deny the motion in part, reserve ruling on the motion in part, and grant the motion in part.

## STANDARD OF LAW

**Rule 50 Standard**

The court may grant a motion for judgment as a matter of law against the

MEMORANDUM DECISION AND ORDER - 1

non-moving party only if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Ritchie v. United States*, 451 F.3d 1019, 1022-23 (9th Cir. 2006). "This necessarily means that the court must draw all reasonable evidentiary inferences in favor of the non-moving party." *Id*. In ruling on the motion, "the court . . . may not make credibility determinations or weigh the evidence." *City Solutions, Inc. v. Clear Channel Communications, Inc.*, 365 F.3d 835, 841 (9th Cir. 2004).

**Causation**

Causation is indisputably a necessary element for Plaintiffs to prevail on their product liability and negligence claims for damage to their crops from the Oust applications to BLM rangelands. The Court set forth the causation standard in this case previously, in addressing the preclusive effects of the trial of the Bellwether Plaintiffs' claims:

> The Court must maintain a distinction between general causation issues, that apply to all plaintiffs, and specific causation issues, that must be proved by each plaintiff. In analogous cases involving toxic torts, causation "is typically discussed in terms of generic and specific causation." *See In Re Hanford Nuclear Reservation Lit.*, 292 F.3d 1124, 1133 (9th Cir. 2002). General or generic causation means "whether the substance at issue had the capacity to cause the harm alleged." *Id.* In *Hanford*, for example, the Ninth Circuit explained that the general causation inquiry was "whether exposure to a substance for which a defendant is responsible, such as radiation at the level of exposure alleged by plaintiffs, is capable of causing a particular injury or condition

in the general population." *Id.*

> To ultimately prevail in such a lawsuit, however, a plaintiff must show both general and "individual" or "specific" causation. *Id.* Specific causation refers to whether a particular individual suffers from a particular ailment as a result of exposure to a substance. *Id.* "Although many common issues of fact and law will be capable of resolution on a group basis, individual particularized damages still must be proved on an individual basis." *Id.* at 1135 (quoting *Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188, 1200 (6th Cir.1988)).
>
> Here, it would appear that general causation issues would include (1) the amount of Oust necessary to damage crops; (2) the length of time that Oust remains viable in the soil; (3) how Oust works on plants to cause damage; (4) the winds necessary to transport Oust; (5) the sensitivity of various crops to Oust; and (6) symptoms of Oust damage.

*Memorandum Decision and Order on Preclusion*, May 5, 2009 (Docket No. 1047).

The Court also has already ruled in this case that whether Oust caused crop injury is a matter for expert testimony, and that a lay witness may testify to the effects of Oust only when his or her background and experience includes particularized knowledge of Oust. *Memorandum Decision and Order*, November 21, 2008, (Docket No. 697), p. 6. *See also J.H. v. Jefferson County*, 2007 WL 219996, at 8 (D. Idaho 2007) (*quoting Dodge-Farrar v. Am. Cleaning Serv.*, Co. 54 P. 3d 954, 958 (Idaho 2002)). Moreover,

> [c]ircumstantial evidence is competent to establish negligence and proximate cause. Facts, which are essential to a liability for

MEMORANDUM DECISION AND ORDER - 3

> negligence, may be inferred from circumstances which are established by evidence. But, where circumstantial evidence is relied upon, the circumstances must be proved, and not themselves be left to presumption.

*Splinter v. Nampa*, 256 P.2d 215, 220 - 21 (Id.Sup.Ct. 1953).

## ANALYSIS

DuPont makes three general arguments in this motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a). The Court will address each in turn.

