IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TIMM ADAMS, et al, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Civ. No. 03-0049-E-BLW <br><br> MEMORANDUM DECISION and ORDER REGARDING MOTION TO EXCLUDE TESTIMONY OF Dr. PAOLO ZANNETTI |

## INTRODUCTION

The Court has before it the BLM's motion to exclude the rebuttal testimony of Dr. Paolo Zannetti. For the reasons expressed below, the Court will deny the motion.

## ANALYSIS

Dr. Zannetti is a leading expert on the CALPUFF model, and the BLM does not challenge his qualifications as an expert. He performed air dispersion modeling to support the opinions of Dr. Shields. Dr. Zannetti used the CALPUFF

**Memorandum Decision & Order – page 1**

model to estimate how much soil was deposited at 16 sites – many of which were on the bellwether plaintiffs' farms – during 25 different wind events. These findings were used by Dr. Shields to make final calculations on how much soil and Oust was deposited at each site.

The BLM retained its own expert, Dr. Joseph Scire, to rebut Dr. Zannetti's data. Dr. Scire criticized the inputs Dr. Zannetti used in running the CALPUFF model and suggested that different inputs would give more accurate results. Dr. Zannetti responded in his rebuttal expert report by explaining how running the CALPUFF model with Dr. Scire's inputs made no significant difference – the results were "almost identical" to his own original results.

In this motion, the BLM does not take issue with Dr. Zannetti's use of the CALPUFF model or with the results he obtained for each of the 16 sites. Instead, the BLM challenges Dr. Zannetti's rebuttal conclusion that his results were "almost identical" to those of Dr. Scire. The BLM asserts that the results Dr. Zannetti obtained using Dr. Scire's inputs actually varied quite dramatically from his original results if the results are compared on a site-by-site basis for each of the 16 sites. Dr. Zannetti covered up these differences, the BLM asserts, by adding up the results for the 16 sites under each model run, and comparing the totals, which were not far apart. This totaling ignores the large variations at each site and obscures the

spatial pattern of dust distribution, according to Dr. Scire.  *See Dr. Scire Declaration* at ¶¶s 11-12.

Rule 702 requires, among other things, that the expert apply "reliable methods" in a reliable way to the facts of the case.  The BLM challenges Dr. Zannetti's "totaling" as an unreliable method used to support an unreliable opinion.

The potential problem with Dr. Zannetti's "totaling" is easy to spot.  While the two model runs might reach identical results as to the quantity of dust deposited, they could vary widely on the distance from the source that dust was deposited.  Assume, as Dr. Scire did in his Declaration, that Dr. Zannetti's original model showed that half of the dust was deposited more than 5 miles away, while the model with Dr. Scire's inputs showed that the same amount of dust was transported but that it was all deposited about 500 feet of the source.  *See Dr. Scire Declaration* at ¶ 11d.  This hypothetical demonstrates that just because both models conclude that the same amount of dust was transported does not mean that they necessarily agree on how far it traveled.

At the same time, however, a wide variation in site results does not necessarily mean the two models are not identical.  The variations for each site could be wide but also random enough in pattern that they warrant no modification of the spatial distribution conclusions.  Dr. Scire's hypothetical discussed above

**Memorandum Decision & Order – page 3**

assumes a neat pattern of variation, but he does not discuss whether the actual results were so conveniently arrayed.  Because the BLM's briefing does not address the actual pattern of the variations (other than to point out that it varied site-to-site), the Court cannot determine as a matter of law that Dr. Zannetti is being misleading.

But even if the actual results are as stark as Dr. Scire's hypothetical, the Court is left with two leading experts reaching different conclusions.  The issue is simple enough that it can easily be covered on cross examination, and it is unlikely that the jury will be misled.  Of course, the BLM retains the right to object as the evidence comes in, and the testimony might change the Court's evaluation.  But at this point, the Court cannot find the testimony excludable under Rule 702.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion (docket no. 774) is DENIED.

DATED:  **August 8, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision & Order – page 4**