IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TIMM ADAMS, et al, | Civ. No. 03-0049-E-BLW |
| Plaintiffs, | MEMORANDUM DECISION AND ORDER REGARDING BLM'S MOTION UNDER RULE 52(C) REGARDING LIABILITY |
| v. | |
| UNITED STATES OF AMERICA, et al, | |
| Defendants. | |

## INTRODUCTION

The Court has before it the BLM's motion for judgment on the issue of liability. For the reasons expressed below, the Court will deny the motion.

## STANDARD OF REVIEW

The BLM moves for judgment under Rule 52(c) based on plaintiffs' failure to prove liability. This Rule allows the Court, in its discretion, to enter partial findings against a party on an issue at the close of that parties' evidence, or reserve the ruling until the close of all of the evidence on the issue. Accordingly, a court has three options in considering a Rule 52(c) motion; it may reserve ruling until the close of all of the evidence, grant the motion and enter findings of fact and

**Memorandum Decision & Order – page 1**

conclusions of law accordingly, or deny the motion.

The Seventh Circuit has ruled that a court's decision to deny a Rule 52(c) motion does not preclude the court from later dismissing the non-movant's case:

> A denial of defendant's motion amounts to nothing more than a refusal to enter judgment at that time. At most it constitute[s] a tentative and inconclusive ruling on the quantum of plaintiff's proof. Certainly it [does] not preclude the trial judge from later making considered findings and determinations not altogether consistent with his prior tentative ruling.

*Armour Research Foundation of Illinois Institute of Technology v. Chicago, Rock Island & Pacific Railroad Company*, 311 F.2d 493, 494 (7th Cir. 1963) (concerning former Rule 41(b), the precursor to present Rule 52(c)).

## ANALYSIS

The BLM argues that the plaintiffs have failed to submit any evidence supporting the claims that the BLM is liable for selecting and applying Oust. The Court disagrees.

The Court has held that under the FTCA, the BLM is subject to the same liability as a private person in Idaho. As previously explained, a private person has a duty to act with "ordinary care," meaning the care a reasonably careful person would use under circumstances similar to those shown by the evidence. *See Idaho Pattern Jury Instruction 2.20.*

With regard to the selection of Oust, the evidence shows that the BLM knew

**Memorandum Decision & Order – page 2**

that (1) the application sites in Southern Idaho were characterized by high winds and erodible soil, (2) this wind could transport contaminated dust off from the application sites, and (3) crop lands lay directly in the path of prevailing winds coming off the application sites. Plaintiffs' expert DiTomaso testified that the BLM, with this knowledge, "should have demanded . . . studies" from DuPont on the transport and fate characteristics of Oust in Southern Idaho soils. *Id*. at p. 2827. DiTomaso pointed out that the BLM never obtained such crucial information from DuPont. *Id.* John Sullivan from the BLM confirmed that the BLM proceeded with the Oust selection process without obtaining any information on fate and transport from DuPont. *Id*. at 1917-19. Looking at all the evidence, DiTomaso concluded that the BLM "didn't take the precautions that they needed to take when they knew they had a risk." *Id*. at p. 2820.

This evidence could allow a reasonable juror to infer that the BLM was negligent in selecting Oust because the BLM chose to apply a powerful herbicide on sites with high winds and erodible soils, located upwind of crop land, without getting crucial information from the herbicide's manufacturer about transport and fate. The standard to which the BLM is being held is the same standard that applies to any Idaho person – the standard of ordinary care.

The BLM argues that DiTomaso was holding the BLM to a duty that could

**Memorandum Decision & Order – page 3**

not possibly apply to a private person. Specifically, DiTomaso testified that stewardship required that the BLM engage in collaborative studies with DuPont. The BLM's point seems to be that no private person could ever afford to engage in the expensive collaborative studies that DiTomaso felt were necessary.[1]

But that argument reads DiTomaso's testimony too narrowly. The gist of his testimony – as against the BLM – is that the BLM took action it knew was risky without obtaining crucial information from a known source about those risks. That is evidence that supports a negligence claim. Hence the BLM's motion will be denied to the extent it seeks judgment on the claim that the BLM was negligent in selecting Oust.

With regard to application, the plaintiffs allege in their complaint that the BLM gave negligent directions to its applicators, Thomas Helicopters and DeAngelo Brothers. The BLM counters that the testimony at trial from plaintiffs' own experts was that the applicators were not negligent. *Id*. at p. 2689 (testimony of plaintiffs' expert Dennis Gardisser that the applicators "performed with . . . a

---

[1] In making this argument, the BLM ignores the obvious parallel between its position as a steward of the public lands and the position of a land owner, lessee or manager who is responsible for a large tract of land. Both are required to carry out their responsibilities in a reasonable fashion which does not subject adjoining landowners to undue risk. If the magnitude of a proposed action on the land is such that a reasonable property owner/lessee/manager would undertake an extensive (and expensive) assessment of the impact of that action on adjoining landowners, the duty would be the same whether the assessment was required of the BLM or a private person.

high standard of care").

While the BLM accurately recounts the trial testimony, there was no testimony that the BLM's duties were co-extensive with the applicators so that exoneration of the applicators absolves the BLM. Instead, the testimony at least raises a serious question whether the BLM had a higher duty than the applicators. There was testimony that the BLM decided where, when, and how each application would be made, and was required to have a monitor on-site and in contact with the applicator at all times. *Id*. at p. 2660. As discussed above, the BLM had knowledge of ground conditions that created risks for applying Oust. DiTomaso testified that before the applications began, the BLM should have done – but never did – a site-specific evaluation of risks. *Id*. at p. 2858. Moreover, there is evidence that the BLM's on-site monitor – Bart Koonce – observed the wind carrying dust from an application site.

This is evidence supporting plaintiffs' claim that the BLM gave negligent directions to its applicators, even if the applicators themselves committed no negligence. For that reason, the Court cannot adopt the BLM's argument that no such evidence exists in the record.[2]

---

[2] The BLM argues that plaintiffs' briefing relies improperly on Exhibit 21349 and Idaho Code § 22-3420. The plaintiffs' brief did inappropriately refer to a finding in the ISDA letter that was redacted by the Court. The Court presumes this was an honest mistake made by counsel

The BLM further moves for dismissal of these claims on the ground that the applicators are independent contractors. The Court declines to do so at this point given the questions raised by the BLM's control of the applications, as discussed above.

**ORDER**

In accordance with the Memorandum Decision filed above,

NOW THEREFORE IT IS HEREBY ORDERED, that the BLM's motion (docket no. 1257) is DENIED.

DATED: **August 8, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge

---

not involved in the courtroom litigation. The Court did not rely on the argument in any way. Moreover, the Court did not rely on the arguments regarding the statute.