IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| TIMM ADAMS, et al., | ) ) | Civ. No. 03-0049-E-BLW |
| Plaintiffs, | ) ) ) | MEMORANDUM DECISION AND ORDER RE: UNITED STATES |
| v. | ) ) | MOTION FOR JUDGMENT ON CAUSATION UNDER RULES |
| UNITED STATES OF AMERICA, et al., | ) ) ) | 52 AND 58 (Docket No. 1251) |
| Defendants. | ) ) |  |

## INTRODUCTION

The Court has before it the United States' Motion for Judgment That Plaintiffs Have Failed to Establish Causation Pursuant to Rules 52 and 58. (Docket No. 1251). The motion is fully briefed. For the reasons set forth in the following Memorandum Decision, the Court will deny the motion.

## STANDARD OF LAW

**Procedural Standards: Rule 52 & 58**

The BLM moves for judgment under Fed. R. Civ. P., Rule 52 and 58 based on Plaintiffs' failure to prove causation. Rule 52(c) provides:

MEMORANDUM DECISION AND ORDER - 1

> If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any such judgment until the close of all the evidence....

Fed. R. Civ. P. 52(c). The rule allows a district court, in its discretion, to enter partial findings against a party on an issue at the close of that parties' evidence, or reserve the ruling until the close of all of the evidence on the issue. *See Reigel Fiber Corp. v. Anderson Gin Company*, 512 F.2d 784, 793 n. 19 (5th Cir.1975). Accordingly, a court has three options in considering a Rule 52(c) motion; it may reserve ruling until the close of all of the evidence, grant the motion and enter findings of fact and conclusions of law accordingly, or deny the motion.

The Seventh Circuit has opined that a court's decision to deny a Rule 52(c) motion does not preclude the court from later dismissing the nonmovant's case:

> A denial of defendant's motion amounts to nothing more than a refusal to enter judgment at that time. At most it constitute[s] a tentative and inconclusive ruling on the quantum of plaintiff's proof. Certainly it [does] not preclude the trial judge from later making considered findings and determinations not altogether consistent with his prior tentative ruling.

*Armour Research Foundation of Illinois Institute of Technology v. Chicago, Rock Island & Pacific Railroad Company*, 311 F.2d 493, 494 (7th Cir.), *cert. denied*,

372 U.S. 966, 83 S.Ct. 1091, 10 L.Ed.2d 129 (1963) (concerning former Rule 41(b), the precursor to present Rule 52(c)).[1]

Rule 58 allows any party to request that a judgment be entered separately in order to provide certainty to the parties regarding the time for appeal. *Brown v. Shalala,* 859 F. Supp. 1304 (E.D. Cal. 1994) (*citing U.S. v. Indrelunas*, 411 U.S. 216, 219 - 21, 93 S.Ct. 1562, 1564 (1973)); *see also* Advisory Committee Notes on the 2002 Amendments to the Federal Rules of Civil Procedure, Fed. R. Civ. P. 58.

**Causation**

The Court has previously discussed the standard which the Plaintiffs must satisfy in order to prove causation in this case. *See, e.g.,* Docket Nos. 1047 & 1436. The Court therefore finds it unnecessary to again articulate that standard.

**DISCUSSION**

The Court previously determined that it would reserve ruling on this issue. *See* Order, June 30, 2009, (Docket No. 1270). The Court has reviewed the motion,

---

[1] In an unpublished decision, the Ninth Circuit cited *Armour Research Foundation of Illinois Institute of Technology*, *supra*, with approval and also noted that "the case law developed under Rule 41(b) between its promulgation in 1938 and the 1991 amendments to Rule 41(b) and Rule 52(c) is applicable to Rule 52(c)." *See In re Sovereign Partners,* 110 F.3d 70, 1997 WL 160279, at ** 3 - 4, & n. 4 (9th Cir. 1997) (*citing* Wright & Miller, Federal Practice and Procedure: Civil 2d § 2573.1 at 494 (1995)).

and determined that good cause exists to reconsider its order reserving ruling on the Government's motions. For the reasons set forth below, the Court will deny the Government's Motions for Judgment under Rule 52.

The United States argues that it is entitled to judgment as a matter of law because the Plaintiffs have failed to prove causation. Specifically, the United States argues that: (1) Plaintiffs failed to prove the Oust which caused damage to their crops came from the BLM lands as opposed to an alternative source; (2) Plaintiffs failed to prove through soil sampling that the Oust-laden dust that blew off of the BLM rangelands actually landed on any of the Bellwether Plaintiffs' fields; and (3) Plaintiffs failed to show specific causation as to each individual Bellwether Plaintiff beyond 2001.

The third basis for the BLM's motion is the same basis urged by DuPont in its *Motion for Judgment As A Matter of Law Under Rule 50(A) For Failure to Prove Causation On Certain Claims of Negligence and Product Liability and For Failure to Elicit Proof on Specific Claims* (Docket No. 1246), which the BLM joined, and which is addressed by *Memorandum Decision and Order,* August 8, 2009, (Docket No. 1436). The BLM raises no additional arguments. The Court denied DuPont's motion for reasons that are equally applicable to the BLM's motion.

The Court turns next to the two arguments in support of the United States' motion for judgment as a matter of law which were not previously raised by other motions or addressed by the Court's ruling.

The BLM argues that Plaintiffs did not prove that the Oust dust that injured their crops actually came from the BLM lands in quantities sufficient to injure their crops. Notably, BLM does not argue in its motion that the evidence that Plaintiffs have put forth is insufficient. BLM argues instead that Plaintiffs have put forth "no evidence" on the issue of causation. The Court agrees with the Plaintiffs that the BLM's argument misstates the Plaintiffs' burden in proving causation and rejects both arguments.[2]

The elements necessary to prove causation, again, have been discussed in detail. Plaintiffs' burden of proving the elements is one of *a preponderance of the*

---

[2]The United States asserts that Plaintiffs' do not believe they need to prove specific causation, repeatedly quoting the following statement from Plaintiffs' response brief: "[n]or is it even necessary to show that Oust actually did cause harm." Dkt. No. 1330, p. 8. A careful reading of the statement in context makes it clear that Plaintiffs were not contending they did not have to prove Oust actually caused the damage, but rather, that the evidence being discussed in that paragraph was not necessary in order for the Plaintiffs to meet their burden. The Court does not presume that the United States intentionally misrepresented the statement. On the contrary, the statement was not artfully drafted. However, the Court reminds all counsel that the integrity of their writings is crucial to timely, efficient and accurate Court rulings. Misstatements about another parties' representations, intentional or careless, do little to advance an argument and detract from real issues. The Court asks the parties to take care to avoid such tactics.

MEMORANDUM DECISION AND ORDER - 5

*evidence.* In short, they must present evidence from which a jury could find that it is more probably true than not true that Oust emanating from the BLM application sites caused the crop loss allegedly experienced by the Plaintiffs. Plaintiffs' evidence does not need to establish this fact as "clear and convincing," "beyond any reasonable doubt" nor "with 100% certainty" which is what the Government's argument regarding the source of Oust suggests.

Likewise, the jury's verdict may be based on circumstantial evidence, direct evidence or a combination of both. Plaintiffs are not required to prove causation by direct expert testimony identifying particular dust particles which originated from a particular spot on BLM land and which ended up on the Plaintiffs' claim fields.

The Court believes Plaintiffs' evidence has adequately addressed both general and specific causation. The Court has addressed the Plaintiffs' evidence of causation generally in *Memorandum Decision and Order*, Docket No. 1436. That analysis will not be repeated here. However, the Court will address the specific arguments raised by the BLM which have not already been considered.

**Did the Bellwether Plaintiffs fail to prove that the Oust that damaged their crops actually came from the BLM lands and not an alternative source?**

The BLM argues that Plaintiffs failed to put forth evidence that the Oust that damaged each particular Plaintiff was not Oust from an alternative source, *e.g.*, the Young Farm applications. The Court disagrees. The BLM cross-examined Dr.

MEMORANDUM DECISION AND ORDER - 6

Shields on this exact issue during trial. *See* Tr. Trns. 2556 - 2560. Dr. Shields acknowledged that except for in "two minor" circumstances relating to Young Farm, "a positive hit of Oust meant that the BLM Oust could reach the area where it was found." Tr. Trns., p. 2560. He testified that but for those two minor exceptions, the other applications could not explain such a wide-spread detection or crop damage. *Id*. at 2560. Thus, the Plaintiffs offered expert opinion testimony that (1) only the Oust from BLM rangelands could explain the widespread damage the Plaintiffs experienced and (2) the other applications could not have been the source of the damage.

The fact of other applications which may or may not have impacted some soil sample results does not erase Dr. Shields' expert opinion, the underlying basis for his opinion or the other transport and fate evidence that Plaintiffs' put forth as evidence that the source of the Oust was the BLM rangelands. Accordingly, the Court rejects BLM's argument that the plaintiffs' failed to put forth any evidence of causation by failing to rule out with certainty any other source of Oust contamination.

**Did Plaintiffs fail to prove through soil sampling that soil from the BLM rangelands actually landed on the Bellwether Plaintiffs' farmland in sufficient quantities to damage Plaintiffs' fields?**

The BLM also argues that Plaintiffs put forth no evidence that the Plaintiffs'

MEMORANDUM DECISION AND ORDER - 7

crops were "exposed" to the BLM Oust-laden soil. The BLM argues that no soil samples were taken from the Bellwether fields; nor were any such samples introduced into evidence. Accordingly, the BLM argues there is no evidence that the BLM Oust-laden dust landed on the Plaintiffs' farmland and Plaintiffs failed to put forth any evidence that Oust specifically caused the damage to Plaintiffs' crops.

The Court disagrees that soil samples from each Bellwether field are the only competent evidence sufficient to establish that Oust caused the alleged crop damage. Plaintiffs presented expert testimony that negative soil samples are not conclusive because of the, toxicity of Oust, limits on testing capabilities, and the "spottiness" of the dust deposition within the fields. These experts concluded that the better method of determining whether the Oust caused the damage was through bioassay analysis and comparative symptomology. The Court upheld the validity of this approach in several prior orders addressing DuPont's Motion to Exclude Plaintiffs' Crop Experts, Docket No. 783. *See Memorandum Decisions and Orders*, Docket Nos. 1212, 1199, 1121. The BLM's argument seems to be that the Court should disregard the Plaintiffs experts' approach in favor of its own experts' approach. The Court is not convinced that the former is so clearly deficient or the latter so clearly correct as to dictate the result requested by the the BLM's motion.

# ORDER

In accordance with the Memorandum Decision set forth above,

IT IS HEREBY ORDERED that the Defendant United States of America's Motion For Judgment That Plaintiffs' Have Failed to Prove Causation Under Rules 52 and 58 (Docket No. 1251) is DENIED.



DATED: **August 11, 2009**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge