IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | ) | |
|---|---|---|
| TIMM ADAMS, et al, | ) | Civ. No. 03-0049-E-BLW |
| | ) | |
| Plaintiffs, | ) | MEMORANDUM DECISION AND |
| | ) | ORDER RE: DUPONT'S MOTION |
| v. | ) | FOR ADMISSION OF |
| | ) | EPA-RELATED DOCUMENTS |
| | ) | (Docket No. 1288) |
| UNITED STATES OF AMERICA, | ) | |
| et al, | ) | |
| | ) | |
| Defendants. | ) | |
| _____) | | |

# INTRODUCTION

The Court has before it DuPont's Motion for Admission of EPA-Related Documents (Docket No. 1288).

# BACKGROUND

On July 2, 2009, DuPont offered for admission three exhibits - Trial Exhibits 41317, 41316, and 42813 - "reflecting tests completed by DuPont and submitted to EPA to assess the risk of Oust to non-target plants (including crops)." *See* Mot. for

MEMORANDUM DECISION AND ORDER - 1

Admission, p. 2 (Docket No. 1288); *see also* 7/2/09 Tr. 9048:19-22 (DuPont's counsel asking rhetorically at sidebar: "How does DuPont defend against a claim that they withheld information and they hid things if they are not able to introduce what they did provide."). As to these exhibits, and the particular reports contained therein, the Court generally permitted the admission of only the reports' initial pages to support DuPont's argument that it did, in fact, provide Oust-related information to the EPA prior to the incident giving rise to this action.[1]

Through this motion, DuPont seeks to admit various additional documents similarly related to DuPont's alleged communications with the EPA. *See* Mot. for Admission, p. 1 (Docket No. 1288). Specifically, DuPont now seeks to admit the

---

[1] *See* 7/2/09 Tr. 9053:10-15; 9054:16-18 (as to Trial Exhibit 41317, Court stated: "Well, at this point I am going to sustain the objection except as to have this witness testify that he forwarded to the EPA a study with this title. I think that is as far as I can go at this point without giving a chance of cross-examination for whatever is in the report." . . . . "[DuPont is] able to put on through this witness the fact that a study was submitted to the EPA on this subject matter."); *see also id*. Tr. 9061:17-22 (as to Trial Exhibit 41316, Court stated: "Counsel, I am going to overrule the objection and allow the first three pages to be admitted and published to the jury as showing the subject matter of a study performed by DuPont and submitted to the EPA apparently in 1995, according to the witness's testimony."). Trial Exhibit 42813's admission is less clear. When originally offered on July 2, 2009, neither Trial Exhibit 42813, nor any of its pages, were admitted. Still, DuPont's counsel appeared to suggest on July 14, 2009 that Trial Exhibit 42813's first three pages were admitted. *See* 7/14/09 Tr. 10867:18-19. Again, it was not; instead, the Court reserved its ruling on this exhibit (and others) on July 14, 2009 during Dr. Lichtner's testimony. *See id*. at 10873:9-16.

following: (1) Trial Exhibit 43076; (2) Trial Exhibit 43078; (3) Trial Exhibit 43088; (4) Trial Exhibit 45903, pages 817-835; (5) Trial Exhibit 43081; (6) Trial Exhibit 43079; (7) Trial Exhibit 45903, pages 636-637; (8) Trial Exhibit 43010; (9) Trial Exhibit 45903, pages 718-724; (10) Trial Exhibit 43011; and (11) Trial Exhibits 45892-45899. *See id*. at pp. 2-3.

DuPont attempts to apply a "one-size-fits-all" argument as to the first ten categories of exhibits (referred to as the "EPA Documents") it seeks to admit, applying the same relevance, hearsay, and authenticity arguments to each. *See id*. at pp. 3-11. DuPont offers distinct foundation, hearsay, and evidentiary arguments to the eleventh category of exhibits - the "Qualitative Assessment" volumes. *See id*. at pp. 11-12. Plaintiffs and the Government object to DuPont's efforts to admit these exhibits. *See generally* Pls.' Opp. to Mot. for Admission (Docket No. 1294); U.S. Opp. to Mot. for Admission (Docket No. 1298).

When confronted with a similar mass-offering at the close of Plaintiffs' case-in-chief, the Court previously outlined the prerequisites for admitting such exhibits, commenting:

> Thus, it is critical for the court to examine each of the 13 documents to determine (1) they are authentic under Rule 901, (2) the excerpts to be read are either non-hearsay under rule 801, or, if hearsay, that an exception applies under Rule 803, (3) that the excerpts are relevant under

> 401; (4) that the declarant has the requisite personal knowledge under Rule 602, (5) that the probative value of the document is not substantially outweighed by the danger of unfair prejudice under Rule 403, and (6) that the presentation of the exhibit without a subscribing witness will not result in some unfairness to the parties or interfere with the ascertainment of the truth under Rules 106 and 611.

*See* 6/25/09 MDO, p. 2 (Docket No. 1234). These same factors will be applied here to resolve the admissibility of each of the above-referenced exhibits.

## DISCUSSION

**A.     The EPA Documents**

*Relevance*

DuPont argues that, given the Court's ruling regarding the EPA's testing requirements (a question of fact for the jury's consideration (*see generally* Mot. for Admission, pp. 5-6 & 8 (Docket No. 1288))), each of the EPA documents "provides evidence of the process by which EPA required, DuPont submitted, and EPA evaluated this off-target plant safety data." *See id.* at p. 7. In particular, DuPont claims that its own testing of potential injury to non-target plants (ostensibly reflected in the proffered EPA documents) is directly relevant to demonstrate:

> (1) that EPA in fact required testing of effects on non-target plants, (2) that DuPont did the required testing and

MEMORANDUM DECISION AND ORDER - 4

> submitted the results to EPA as part of the risk assessment regarding off-target movement, and (3) that EPA consulted with DuPont concerning the labeling of pesticides regarding risks to non-target plants. The evidence directly addresses the jury issue the Court identified and directly counters Plaintiffs' evidence on that issue. It is therefore relevant under Rule 401.

*See id.* at p. 8.

Plaintiffs concede that DuPont is entitled to offer evidence addressing any argument that (1) the EPA does not evaluate wind erosion or property damage in the label-reviewing context, or (2) DuPont did not conduct tests on wind or soil erosion. *See* Pls.' Opp. to Mot. for Admission, p. 2 (Docket No. 1294). However, Plaintiffs argue that, while DuPont may conduct laboratory tests to determine whether Oust injures sugar beet plants, they cannot likewise operate as a finding that EPA considered wind erosion as a potential threat to off-target crops when it considered DuPont's various label revisions. *See id.* at p. 3. To this extent, Plaintiffs challenge the EPA documents' relevancy.[2]

The Government primarily argues that the EPA documents are irrelevant to the issues in this case because the EPA's knowledge cannot be imputed to the

---

[2] Plaintiffs also attack, generally, many of the offered documents on their face, arguing they either do not speak to the issues DuPont claims (e.g., DuPont's testing on wind erosion) or are irrelevant to the issues of the case (e.g, spray drift). *See* Pls.' Opp. to Mot. for Admission, pp. 3-4 (Docket No. 1294).

MEMORANDUM DECISION AND ORDER - 5

BLM and, similarly, the EPA is not a party to the action. *See* U.S. Opp. to Mot. for Admission, p. 4 (Docket No. 1298).

*Hearsay*

Responding to anticipated hearsay objections to the EPA documents, DuPont claims they are not offered to prove the underlying truth of the statements contained therein, but rather to show: (1) the EPA required the submission of testing of effects on non-target plants, (2) DuPont tested the effects of Oust on non-target plants, (3) DuPont submitted testing data to the EPA, (4) the EPA had knowledge of the risk to off-site plants when reviewing the Oust label, and (5) the EPA consulted with DuPont about labeling and off-target risks. *See* Mot. for Admission, p. 9 (Docket No. 1288).

Plaintiffs disagree, arguing that "DuPont attempts to sweep away its failure to establish any exception to the hearsay rule by a global assertion that the documents are not offered for the truth of the matter asserted, and therefore are not hearsay." *See* Pls.' Opp. to Mot. for Admission, pp. 4-5 (Docket No. 1294) ("Focusing on such minutia is an attempt to sidestep the application of the hearsay rule."). Instead, Plaintiffs argue that the documents are intended to represent what DuPont did by way of testing and, therefore, are offered for the truth of the matter asserted in them. *See id*.

MEMORANDUM DECISION AND ORDER - 6

The Government raises similar hearsay objections to those asserted by Plaintiffs. *See* U.S. Opp. to Mot. for Admission, p. 4 (Docket No. 1298) ("These propsoed documents consist of hearsay statements which are in large measure irrelevant and for which DuPont fails to identify the individual hearsay exception which would be applicable to each of the documents.").

*Authenticity*

Relying on this Court's previous rulings, DuPont claims there is no question as to the EPA documents' authenticity. *See* Mot. for Admission, p. 10-11 (Docket No. 1288) ("Here, all of the EPA memoranda in question were internal EPA communications produced by EPA in the Court of discovery in this action. Under the standard the Court has adopted, these two facts are sufficient to establish the authenticity of the documents for purposes of admissibility."). Neither Plaintiffs nor the Government appear to question the offered materials' authenticity.[3]

---

[3] The Court notes that the parties have adopted a protocol during the trial of identifying the source of a document by including in the Bates Label, a designation of origin. Thus, documents produced by DuPont contain a Bates Label designation which begins with "DuPont" and documents produced by the BLM include a designation which begins with "BLM." Where disputes have arisen concerning the accuracy of the Bates Label designation of origin, that issue has been submitted to the Court for resolution. The Court has, without objection, consistently relied upon the parties protocol in making evidentiary decisions during the trial. *See, e.g.,* 6/25/09 MDO, p. 2-3 (Docket No. 1234); and 6/28/09 MDO (Docket No. 1238). The Court will therefore rely upon that protocol in resolving the issues raised by the BLM's proffer of exhibits without a sponsoring witness, in

**1. Trial Exhibit 43076**

Trial Exhibit 43076 is a four-page, August 5, 1991 internal EPA memorandum from Karl H. Arne to Silvia Termes, dealing with "Incidents of non-Target Plant Damage Attributed to Sulfonylurea Herbicides." There is no question the document is authentic under FRE 901. However, absent a specific argument directed to Trial Exhibit 43076's content, it is difficult to determine that this particular memorandum represents "evidence of the process by which EPA required, DuPont submitted, and EPA evaluated off-target plant safety data" as DuPont argues in its motion. *See supra* at pp. 4-5.[4] Indeed, this memorandum appears to outline mere incidents of non-target plant damage – not any EPA requirements, DuPont submissions, or the EPA's evaluation of plant safety data. To the extent DuPont seeks to introduce the substance of Trial Exhibit 43076 – in essence, the truth of the statements contained within the document – it must point to an exception to the inherent hearsay such statements represent. DuPont offers no argument in this respect. Nonetheless, Trial Exhibit 43076 does indicate the

---

the same way that it applied that protocol in resolving Plaintiff's similar proffer.

[4] Beyond the general arguments offered in its motion, the Court is not obligated to comb through the hundreds of pages of the offered trial exhibits to locate the relevant portions of a particular exhibit and correspond them, if any, with DuPont's cursory arguments for admission. This is DuPont's responsibility.

EPA's general notice of potential non-target plant damage due to herbicidal drift; it is therefore admitted only for this discrete purpose.

   2. **Trial Exhibit 43078**

Trial Exhibit 43078 is a 25-page, March 2, 1992 internal EPA memorandum (with attachments) from Anne L. Barton to Jim McCormick, addressing "Ongoing EPA-Corvallis Research on Sulfonylurea Herbicides." Again, the document is authentic under FRE 901. Also, again, it is difficult to translate DuPont's generic reasons for admitting each of the EPA documents to the specific exhibits offered. With this in mind, while Trial Exhibit 43078 generally discusses the EPA's Tier I and II "testing requirements," it does not seem to reflect that DuPont conducted tests or provided such tests to EPA – the stated basis for the document. *See supra* at pp. 4-5. Still, in addition to the testing requirements, the document does indicate EPA's notice, generally, of herbicide drift and the potential for damage to non-target plants. Trial Exhibit 43078 is admitted for these very limited purposes only.

   3. **Trial Exhibit 43088**

Trial Exhibit 43088 is a six-page, September 15, 1999 EPA memorandum dealing with "ILSI Non-Target Plant Workshop: Non-Target Plant Incidents." Trial Exhibit 43088 is similar to Trial Exhibit 43076 in content and will be treated accordingly here. *See supra* at pp. 7-8. Trial Exhibit 43088 indicates the EPA's

MEMORANDUM DECISION AND ORDER - 9

general notice of potential non-target plant damage due to herbicidal drift; it is therefore admitted only for this discrete purpose.

   4.  **Trial Exhibit 45903, Pages 817-835**

Trial Exhibit 45903, pages 817-835 is a nineteen-page, June 21, 1993 EPA document summarizing "Sulfonylurea Herbicides and Allegations of Drift." Trial Exhibit 45903, pages 817-835, is comparable to Trial Exhibit 43078 and is analyzed similarly here. *See supra* at pp. 8-9. Trial Exhibit 45903, pages 817-835 is admitted only to show the EPA's testing requirements, generally, and its awareness of damage to non-target plant species via herbicide drift.[5]

   5.  **Trial Exhibit 43081**

Trial Exhibit 43081 is a 12-page, February 3, 1994 "Record of Communication" from Virginia Lathrop to Virginia G. Phillips, responding to a "[r]equest originated from EPA HQ . . . asking for the regional office to relay incidents of sulfonylurea non-target damage acquired from States in the Region." Trial Exhibit 43081 resembles Trial Exhibits 43076 and 43088 and, thus, will be resolved the same way. *See supra* at pp. 7-9. Trial Exhibit 43081 shows the EPA's notice of potential non-target plant damage due to herbicidal drift and is

---

   [5] Any herbicide drift discussion relating specifically to spray drift is irrelevant toward the claims raised in this action. *See* Pls.' Opp. to Mot. for Admission, p. 4 (Docket No. 1294).

MEMORANDUM DECISION AND ORDER - 10

therefore admitted for this discrete purpose only.

6.     **Trial Exhibit 43079**

Trial Exhibit 43079 is a 15-page, June 20, 1994 "Note" from Jean Holmes to the "Su EFED Team and others Contributing to Su Evaluation," relating to "Draft EFED Sulfonyl Urea Herbicide Assessment." Like previous trial exhibits, Trial Exhibit 43079 is authentic; it also clearly reflects the EPA's awareness of and concern about the potential for sulfonylurea herbicides to cause adverse impacts on non-target plants. Unlike other exhibits, however, Trial Exhibit 43709 also seems to represent DuPont's participation in such studies. *See* EPAOPP_00955 ("A review of the in-house Guideline studies for the SU's imidazolinones, and the newest class of ALS inhibitors the triazolopyrimidines has been conducted . . . . In their recent briefing (3/07/94), DuPont presented a much larger comparative data base for herbicides than we currently have in our files."). As a result, Trial Exhibit 43079 will be admitted only to show the EPA's notice of possible damage to non-target crops and the fact that DuPont conducted comparative studies that the EPA was made aware of.

7.  **Trial Exhibit 45903, Pages 636-637**

Trial Exhibit 45903, pages 636-637 is a two-page, May 31, 1990 EPA memorandum from Thomas Dunne to Linda Fisher, addressing "[t]he continuing

MEMORANDUM DECISION AND ORDER - 11

problem of undetectable residues of drifted herbicides causing non-target crop damage." Trial Exhibit 45903, pages 636-637 resembles Trial Exhibits 43076, 43088, and 43081 and, thus, will be resolved the same way. *See supra* at pp. 7-10. Trial Exhibit 45903, pages 636-637 shows the EPA's notice of potential non-target plant damage due to herbicidal drift and is therefore admitted for this discrete purpose only.

### 8. Trial Exhibit 43010

Trial Exhibit 43010 is a 22-page communication between Robert Taylor and Dr. Willa Garner, attaching a field monitoring study of Oust residues in soil and groundwater. Apparently the DuPont study was a condition of registration and a response to the recommendations in the Environmental Fate Branch review of 352-UNR, dated October 23, 1981. *See* EPA0050005. The document is authentic. However, the document does not appear to relate to Oust's effect on non-target plants but, instead, soil conditions and potential groundwater contamination. In fact, the EPA's recommendation following the study reads: "The condition of the conditional registration has been satisfied by this submission. The data demonstrate that groundwater contamination will no[t] result from use of Oust when used as directed in the subject product." *See* EPA00500020. This finding appears irrelevant to the issues present in this action (or, at the very least,

MEMORANDUM DECISION AND ORDER - 12

potentially confusing to the jury). Without a more detailed argument as to why Trial Exhibit 43010, specifically, should be admitted beyond the cursory arguments raised in DuPont's motion, it will not be admitted.

### 9. Trial Exhibit 45903, Pages 718-724

Trial Exhibit 45903, pages 718-724 is a seven-page, April 30, 1992 memorandum from Karl H. Arne and Thomas Pfleeger, dealing with "Concerns over Sulfonylurea Herbicides." Trial Exhibit 45903, pages 718-724, is comparable to Trial Exhibits 43078 and 45903, pages 817-835, and is analyzed similarly here. *See supra* at pp. 8-10. Trial Exhibit 45903, pages 718-724 is admitted only to show the EPA's testing requirements, generally, and its awareness of damage to non-target plant species via herbicide drift.

### 10. Trial Exhibit 43011

Trial Exhibit 43011 is a fifty-one-page communication from Silvia Termes to Linda DeLuise/Tom Myers, dealing with the "Review of [DuPont's] 90-Day Response to Phase IV Data Call-In." Apparently the Environmental Fate and Ground Water Branch of the EPA reviewed DuPont's response to (1) the Photodegradation on Soil, (2) Mobility in Soil, (3) Terrestrial Field Dissipation, and (4) Accumulation in Field Rotational Crops. *See* EPA0050026. The document is authentic. While much of Trial Exhibit 43011's content appears irrelevant to this

case (like Trial Exhibit 43010 (*see supra* at pp. 11-12)), the review at issue does speak to the EPA's requirements and recommendations for registration, as well as potential injury to non-target crops (*see* EPA0050027, EPA0050035-36). Therefore, Trial Exhibit 43011 is comparable to Trial Exhibits 43078, 45903, pages 817-835, and 45903, pages 718-724, and is analyzed similarly here. *See supra* at pp. 8-10, 12-13. Trial Exhibit 43011 is admitted only to show the EPA's testing/registration requirements, generally, and its awareness of damage to non-target plant species via herbicide drift.

B.   **Qualitative Assessment Volumes**

The remaining exhibits, Trial Exhibits 45892-45899, consist of several volumes of a "Qualitative Assessment" that DuPont submitted to the EPA, along with a cover letter. *See* Mot. for Admission, p. 11 (Docket No. 1288). Plaintiffs have already offered, and the Court has already admitted, portions of the first volume of the Qualitative Assessment. *See* 5/18/09 Tr. at 2060:8-2062:19. Through this motion, DuPont seeks to admit the remaining volumes "for completeness and context." *See* Mot. for Admission, p. 11 (Docket No. 1288).

The Court confronted a similar issue when addressing DuPont's Motion for Admission of Certain Documents Provided to ISDA and Plaintiffs Experts (Docket No. 1319). There, the Court stated:

> [I]t is unclear to what extent, if any, the jury will be capable of understanding the utility of a given exhibit's attached report, armed only with that report's title and table of contents. The information contained within such reports is undoubtedly complex; however, in such circumstances, mere titles often do little to explain anything. In other words, even under the best of circumstances, a juror (likely without any general biology, let alone agronomy, background) may realize that DuPont provided "something" to investigators – but nothing more. To help alleviate this problem, and recognizing the benefit of context (*see* FRE 102), DuPont should be permitted to show to the jury what it specifically provided to others in relation to any subsequent investigation.

*See* 7/24/09 MDO, p. 6 (Docket No. 1378). This same rationale will apply to admit the remaining volumes of the Qualitative Assessment – to provide context to DuPont's correspondence with the EPA concerning sulfonylurea herbicides.[6]

## ORDER

---

[6] As with DuPont's previous attempt to admit the entire documents provided to ISDA (Docket No. 1319), the Court again recognizes here that:

> [B]y allowing these exhibits to be submitted to the jury in their entireties, any jury confusion is not altogether obviated. It is true that adding additional, technical materials to an already voluminous record may also contribute to jury confusion. The Court's resolution in this respect reflects not only its choice between the "lesser of two evils" in the FRE 403 context, but also its confidence in the attorneys' competence to adequately and accurately account for this supplement to the record.

*See* 7/24/09 MDO, p. 6 at fn. 5 (Docket No. 1378).

MEMORANDUM DECISION AND ORDER - 15

NOW THEREFORE IT IS HEREBY ORDERED, that DuPont's Motion for Admission of EPA-Related Documents (Docket No. 1288) is GRANTED in part and DENIED in part in accordance with the Memorandum Decision above.

To the extent certain Trial Exhibits are admitted for particular purposes, the Court is in no way authorizing DuPont's unfettered use them. As DuPont has already conceded during trial (and through its briefing here), the exhibits offered are not being offered for their contents' truth. Therefore, without more, DuPont will not be permitted to argue during closing argument that anything referenced in these reports is for any purpose other than to show (1) the limited purposes permitted with respect to the EPA documents (*see supra* at pp. 7-13), and (2) how, when, and to what extent it responded to the EPA concerning sulfonylurea herbicides.

During closing argument, DuPont will not be permitted to ambush Plaintiffs, the Government, or the Court with a snap-shot of an obscure reference within these additional materials that was never discussed during the course of the trial. Substantive argument focusing on the details contained in these trial exhibits is not authorized by this Order.

The Court will orally admit these exhibits and instruct the jury as to the limited purpose for which they may be considered.



DATED: **August 18, 2009**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

MEMORANDUM DECISION AND ORDER - 17