IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TIMM ADAMS, et al, | Civ. No. 03-0049-E-BLW |
| Plaintiffs, | |
| v. | MEMORANDUM DECISION AND ORDER |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

## INTRODUCTION

The Court has before it DuPont's motion for judgment as a matter of law or for a new trial. The Court heard oral argument, and the motion is at issue. The Court will grant the motion to the extent it seeks (1) a dismissal of the assumed duty claim, and (2) a new trial on damages as to DuPont. The motion is denied in all other respects.

## STANDARD OF REVIEW

**Motion for Judgment as a Matter of Law – Rule 50(b)**

In resolving DuPont's Rule 50(b) motion, the Court may not make

**Memorandum Decision & Order – page 1**

credibility determinations or weigh the evidence. *EEOC v. Go Daddy Software, Inc.,* 581 F.3d 951 (9th Cir. 2009). Rather, the court must view the evidence in the light most favorable to plaintiffs and draw all reasonable inferences in their favor. *Id.* "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Id.*

**Motion for New Trial – Rule 59(a)**

Rule 59(a) states: "A new trial may be granted . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Historically recognized grounds include, but are not limited to, claims that the verdict is against the weight of the evidence, that the damages are excessive or inadequate, or that, for other reasons, the trial was not fair to the party moving. *Molski v. M.J. Cable, Inc.,* 481 F.3d 724 (9th Cir. 2007); 11 Wright, Miller and Kane*, Federal Practice & Procedure* § 2807 at p. 78 (1995).

The Court has the "duty to weigh the evidence as the court saw it," and to grant a new trial and set aside the verdict of the jury, "even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Molski,* 481 F.3d at 729.

## ANALYSIS

**Memorandum Decision & Order – page 2**

The Court has filed, contemporaneously with this decision, its Findings of Fact and Conclusions of Law with regard to the Plaintiff's claims against the BLM. A detailed explanation of the litigation background is contained in those Findings and Conclusions will therefore not be repeated here. In addition, many of the legal issues raised by DuPont in its Rule 50 Motion were also raised by the BLM in its post-trial motions and have been addressed in detail in the Court's Findings and Conclusions, which are incorporated by reference into this decision.

**Product Defect & Superseding Cause**

DuPont argues that plaintiffs must point to a specific, identifiable defect in Oust and failed to do so. The Court disagrees. A design defect may be proved by direct or circumstantial evidence of a malfunction of the product, the absence of evidence of abnormal use, and the absence of evidence of reasonable secondary causes which would eliminate liability of the defendant. *Mortensen v. Chevron Chemical Co.,* 693 P.2d 1038 (Id.Sup.Ct. 1984). Plaintiffs satisfied this burden. As set forth in more detail in the Findings of Fact, the plaintiffs showed that (1) Oust was toxic in minute quantities to crops, (2) DuPont knew of the dry and windy conditions at the application sites, (3) Oust was erodible by the wind and susceptible to being carried long distances, (4) Oust did so erode, and persisted for several growing seasons in the growers' fields, damaging crops (5) DuPont

**Memorandum Decision & Order – page 3**

recommended Oust's use yet did not test the product for use in southern Idaho soils, and (6) reasonably likely alternative causes were ruled out.

DuPont argues, however, that the BLM's conduct was a superseding cause constituting an abnormal use. However, under the Idaho Product Liability Reform Act, product misuse is merely a defense that results in apportionment under comparative fault principles. *See* I.C. § 6-1405(3). DuPont argued that the BLM was responsible, and the jury allocated 40% of the fault to the BLM. The BLM's choice and application of Oust cannot be deemed a superseding cause, vitiating DuPont's fault, when DuPont actively promoted the use of Oust to the BLM. *See Findings of Fact.*

**Failure to Warn**

DuPont argues that the jury verdict on the failure to warn claims must be set aside. The Court disagrees. The testimony of Drs. Benbrook and Gardisser established that Oust was mislabeled and supports the jury verdict on these claims.

**Various Jury Instructions**

During the trial, the Court resolved all issues concerning jury instructions. Nothing in the briefing or argument warrants revisiting these issues.

**Damages for 2000, 2002-2004, and Hansen Wheat Crop**

The Court can find no reason to change its prior ruling on the plaintiffs'

damages for 2000 and 2002 to 2004, and so will reaffirm that decision. *See Memorandum Decision (docket no. 1436).* That same decision discussed the Hansen wheat crop damages. The Court finds that those damages were properly awarded.

**Debt-Based Costs**

In the Court's Findings of Fact and Conclusions of Law, the Court sets forth in detail its ruling that plaintiffs properly proved their claim to debt-based costs. DuPont's challenge to this shall therefore be denied.

**Economic Loss**

DuPont argues that Idaho's economic loss rule bars all damages in this case. DuPont has, however, waived this argument by waiting until after the trial was completed to raise this argument. *EEOC v. Go Daddy Software, Inc.,* 581 F.3d 951 (9th Cir. 2009).

Nevertheless, both plaintiffs and DuPont urge the Court to decide the issue to give guidance for the upcoming damages trial. The Court will do so.

Idaho originally adopted the economic loss rule to bar the purchaser of a defective product who has only suffered economic loss from recovering those losses in a negligence action against the manufacturer. *Clark v. International Harvester Co.*, 99 Idaho 326, 581 P.2d 784 (1978). The Idaho Supreme Court has

held that the recovery of economic losses in negligence actions is limited "to those situations involving personal injury or property damage." *Just's Inc. v. Arrington Const. Co.,* 583 P.2d 997 (Id.Sup.Ct. 1978).

Economic loss is defined as including "costs of repair and replacement of defective property which is the subject of the transaction, as well as commercial loss for inadequate value and consequent loss of profits or use." *Id*. at 1200. Property loss, which is recoverable, is defined as "damage to property other than that which is the subject of the transaction." *Id*.

The crops grown on plaintiffs' farms are the property of those growers. Damage to those crops is property damage. Hence, the economic loss rule does not apply.

Yet DuPont argues that the loss of these crops does not constitute a property loss, and they cite *Duffin v. Idaho Crop Imp. Ass'n.,* 895 P.2d 1195 (Id.Sup.Ct. 1995). There, the court applied the economic loss rule to bar a purchaser of defective potato seed from recovering lost revenues resulting from lost crop yields.

In *Duffin*, the plaintiff had purchased the seeds from the defendant and hence had a contractual relationship with the defendant. Economic loss cannot be recovered in that instance because the relationship is governed by the Uniform Commercial Code and "the economic expectations of parties have traditionally not

**Memorandum Decision & Order – page 6**

been protected by tort law." *Id*. at 1200.  A product seller "cannot be held liable for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands." *Clark,* 581 P.2d at 792 (quoting *Seely v. White Motor Co.*, 403 P.2d 145 (1965)).  While the law of negligence would impose on the seed seller a duty to avoid harm to person or property, it does not impose a duty to produce seed that allows the purchaser to make a profit.  *Id.* at 794.  A contrary rule "would subject the defendant to claims based upon remote or speculative injuries which he could not foresee in any practical sense of the term." *Just's*, 583 P.2d at 1005.

In contrast, the plaintiffs here are innocent victims of DuPont's negligence.  They purchased nothing.  They had no opportunity to bargain in the market over matters of price and risk.  Thus, plaintiffs are not seeking to realize their economic expectations from a commercial transaction as was the case in *Duffin*.  Because it was foreseeable that downwind crops could be damaged by an application of Oust in dry and windy conditions, DuPont is not being subjected to remote and speculative damages as was the case in *Just's.*

As stated by each of the Idaho cases cited above, the law of negligence imposes a duty to use ordinary care to avoid damage to the person or property of another.  DuPont's negligence damaged the growers' crops, their property.  Hence,

**Memorandum Decision & Order – page 7**

the economic loss rule does not apply.

**<u>Assumed Duty Claim</u>**

The assumed duty claim rests on a simple principle: "If one voluntarily undertakes to perform an act, having no prior duty to do so, the duty arises to perform the act in a non-negligent manner." *Bowling v. Jack B. Parson Cos.,* 793 P.2d 703, 705 (Id.Sup.Ct. 1990). To prove the elements of this claim, plaintiffs must show that (1) DuPont owed a "duty recognized by law" with regard to stewardship, (2) DuPont breached that duty, (3) a "causal connection" existed between DuPont's conduct and the resulting injury ; and (4) there was "actual loss or damage." *Brizendine v. Nampa Meridian Irrigation Dist.*, 548 P.2d 80, 83 (Idaho 1976). No special relationship is necessary between plaintiffs and DuPont. *See Memorandum Decisions (docket nos. 825 & 1393).*

There is evidence from which a reasonable juror could find that DuPont assumed a duty to the growers generally and breached that duty. Rik Miller, DuPont's Vice-President of Global Marketing, testified that (1) DuPont owes a "stewardship duty" to the growers, *see Transcript* at p. 976; (2) the duty extends even after application of the product to the "performance" of the product, *id.* at p. 975, including the "environmental fate" of the product, *id.* at pp. 982-83; (3) the stewardship duty would include gathering "as much information as possible" and

**Memorandum Decision & Order – page 8**

"provid[ing] information to help independent agencies . . . help in their . . . investigation," when faced with growers' allegations of off-target movement of Oust that harmed crops, *id.* at p. 986-87; (4) the stewardship duty would include the taking and analysis of soil samples after being notified of off-target movement, *id.* at pp. 1053-54; and (5) as part of the stewardship commitment, DuPont "make[s] every attempt available to open our books up on information that's available on how our products act in the environment . . . ." *Id*. at p. 992.

This stewardship duty thus consists of an obligation to gather and share information that would assist the growers in determining what was killing their crops. DuPont, having undertaken to perform this duty, must perform it in a non-negligent manner. *Brizendine,* 548 P.2d at 83. DuPont breached that duty by not providing information or aid to the growers, and by telling the growers to "plant as normal," when DuPont knew that it had no basis for such advice. *See Transcript* at pp. 7517-22 (testimony of Dr. Miller).

DuPont argues that a corporate practice or policy "is legally insufficient to create an assumed duty under Idaho law." *See DuPont Opening Brief (docket no. 1644)* at p. 26. In support, DuPont cites *Udy v Custer County*, 34 P.3d 1069 (Id.Sup.Ct. 2001). But *Udy* simply stated that "past voluntary acts do not entitle the benefitted party to expect assistance on future occasions, at least in the absence

**Memorandum Decision & Order – page 9**

of an express promise that future assistance will be forthcoming." *Id*. at p. 1073. Plaintiffs' assumed duty claim does not seek to set up a duty based on DuPont's conduct in other Oust incidents; rather, it claims DuPont assumed a duty when it affirmatively undertook to provide assistance and advice to the growers in this incident.

However, *Udy* is relevant for another reason. It held that "nonfeasance which results in failure to eliminate a preexisting risk is not equivalent to nonfeasance which increases a risk of harm." *Id*. (quoting *City of Santee v. County of San Diego*, 259 Cal.Rptr. 757, 762 (1989)). This statement in *Udy* reveals the true weakness in plaintiffs' assumed duty claim.

That weakness lies in the third element of the claim: Plaintiffs must show a "causal connection" between DuPont's conduct and the resulting damage to plaintiffs' crops. *Brizendine,* 548 P.2d at 83. Theoretically, the causal connection could be shown if the plaintiffs relied on DuPont's promises of assistance and advice to plant as normal, and that crop damage resulted. Yet, as the Court has previously held in connection with the fraud claim, none of the bellwether plaintiffs relied on DuPont's advice. *See Memorandum Decision (docket*

*no.1336).*[1]

Plaintiffs argue that they are not required to show reliance. They are correct. Idaho has adopted § 323 of the Restatement (Second) of Torts that offers an alternative if reliance is missing:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

*See Fagundes v. State*, 774 P.2d 343, 346 (Id.App.Ct. 1989) (citing § 323 with approval). Thus, even without reliance, plaintiffs could prevail on their assumed duty claim if they can show that DuPont's failure to follow through on its offers of assistance created an increased risk of harm. The Restatement explains plaintiffs' burden of proof as follows:

> Where, however, the actor's assistance has put the other in a worse position than he was in before, either because the actual danger of harm to the other has been increased by the partial performance, or because the other, in reliance upon the undertaking, has been induced to forego other opportunities of obtaining assistance, the actor is not free to discontinue his services where a reasonable man would not do so. He will then be required to exercise reasonable care to terminate his services in such a

---

[1] Although that decision examined reliance in the context of a fraud claim that had to be proved by clear and convincing evidence, the evidence of reliance is equally absent for this claim that need only be proved by a preponderance.

**Memorandum Decision & Order – page 11**

>manner that there is no unreasonable risk of harm to the other, or to continue them until they can be so terminated.

*See Comment c.*

The plaintiffs have not shown how DuPont's offers of assistance put them "in a worse position than [they were] in before." *Id*. Plaintiffs concede that "[n]o damage flowed solely from post-2001 stewardship failures," but argue that "it was the combination of the pre- and post-application conduct that combined to cause Oust damage in the 2002-2004 crop years." *See Plaintiffs' Brief (docket no. 1658)* at p. 33.

This argument, however, begs the question: How did DuPont's post-application offers of assistance combine with pre-application conduct to cause damage? The record provides no answer. Rather, it reveals that 100% of the damage testified to by Hofman was caused by DuPont's pre-application conduct.

The analysis, at this point, circles back to *Udy*. Because DuPont's pre-application conduct was responsible for 100% of plaintiffs' damage, DuPont's failure to follow through on post-application offers of assistance is, at most, "nonfeasance which results in failure to eliminate a preexisting risk." *Udy*, 34 P.3d at 1073. Under *Udy*, such nonfeasance cannot support an assumed duty claim. Consequently, the Court will grant DuPont's Rule 50(b) motion as to the assumed duty claim.

**Memorandum Decision & Order – page 12**

**Damages for Assumed Duty**

The Court's Special Verdict Form instructed the jury that if they awarded damages on the assumed duty claim for DuPont's post-application conduct, they were to award those damages separately from the damages awarded on the claims for DuPont's pre-application conduct. The jury calculated the total damages and then allocated them 75% to the pre-application claims and 25% to the post-application claim for breach of an assumed duty.

Because the Court has dismissed the assumed duty claim, the damages awarded on that claim must be dismissed as well. This leaves plaintiffs with an award of 75% of their total damages on the pre-application claims.

There is no evidence whatsoever for awarding plaintiffs only 75% of their damages on the pre-application claims for relief against DuPont. The Court describes in detail the damages suffered by plaintiffs in the Findings of Fact and Conclusions of Law filed with this decision. There is no support in this record for taking that total damage figure as against DuPont and reducing it by 25%.

The Court's instructions were responsible for this error. As there was no evidence supporting a separate allocation of damages to the assumed duty claim, the Court should not have left open to the jury the option to make that allocation.

This analysis leads to an anomalous result. On the one hand, the Court's

dismissal of the assumed duty claim requires it to strike the 25% of damages the jury assigned to that claim.  On the other hand, the Court is powerless to increase the allocation of damages to the pre-application claims from 75% to 100%, as that would constitute an impermissible additur.  *See U.S. v. 4.0 Acres of Land*, 175 F.3d 1133 (9th Cir. 1999).

The Court does, however, have the authority to grant a new trial as to damages if the verdict is inadequate as a matter of law.  *See 11 Wright, Miller and Kane, Federal Practice & Procedure § 2807* at p. 78 (1995).  Moreover, erroneous jury instructions, as well as the failure to give adequate instructions, are also grounds for a new trial.  *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990).  Here, both justifications exist for granting a new trial:  The damages for DuPont's pre-application conduct are inadequate as discussed above due to the Court's erroneous instructions.  For that reason, the Court will grant a new trial as to DuPont only on the issue of damages.

While plaintiffs have not filed a motion for new trial, the Court may grant a new trial on its own initiative "[n]o later than 10 days after entry of judgment . . . for any reason that would justify granting one on a party's motion." *See Fed.R.Civ.P. 59(e)*.  No judgment has yet been entered and so the 10-day deadline has not yet passed.  Had plaintiffs' moved for a new trial, the Court would have the

**Memorandum Decision & Order – page 14**

authority, as discussed above, to order a new trial due to inadequate damages. Thus, the Court has the authority to grant a new trial on a ground not raised by the parties.

The Court considered giving DuPont the option of agreeing to an additur as an alternative to a new trial. However, the Court's research indicates that the Court has no authority to condition the grant of a new trial in that manner. *See 11 Wright, Miller and Kane, <u>Federal Practice & Procedure</u> supra § 2807* at p. 86.

The new trial will be limited to issues of damages as all liability issues have been settled and will not be retried. *See Larez v. Holcomb,* 16 F.3d 1513 (9th Cir. 1994) (granting new trial as to damages only). The Court has the authority to grant such a partial new trial when "the issues of damages and liability are not so interwoven as to require a new trial on both." *See Lies v. Farrell Lines, Inc.,* 641 F.2d 765 (9th Cir. 1981). Here, the issues of damages and liability are not interwoven and so a new trial on all issues is not required.

Of course, certain damage claims which were foreclosed by the Court's pre-trial and trial rulings may be re-opened and subject to reconsideration. The Court would envision the new trial on damages as to DuPont on the bellwethers to be folded into the upcoming trial on damages with the BLM. One notable difference between the re-trial of the bellwether's damage claims and the trial of the non-

**Memorandum Decision & Order – page 15**

bellwethers' claims is that the former will involve damages only while the latter will be a trial of specific causation and damages. *See In Re Hanford Nuclear Reservation Lit.*, 292 F.3d 1124, 1133 (9th Cir. 2002).

While the jury's allocation of damages is flawed, their allocation of fault is fully supported by the record. The jury allocated fault 60% to DuPont and 40% to the BLM. The Court sustains that finding and it will not be retried.

## ORDER

In accordance with the Memorandum Decision above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for judgment as a matter of law or for new trial (docket no. 1644) is GRANTED IN PART AND DENIED IN PART. It is granted to the extent it seeks a (1) dismissal of the assumed duty claim and (2) a new trial on the issue of damages only as to DuPont. The motion is denied in all other respects.



DATED: **March 24, 2010**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge