IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TIMM ADAMS, et al., | Case No. CV 03-49-E-BLW |
| Plaintiffs, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

## INTRODUCTION

The Court has before it Dupont's motion to establish the preclusive effect of the bellwether trial, the BLM's partial joinder in that motion, and the plaintiffs' motion for attorney fees and costs. The Court held oral argument on the motions, and took them under advisement. For the reasons expressed below, the Court will give preclusive effect to certain issues described below, and will reserve ruling on the merits of plaintiffs' request for fees and costs until the final trial is concluded.

## ANALYSIS

### Legal Standard for Preclusion

Issue preclusion prevents a party from re-litigating an issue decided in a previous action if four requirements are met: (1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action. *Kendall v. Visa U.S.A. Inc.,* 518 F.3d 1042, 1050 (9th Cir. 2008). The burden to prove each of these elements is on the party seeking to rely upon issue preclusion. *Id.* at 1050-51.

### Prior Decisions on Preclusion

Prior to trial in this case, the Court issued two decisions on preclusion. *See Memorandum Decisions Dkts. 272 & 1047.* In each, the Court noted that a final decision on preclusion must await the trial, but the Court did offer guidance to counsel to assist them in their trial presentation. It is important to review this history because it shows the notice all parties had going into the bellwether trial as to what issues might be accorded preclusive effect.

In the first decision, filed August 1, 2007, the Court held that this case would

proceed to a "bellwether trial with preclusive effect."  The Court reasoned that the large number of plaintiffs made unworkable a single trial on all issues.  Instead, the Court decided to select a small representative sample – the bellwether plaintiffs – and proceed to trial on their claims.  To avoid wasteful repetition, the Court held that common issues resolved in the first trial would be given preclusive effect in subsequent trials.

As examples, the Court listed issues involving both causation and liability. The Court stated that "[l]ikely candidates" for preclusion could include answers to the following questions: (1) Was DuPont negligent in its design, manufacture, testing, labeling, and marketing of Oust?; (2) Was the BLM negligent in selecting Oust for this project?; (3) Is Oust capable of causing crop damage and, if so, under what conditions; and (4) What was defendants' awareness of these conditions?

The Court broke down further the causation issues that appeared amenable to preclusive treatment.  They included, (1) the amount of Oust necessary to damage crops; (2) the length of time that Oust remains viable in the soil; (3) how Oust works on plants to cause damage; (4) the winds necessary to transport Oust; (5) the sensitivity of various crops to Oust; and (6) the symptoms of Oust damage. Finally, the Court noted that "resolution of these issues does not relieve plaintiffs of the requirement to prove that Oust caused the damage alleged by each and every

**Memorandum Decision & Order - 3**

plaintiff."

In a second decision filed about two years later on May 4, 2009, the Court refined its earlier analysis. The Court observed that liability issues were candidates for preclusion with two exceptions: (1) the fraud claim in Count 15 that requires individual proof on whether a particular plaintiff heard and relied upon the alleged misrepresentation, and (2) the trespass claim that appears to require individual proof of trespass onto the farms of each plaintiff. The Court noted that "[t]he liability findings on the other 13 claims in the case – whether based on negligence, negligence *per se,* strict liability, or misbranding – will almost certainly be given preclusive effect." *See Memorandum Decision Dkt. 1047* at p. 4.

With regard to causation issues, the Court held that there was a distinction between general causation issues, that apply to all plaintiffs, and specific causation issues, that must be proved by each plaintiff. The Court observed that in analogous cases involving toxic torts, causation "is typically discussed in terms of generic and specific causation." *See In Re Hanford Nuclear Reservation Lit.*, 292 F.3d 1124, 1133 (9th Cir.2002). General or generic causation means "whether the substance at issue had the capacity to cause the harm alleged." *Id.* In *Hanford*, for example, the Ninth Circuit explained that the general causation inquiry was "whether exposure to a substance for which a defendant is responsible, such as radiation at

**Memorandum Decision & Order - 4**

the level of exposure alleged by plaintiffs, is capable of causing a particular injury or condition in the general population." *Id.*

To ultimately prevail in such a lawsuit, however, a plaintiff must show both general and "individual" or "specific" causation. *Id.* Specific causation refers to whether a particular individual suffers from a particular ailment as a result of exposure to a substance. *Id.* "Although many common issues of fact and law will be capable of resolution on a group basis, individual particularized damages still must be proved on an individual basis." *Id.* at 1135 (quoting *Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188, 1200 (6th Cir.1988)).

In this case, the Court noted, general causation issues would include (1) the amount of Oust necessary to damage crops; (2) the length of time that Oust remains viable in the soil; (3) how Oust works on plants to cause damage; (4) the winds necessary to transport Oust; (5) the sensitivity of various crops to Oust; and (6) symptoms of Oust damage. The Court found it likely that "the resolution of these issues will apply to all plaintiffs and will not be subject to change due to variation in individual circumstances." *Id.* at p.7.

Going further, the Court stated that it "envisions that the first jury will be asked to find whether Oust was or was not transported by wind-blown dust to areas outside of the application area and whether such wind-blown dust is capable of

damaging crops in down-wind locations." *Id*. at p. 7.  The Court signaled its intent that if those questions were answered in the affirmative – as they eventually would be by the jury – the answers would "have preclusive effect on the defendants and will be an established fact for all future trials." *Id.*  The Court explained that "[t]he only causation question remaining for subsequent juries is whether the Oust-contaminated dust settled on the non-bellwether plaintiffs' fields and whether it damaged their crops." *Id.*

The Court refused "to go further and establish in this bellwether trial a 'zone of contamination' that would extend beyond the location of any specific crops that this jury finds were damaged by Oust." *Id*. at pp. 7-8.  The Court explained its refusal as follows:

> To establish such a zone would extend this trial immensely.  The evidence would have to establish with precision boundaries of the "zone" and, within it, the toxicity of Oust border-to-border.  The "zone" would include areas and crops that are not even at issue in this bellwether trial.  And how many years will such a "zone" last?  By the second or third year after application – years for which plaintiffs claim damages – different sections of land within any "zone" may have been treated, tilled, and worked much differently than other sections of land within the "zone."  In other words, individual variations matter – establishing a "zone" under those circumstances would deprive defendants of their right to require plaintiffs to prove specific causation.

*Id*. at p. 8.

**Bellwether Trial**

**Memorandum Decision & Order - 6**

At the conclusion of the bellwether trial, the jury completed a 21-page Special Verdict Form, answering 47 questions. *See Special Verdict Form (docket no. 1446).* The jury found against DuPont on both liability and causation questions. The Court issued Findings of Fact and Conclusions of Law, containing a mixed bag of rulings both for and against the BLM. *See Findings and Conclusions (docket no. 1681).* The jury allocated fault 60% to DuPont and 40% to the BLM, and the Court made the same finding as against the BLM.

**Liability Preclusion and the BLM**

The plaintiffs and the BLM agree that certain liability findings must be given preclusive effect. With regard to liability findings in favor of plaintiffs, the parties agree to give preclusive effect to findings that the BLM was negligent in its selection of Oust and the application sites. With regard to liability findings in favor of the BLM, the parties agree to give preclusive effect to findings that (1) the BLM did not violate the IPCA; (2) the BLM did not violate FIFRA; (3) the BLM did not negligently fail to follow the Oust label; and (4) the BLM did not negligently supervise the applicators. Pursuant to these agreements, the Court will give preclusive effect to these findings.

The BLM agrees with plaintiffs that the allocation finding – allocating 60% of the fault to DuPont and 40% to the BLM – should be given preclusive effect.

**Memorandum Decision & Order - 7**

DuPont disagrees, and the Court will resolve this issue below in the section dealing with DuPont. The Court will also discuss later in this opinion the concerted action claim, in which plaintiffs claim that the BLM and DuPont are jointly and severally liable.

The parties disagree over the preclusive effect to be given the findings that (1) the BLM violated the Idaho nuisance statute, and (2) that the BLM committed a trespass on the growers. The BLM argues that these findings have no preclusive effect, while plaintiffs respond that they are entitled to a partial preclusive effect.

## BLM – Nuisance

Idaho Code § 52-101 states in relevant part: "Anything which is injurious or any obstruction to the free use of property, so as to interfere with the comfortable enjoyment of . . . property . . . is a nuisance." The Court's Findings and Conclusions held that (1) a nuisance claim can give rise to FTCA liability; (2) BLM's application of Oust was injurious or obstructed the bellwether plaintiffs' free use of property so as to interfere with the comfortable enjoyment of property; (3) the BLM's interference with the bellwether's property was substantial; (4) the BLM's conduct was intentional; (5) the BLM's conduct was negligent or wrongful under all of the circumstances; and (6) the BLM engaged in a course of conduct that unreasonably interfered with the growers'

enjoyment of their property.

The findings entitled to preclusive effect are (1), (4), and (5). Those findings do not depend on the individual circumstances of particular plaintiffs. However, the other findings – (2), (3), and (6) – were unique to the four bellwether plaintiffs and thus cannot be accorded preclusive effect.

## BLM – Trespass

A "trespass" involves the "wrongful interference with the right of exclusive possession of real property." *Mock v. Potlatch Corp.*, 786 F.Supp 1545, 1548 (D. Idaho 1992); *Moon v. North Idaho Farmers Ass'n*, 96 P.3d 637, 642 (Id.Sup.Ct. 2004). Trespass can give rise to FTCA liability. *Hatahley v. U.S.*, 351 U.S. 173, 181 (1956).

The Court's Findings and Conclusions held the following with regard to the trespass claims: (1) The BLM intentionally applied Oust to thousands of acres of burnt rangeland; (2) The term "intentional" means the intent to perform an actual, physical act, not the intent to accomplish a particular result or consequence of that act; (3) The BLM's actions were negligent and wrongful; (4) the BLM caused an invasion of the bellwether plaintiffs' interest in the exclusive possession of their property, and (5) The bellwether plaintiffs suffered substantial damage to their crops as a result of such conduct.

**Memorandum Decision & Order - 9**

The findings entitled to preclusive effect are (1), (2), and (3), listed above. These findings do not depend on the individual circumstances of particular plaintiffs. However, findings (4) and (5) do depend on individual circumstances and hence are not entitled to preclusive effect.

## DuPont – Allocation of Fault

The Court will now turn to preclusion issues raised by DuPont. DuPont argues first that the apportionment of fault by the jury is not entitled to preclusive effect. The BLM does not join DuPont in that argument and aligns instead with plaintiffs, arguing that the allocation is entitled to preclusive effect.

As discussed above, the jury allocated fault 60% to DuPont and 40% to the BLM in answer to this question: "Taking all of the fault that caused Oust to move off the BLM application sites and damage the Growers' crops as 100%, what percentage of fault do you attribute to [DuPont, BLM, and/or Applicators]."

DuPont argues that because some claims – like portions of the trespass and nuisance claims discussed above – are not entitled to preclusive effect, "all of the fault" has not yet been determined as to the non-bellwether plaintiffs. Because of that, DuPont argues, the second trial will "clearly not" address "the exact same conduct as the first trial," and so the allocation of fault cannot be blindly applied in the second trial. *See Def's Reply* at 17 Dkt. 1738.

**Memorandum Decision & Order - 10**

However, the allocation is based on conduct of DuPont and the BLM that is not tied to any particular plaintiff. Apportionment is a question of liability, and depends on the BLM's conduct in deciding to use Oust and selecting the sites, and on DuPont's conduct in manufacturing and marketing Oust. That conduct does not change from trial to trial, or from farmer to farmer.

DuPont argues that "it would be manifestly unfair to use the bellwether jury's allocation of fault in the second trial despite the Court's post-trial dismissal of the assumed duty of stewardship claim." *Id*. at 18. During the trial, plaintiffs pursued their assumed duty claim by arguing that after the Oust applications, and after the crop damage was evident, DuPont promised to gather and share information on the cause of the damage. By this conduct, plaintiffs alleged, DuPont assumed a duty that it would not otherwise owe to them to provide information and assistance to recover from their crop damage. Plaintiffs asserted that DuPont breached this assumed duty by not providing the information and by telling farmers to "plant as normal" when DuPont knew that it had no basis for such advice.

The jury rendered a verdict in plaintiffs' favor, but the Court later granted DuPont's Rule 50(b) motion and dismissed the claim. *See Order* Dkt. 1680. The Court held that plaintiffs had failed to show a causal connection between DuPont's

conduct in promising aid and advising to "plant as normal," and the resulting

damage to the bellwether plaintiffs' crops.  *Id.* at 8-12.  The bellwether plaintiffs

did not show that they relied on DuPont's advice or were put in a worse position

by DuPont's offers of assistance.  *Id.*

DuPont argues that the jury's allocation of fault must have been based at

least in part on this assumed duty claim.  According to DuPont, the jury must have

added some percentage points to DuPont's portion of the fault allocation, and the

Court's decision dismissing the assumed duty claim did nothing to reduce that

allocation accordingly.

The Court disagrees that the allocation took into account the assumed duty

claim.  The Special Verdict Form did not allow the jury to consider the assumed

duty claim in making its allocation of fault.  The structure of the Special Verdict

Form made the allocation of fault depend on answering affirmatively at least one

of the preceding liability questions, none of which asked about assumed duty.

Indeed, after having made their allocation, the jury had to work through another six

pages containing thirteen questions before arriving at the questions regarding

assumed duty.  To drive home the point that the assumed duty claim was separate

from the rest of the case, the Court instructed the jury that "you are only to include

in your award of damages [for assumed duty] amounts that are not already included

**Memorandum Decision & Order - 12**

in your responses to [earlier questions]." *See Special Verdict Form* at 19.

Nonetheless, DuPont argues, the plaintiffs' stewardship arguments were so pervasive throughout the trial that the jury's allocation decision could not help but be tainted by those arguments. But this argument improperly conflates stewardship, an argument not rejected by the Court, with assumed duty, a claim dismissed by the Court. The stewardship argument – that DuPont had a "cradle-to-grave" stewardship duty to its customers and the public – did not depend on the more specific post-application conduct that made up the assumed duty claim, and was not affected by the dismissal of the assumed duty claim. While the assumed duty claim focused on post-application conduct, the stewardship argument began with the very creation of Oust and was based on testimony of DuPont personnel, including Rik Miller, DuPont's Vice-President of Global Marketing. That stewardship testimony was not dependent on the identity of plaintiffs or on the order of trials.

DuPont had a full and fair opportunity to litigate apportionment of fault, and vigorously did so. All of the criteria for issue preclusion have been satisfied, and the Court will therefore accord preclusive effect to the apportionment of fault.

**DuPont – Punitive Damages**

About a month prior to the start of the bellwether trial, the Court denied

**Memorandum Decision & Order - 13**

plaintiffs' motion to amend their complaint to assert a claim for punitive damages. *See Order*, Dkt. 893. Plaintiffs argued that they should be allowed to seek punitive damages on their assumed duty, failure to warn, and misbranding claims, but the Court found an insufficient factual showing.

Later, about seven weeks into the trial, plaintiff tried again to add a punitive damage claim, and the Court again rejected the attempt. *See Order*, Dkt. 1233. The Court reasoned that the punitive damage statute contained no provision allowing for motions to be filed during trial, and that, in any event, it would be unfair to require DuPont to defend a punitive damage claim at that late date.

In summary, the Court's first decision was a ruling on the merits, actually comparing DuPont's conduct with the Idaho standard for punitives. The Court's second decision was based on a technical ground that Idaho law did not permit punitives to be added during trial.

DuPont argues that granting preclusive effect to these two decisions means that plaintiffs are precluded from filing another motion to amend to add punitive damages. The Court agrees in part and disagrees in part.

Plaintiffs are certainly precluded by the Court's second decision from waiting until the second trial begins to file another motion to add punitive damages. Plaintiffs are also precluded from filing a pre-trial motion that merely

**Memorandum Decision & Order - 14**

recites the same arguments addressed in the Court's first decision.  However, these

two preclusive findings do not mean that plaintiffs are categorically precluded,

under all circumstances, from filing another motion to amend to add punitive

damages.  It is at least theoretically possible for plaintiffs to file another motion

that raises conduct by Dupont not considered in the Court's first decision.[1]

Thus, the Court cannot categorically ban plaintiffs from filing another motion to

amend to add punitive damages.  But given the preclusive effect of the earlier

decisions, any future motion to amend must contain new evidence not previously

submitted and found insufficient.

## DuPont – Assumed Duty Claim

The Court discussed above its decision dismissing the assumed duty claim.

The legal standards set forth in that decision to prove an assumed duty claim are

preclusive on all parties.  The result, however, was unique to the bellwether

plaintiffs because those four entities could not show either reliance or an increased

risk of harm.  If the non-bellwether plaintiffs can satisfy those elements of the

cause of action, they would be entitled to pursue a jury verdict on an assumed duty

---

[1]  The Court's second decision did not address whether the conduct asserted in that
second motion satisfied the punitive damage amendment standard.  Thus, the only decision with
preclusive effect on the "merits" – that is, the only decision evaluating the submitted evidence to
determine if it met the standard set by Idaho law for amendment – is the Court's first decision.

claim..

## DuPont – Failure to Warn Claims

The bellwether jury found that Oust was defective due to a failure to warn, and also found that DuPont was negligent for failing to give adequate warnings on Oust. *See Special Verdict Form Dkt. 1516* at 7. In its briefing, DuPont argues that the Court's decision to admit the EPA's 2008 Reregistration Eligibility Determination (RED) was error and could render the failure-to-warn claims non-preclusive. Because DuPont was challenging the RED admission on appeal, it argued that "it is too soon to determine whether the jury's verdict regarding plaintiffs' failure to warn claims is or is not entitled to preclusive effect." *See Def's Reply Dkt. 1738* at 10.

However, at oral argument, DuPont's counsel stated that "for now, we have acknowledged that the failure-to-warn verdict is entitled to preclusive effect. If that changes, we will file a motion . . . ." *See Transcript Dkt. 1775* at 91. Accordingly, the Court will accord preclusive effect to the jury's failure to warn verdicts.

## DuPont – Other Liability Issues

The jury found against DuPont on six liability issues contained in Questions 12 through 17 on the Special Verdict Form. Those findings do not depend on the

**Memorandum Decision & Order - 16**

unique circumstances of each plaintiff but are instead common to all plaintiffs. Accordingly, the Court will grant preclusive effect to the jury findings contained in Questions 12 through 17 on the Special Verdict Form.

The parties agree that plaintiffs' fraud claims are individual claims that are not precluded by the Court's earlier decision dismissing the bellwether plaintiffs' fraud claims, although DuPont will be seeking to dismiss those claims prior to trial.

The plaintiffs' concerted action claim seeks to hold the BLM jointly and severally liable with DuPont for pursuing a common plan to apply Oust to burnt rangelands. In earlier decisions, the Court relegated this claim to the "bullpen" so that it would not be tried in the bellwether trial. *See Memorandum Decision and Order Dkt. 409.* The Court also held that the Seventh Amendment does not apply to the claim because a jury could not resolve the issue whether the United States should be held jointly and severally liable with a co-defendant. *See Memorandum Decision and Order Dkt. 469* at 3.

Because the concerted action issue was not tried in the bellwether trial, there is no preclusion to apply, other than the decision referenced above regarding the Seventh Amendment. Plaintiffs have since filed a separate motion for summary judgment on the concerted action claim based on evidence and findings from the bellwether trial. *See Motion Dkt. 1742.* The Court expresses no opinion on the

merits of that motion here, and will decide it separately.

**DuPont – Causation**

DuPont argues that only general causation issues are precluded, and that general causation "only encompasses whether a particular substance is *capable* of causing a particular harm and not whether a particular substance in fact caused such harm." *Def's Reply* at 3, Dkt. 1738 (emphasis in original). The Court disagrees. The preclusive effect of the bellwether trial extends beyond just the findings that Oust was *capable* of causing harm and also covers findings that Oust was blown downwind onto the bellwether plaintiffs' farms in sufficient quantities to damage crops in 2000 to 2004. Those findings were fully litigated by DuPont and the BLM, resolved against them by the Court and the jury in the bellwether trial, and are entitled to preclusive effect in the second trial.

The defendants argue, however, that in the second trial, any evidence of the Oust damage to the bellwether plaintiffs is irrelevant under Rule 401 and unduly prejudicial under Rule 403. The Court first notes that these evidentiary arguments are separate from the preclusion argument, and do not affect the Court's decision to give preclusive effect to the findings. *See Coffelt v. City of Glendale*, 2007 WL 4200510 (D. Ariz. November 26, 2007) (holding that Rule 403 "is not a limit on the doctrine of issue preclusion"). The evidentiary arguments will, however, affect

whether – and how – the Court will instruct the non-bellwether jury concerning the bellwether jury's findings.

Because these evidentiary arguments have not been fully briefed, the Court will await briefing to rule upon them. To give counsel some guidance – and provide a target for briefing – the Court will reveal its leanings on the issue with the caveat that it could be persuaded otherwise. The fact that Oust damaged crops of the bellwether plaintiffs would appear to be relevant under Rule 401 as some evidence of how far Oust traveled and how it affected crops when it landed. The evidence is certainly not determinative as to the non-bellwether farmers, and the jury would be given a limiting instruction reminding them, among other things, that each plaintiff must prove that his or her crops were damaged by Oust. In the Rule 403 balancing test, the probative value is high and the danger of unfair prejudice would be reduced by giving the jury instruction just mentioned. The Court will leave any further analysis for a future day.

## Conclusion on Preclusion

The Court will summarize its preclusion decisions in the tables below.

| BLM Liability | |
|---|---|
| **Claim** | **Decision on Preclusion** |

| BLM Liability | |
|---|---|
| BLM negligent in selection of Oust & selection of application sites | Precluded |
| BLM did not violate IPCA | Precluded |
| BLM did not violate FIFRA | Precluded |
| BLM violated Idaho nuisance law | _Precluded_:<br><br>(1) a nuisance claim can give rise to FTCA liability;<br>(2) the BLM's conduct was intentional;<br>(3) the BLM's conduct was negligent or wrongful under all of the circumstances.<br><br>_Not Precluded_:<br><br>(1) BLM's application of Oust was injurious or obstructed the bellwether plaintiffs' free use of property so as to interfere with the comfortable enjoyment of property;<br>(2) the BLM's interference with the bellwether's property was substantial; and<br>(3) the BLM engaged in a course of conduct that unreasonably interfered with the growers' enjoyment of their property. |
| BLM committed a trespass | _Precluded:_<br><br>(1) The BLM intentionally applied Oust to thousands of acres of burnt rangeland; (2) The term "intentional" |

| BLM Liability | |
|---|---|
| | means the intent to perform an actual, physical act, not the intent to accomplish a particular result or consequence of that act; (3) The BLM's actions were negligent and wrongful. _Not Precluded_ (1) the BLM caused an invasion of the bellwether plaintiffs' interest in the exclusive possession of their property; and (2) The bellwether plaintiffs suffered substantial damage to their crops as a result of such conduct. |
| BLM did not negligently supervise the applicators | Precluded |
| BLM did not negligently fail to follow the Oust label | Precluded |

| DuPont Liability | |
|---|---|
| DuPont sold Oust that was defective and unreasonably dangerous because of its design. | Precluded |
| DuPont was negligent in connection with the design of Oust. | Precluded |
| DuPont sold Oust that was defective and unreasonably dangerous because | Precluded |

| DuPont Liability | |
|---|---|
| of a failure to warn. | |
| DuPont was negligent in selling Oust that was misbranded in violation of the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA). | Precluded |
| DuPont was negligent in failing to give adequate warnings related to Oust | Precluded |
| DuPont was negligent for violating the Idaho Pesticides & Chemigation Act (IPCA) | Precluded |
| Court's Decision dismissing assumed duty claim. | *Portion Given Preclusive Effect* (1) Legal standards set forth by the Court governing an assumed duty claim. *Portion Not Given Preclusive Effect* (1) Decision dismissing assumed duty claims for failure of proof by four bellwether plaintiffs. |
| Court's Decision dismissing fraud claim. | Not precluded |
| **Concerted Action Claim** | |
| Generally | Not precluded |
| Court's Decision regarding 7th Amendment. | Precluded |
| **Applicator Liability** | |
| Applicators Thomas Helicopters and DeAngelo Brothers were not negligent in application of Oust to BLM sites | Precluded |
| **Allocation of Fault** | |

| | |
|---|---|
| BLM found 40% at fault; DuPont found 60% | Precluded |
| **Causation** | |
| General Causation | Precluded |
| Specific Causation | Depending on evidentiary findings, Court may instruct jury on the bellwether jury's findings that Oust damaged the crops of the four bellwether plaintiffs. |

| **Punitive Damages** | |
|---|---|
| Court's two decisions denying plaintiffs' motion to add punitive damages | *Portions Given Preclusive Effect* <br> (1) Plaintiffs cannot seek to add punitive damages during trial. <br> (2) Plaintiffs precluded from filing a motion reciting the same arguments on the merits already addressed by Court. |

## Attorney Fees and Costs

The Court has decided to await the resolution of the final trial before ruling on fees and costs. Accordingly, the Court will deny the plaintiffs' motion on fees and costs without prejudice to plaintiffs' right to re-file that motion at the conclusion of the final trial. This ruling has no effect on the merits of plaintiffs' motion on fees and costs, and those issues remain open for resolution when the

case is completed.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to establish preclusive effect of the bellwether trial (docket no. 1706) is GRANTED IN PART AND DENIED IN PART consistent with the Memorandum Decision above.

IT IS FURTHER ORDERED, that the motion for attorney fees and costs (docket no. 1705) is DENIED without prejudice to plaintiffs' right to re-file the motion at the conclusion of the final trial.

DATED:  **October 29, 2010**

Honorable B. Lynn Winmill
Chief U. S. District Judge