1. **<u>Was There Sufficient Evidence of Causation for Injuries Allegedly Suffered During 2000 and 2002-4?</u>**

DuPont first argues that plaintiffs' evidence of proximate cause is legally insufficient for all of the Bellwether claims for any years other than 2001. According to DuPont, expert testimony is necessary to prove that Oust actually caused the damage to each claim field for each claim year, and the plaintiffs' experts failed to provide competent evidence of specific causation for the years 2000, 2002 through 2004. DuPont argues that the experts failed to properly apply their causation methodology (visual symptomology differential diagnosis) for years other than 2001, except for a "handful of fields" in 2002 and 2003. Accordingly, DuPont argues further that the plaintiffs' crop experts' opinions fail to meet the requirements of Rule 702 and *Daubert*, and plaintiffs failed to set forth

MEMORANDUM DECISION AND ORDER - 4

legally competent evidence of causation outside of the year 2001.

DuPont's first argument, in essence, asks the Court to revisit its earlier motion to exclude certain testimony by the Plaintiffs' crop experts (Docket No. 783), which the Court denied by Memorandum Decision and Orders, Docket Nos. 1121, 1199 & 1212. In those opinions and others, the Court rejected DuPont's argument that Idaho law requires a field-by-field expert analysis, and that the experts had to personally view the damage symptoms in every field in every year as opposed to relying on other information commonly relied upon by reasonable experts within the field in forming their opinions. The Court denies the request to revisit these issues and arguments, and incorporates herein by reference its prior decisions found at Docket Nos. 1121, 1199 & 1212.

The Court also rejects DuPont's general argument that the plaintiffs' failed to put forth any causation evidence for the years 2000, and 2002 through 2004. At the heart of DuPont's motion is the rejection of a fundamental component of the Plaintiffs' theory of this case – that only Oust could have caused such a widespread (both in location and crop diversity) and unique damage that the plaintiffs experienced throughout their crops beginning in 2000 and continuing through 2004. Plaintiffs maintain that since their experts were able to diagnose the cause of the widespread and unique damage in 2001, that their testimony as to where and

MEMORANDUM DECISION AND ORDER - 5

when the widespread, unique symptomology and damage began and ended is sufficient to "close the loop" or "connect the dots" for the jury to determine that Oust caused all of the damages claimed on this basis. DuPont maintains, as it has throughout this case, that plaintiffs must present evidence of causation through an expert who personally verified the presence of Oust damage in every field of every crop for every year.

The Court on several occasions has rejected the field-by-field analysis requirement, as well as the argument that an expert must have personally viewed SU symptoms in every field for every crop to offer an opinion that crop damage was caused by Oust. The Court continues to disagree with DuPont on this matter. With the exception of certain claims discussed below, the Court finds that plaintiffs have presented sufficient, reliable evidence of causation on claims from 2000 to 2004 to go to the jury.

Defendants do not take issue generally with plaintiffs' evidence of causation for crop injury in 2001. Plaintiffs in fact set forth extensive testimony and demonstrative evidence from the bellwether plaintiffs, the plaintiffs' experts and other witnesses involved in the 2001 investigation, regarding the SU damage symptoms seen in the sugar beet, potato, wheat, barley and corn crops in 2001. Plaintiffs' expert witnesses testified that Oust was the cause of the SU symptoms.

MEMORANDUM DECISION AND ORDER - 6

Their testimony ruled out other causes; they concluded that no other possible cause could explain the unique symptomology present so widespread both in terms of location and crop variety. This evidence is sufficient to support a finding of causation both generally, and specifically, for 2001.

The Court further finds that plaintiffs' expert evidence regarding causation for the "diagnostic" year of 2001 also sets the foundation from which, coupled with additional circumstantial evidence, a reasonable juror could conclude that Oust caused the damage in the other, "non-diagnostic," years. For example, evidence from 2001 confirms that Oust was present in the soil of plaintiffs' farms. Plaintiffs further presented a fate and transport expert who testified that the Oust could remain in the soil through 2004, and would continue to damage crops. Except as set forth below, the same symptoms persisted on a wide-spread basis through 2004. They also testified that in hind-sight, they realized that the difficulties they experienced with various crops in 2000 were the same problems that were later diagnosed as Oust caused, but on a smaller scale.[1]

---

[1] In addition, for the most part, Haderlie and Miller provided independent evidence of causation for these later years. They each testified that they had viewed the symptoms or confirmed the continued presence of the identical symptoms they concluded were caused by Oust in 2001 for every claim crop and year through 2004. To the extent, however, either expert testimony fell short in this regard, the Court rejects DuPont's assertion that it is entitled to judgment as a matter of law on causation. The Court rejects DuPont's notion that the experts themselves needed to confirm the presence of the symptoms for every year and for every crop.

MEMORANDUM DECISION AND ORDER - 7

The Court finds, viewing the evidence in the light most favorable to the plaintiffs as it must, that a reasonable juror could find that causation has been established for 2000 and 2002-2004. The plaintiffs have therefore met their burden, and defendants' Rule 50 Motion will be denied.

2. **<u>Was There Sufficient Evidence of Causation Regarding Specific Crops?</u>**

DuPont next argues that plaintiffs failed to offer any causation evidence for damages to four claims in particular: (1) the Jentzsch-Kearl 2004 sugar beets claim; (2) the Hansen 2001 wheat claim; (3) the Hansen 2002 wheat claim; and (4) the Hansen 2004 potato claim. The Court has reviewed the transcripts extensively and finds that plaintiffs presented sufficient evidence, consistent with the Court's discussion above, regarding causation for the Jentzsch-Kearl 2004 sugar beets and Hansen 2004 potato claims. Specifically, for example, plaintiffs' experts testified that Oust caused the injury plaintiffs claim to those crops in 2001, plaintiffs' testified to their on-going experience with the Oust symptoms and damage to these crops through 2004, and Mr. Hofman presented the expert analysis for economic damage to these crops as a result.

With respect to the Hansen 2001 and 2002 wheat claims, however, there is no expert testimony that those claims are attributable to Oust. The Court sustained a foundation and Rule 26 objection to Dr. Miller's testimony regarding his opinion

MEMORANDUM DECISION AND ORDER - 8

that Oust caused the damage to the Hansen Wheat crops in 2001 and 2002. Specifically, the Court stated:

> Well, at this point, I don't see any opinion about the wheat fields and the Hansen wheat fields contained in this [report], so I'll have to sustain the objection.
> The witness has already testified as to what he observed in his own wheat fields. And at this point, I would leave it to the jury as far as any inference that can be drawn from there, and leave it at that.

Trial Trns., p. 7467, ll. 8 - 16.

While there is no expert testimony that the Hansen 2001 and 2002 wheat field damage was caused by Oust, there is expert testimony that Oust damaged wheat located within seven miles of the Hansen wheat field and numerous other crops in the surrounding areas, and that the Oust-damaged wheat displayed the same or similar unique symptomology as the other damaged crops. And, again, there is expert testimony that no other possible cause could attribute to the unique symptomology on such a wide-scale basis both in location and crop diversity. In short, this is a close question for the Court. For this reason, the Court is inclined to proceed with caution. "Where there is any doubt at all as to the propriety of a directed verdict, district courts should not jump the gun but should wait until both sides have presented their evidence before ruling on motions for directed verdict." *United States v. Vahlco Corp.*, 720 F.2d 885, 889 (5th Cir.1983). For the reasons set forth above, the Court will continue to reserve ruling on this particular issue

MEMORANDUM DECISION AND ORDER - 9

until the Plaintiffs have been "fully heard" on the issue of causation for the claimed damage to the Hansen 2001 and 2001 wheat crops. *See* Fed. R. Civ. P. 50(a). The court may also defer this decision until after the jury has reached a verdict on this claim, and review the issue again in the context of post-trial motions. *See* Fed. R. Civ. P. 50(b).

**3.   Was There Sufficient Evidence of Damage for the Jentzsch-Kearl 2002 Wheat, Hansen 2001 Corn and Funk 2002 Onion Crops.**

Finally, DuPont argues that the Court's exclusion of certain testimony by the Plaintiffs and their economist regarding damages resulted in no proof being put forth regarding causation or damages to three other claims: the Jentzsch-Kearl 2002 wheat, Hansen 2001 corn and Funk 2002 onion claims. DuPont asks the Court (1) to enter a directed verdict in favor of DuPont on these claims, (2) strike the testimony of Cornelius Hofman regarding damages for these claims,[2] and (3) instruct the jury that the claims have been dismissed and to disregard them.

Plaintiffs agree that the Court excluded damage evidence on these three claims and state that they have no intention of pursuing the claims. Plaintiffs

---

[2] The testimony DuPont asks the Court to strike is testimony regarding damages and regarding demonstrative exhibits that included figures for the excluded claims. The testimony cited is found at Trial Trns. pp. 3857:19 - 3860:11, 3864:12 - 3865:11 (Hansen 2001 corn); 3868:25 - 3871:6 (testimony as to Jentzsch-Kearl Exh. 35210); and, 3868:25 - 3871:6 (testimony as to Funk Exh. 35211).

MEMORANDUM DECISION AND ORDER - 10

object, however, to DuPont's requested jury instruction and also to the Court striking other evidence presented on these claims. Plaintiffs argue that the evidence of damage and injury to these crops is relevant to causation for other claims. They further argue that DuPont's requested jury instruction is prejudicial, and ask that if the jury is instructed regarding the dismissal, the Court explain that the claims were not stricken for lack of proof of causation, but rather for a failure to comply with certain pre-trial procedural rules.

The Court agrees with DuPont on the issue of Mr. Hofman's testimony. Consistent with its conditional allowance of Mr. Hofman's testimony on these issues, the Court will now grant DuPont's motion to strike Mr. Hofman's testimony regarding damages for these claims. Plaintiffs' argument that evidence of injury to these crops is related to causation for other claims is immaterial. DuPont has not requested the Court strike causation evidence - only Mr. Hofman's evidence on damages.

However, consistent with its prior decision granting DuPont's Rule 50 motion on Plaintiff's fraud claims but opting not to so instruct the jury, the Court sees no basis for advising the jury that the claims have been dismissed. This will be obvious when the Court's final instructions do not permit the jury to award damages for those claims.

# ORDER

In accordance with the Memorandum Decision set forth above,

IT IS HEREBY ORDERED that DuPont's Motion for Judgment as a Matter of Law Under Rule 50(a) For Failure To Prove Causation On Certain Claims of Negligence and Product Liability and For Failure to Elicit Proof on Specific Claims is GRANTED IN PART, RESERVED IN PART and DENIED IN PART; the motion is GRANTED with respect to Plaintiffs' claims for damages to the Hansen Farms 2001 corn crop, Jentzsch-Kearl Farms 2002 wheat crop and Lance Funk's 2002 onion crop; RESERVED with respect to Plaintiffs' claims for damages to the Hansen Farms 2001 and 2002 wheat crops; and DENIED in all other respects.

IT IS FURTHER ORDERED that Plaintiffs' claims for damages to the Hansen Farms 2001 corn crop, Jentzsch-Kearl Farms 2002 wheat crop and Lance Funk's 2002 onion crop shall be DISMISSED.

IT IS FURTHER ORDERED that the following testimony by Cornelius Hofman found at Trial Trns. pp. 3857:19 - 3860:11, 3864:12 - 3865:11 (Hansen 2001 corn); 3868:25 - 3871:6 (testimony as to Jentzsch-Kearl Exh. 35210); and, 3868:25 - 3871:6 (testimony as to Funk Exh. 35211) is hereby stricken from the trial record.

MEMORANDUM DECISION AND ORDER - 12

IT IS FURTHER ORDERED that DuPont's Notice of Request for Ruling on DuPont's Motion for Judgment as a Matter of Law (Docket No. 1342) is DENIED as moot.



DATED: **August 8, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge