IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TIMM ADAMS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, et al., <br><br> Defendants. | Case No. 4:CV 03-49-BLW <br><br> **MEMORANDUM DECISION AND ORDER RE JOINT & SEVERAL LIABILITY** |

# INTRODUCTION

The Court has before it a cross-motions for partial summary judgment on joint and several liability. The motions are fully briefed and at issue. For the reasons explained below, the Court will grant the defendants' motions and deny the plaintiffs' motion.

# ANALYSIS

The plaintiffs seek a ruling that DuPont and the BLM are jointly and severally liable for their damages, a claim they raise in Count XVII of their complaint. DuPont and the BLM filed cross-motions seeking summary judgment that Count XVII be dismissed.

The plaintiffs' original complaint, filed in 2003, did not contain this concerted action claim; it was nearly four years later when they moved to amend their complaint to add the claim as the bellwether trial approached. The Court granted the motion to amend

**Memorandum Decision & Order - 1**

but held that it would unduly expand the upcoming bellwether trial, and therefore relegated the claim to the "bullpen" to be resolved later. *See Memorandum Decision (Dkt. 409).*

In challenging the motion to amend, the BLM argued that the amendment was futile because the governing Idaho statute required the parties acting in concert to intend to commit a tort, and there was no such evidence. The Court disagreed with that interpretation of the statute:

> The term "acting in concert" is defined to include "pursuing a common plan or design which results in the commission of an intentional or reckless tortious act." *See* Idaho Code § 6-803(5). They must pursue a common plan. The common plan must result in a tort. But there is no requirement that they pursue a common plan to commit a tort – that phrase is not in the statute, and the Court declines the invitation to insert it there. The allegations in the proposed amendment are therefore sufficient.

*Id.* at 5-6.

That decision was obviously preliminary in nature, resolving only the issue of whether the proposed amendment was futile. The issue is now before the Court with full briefing upon cross-motions for summary judgment, and arguments are made here that were not made when the motion to amend was being considered. Moreover, the legal standards governing summary judgment are starkly different from those governing a motion to amend. Finally, the Court now has the benefit of the bellwether trial to establish the facts of the parties' conduct. For all these reasons, the Court will examine the statute anew.

The statute at issue is Idaho Code §§ 6-803(3) & (5), and it reads as follows:

**Memorandum Decision & Order - 2**

> (3) The common law doctrine of joint and several liability is hereby limited to causes of action listed in subsection (5) of this section.
> . . . .
> (5) A party shall be jointly and severally liable for the fault of another person or entity or for payment of the proportionate share of another party where they were acting in concert or when a person was acting as an agent or servant of another party. As used in this section, "acting in concert" means pursuing a common plan or design which results in the commission of an intentional or reckless tortious act.

A statute is ambiguous when it is susceptible to more than one meaning. *State v. Yzaguirre*, 163 P.3d 1183, 1188 (Id.Sup.Ct. 2007). When a statute is ambiguous, the Court examines the intent of the Legislature. *State v. Yager*, 85 P.3d 656, 665 (Id.Sup.Ct. 2004). "To ascertain the intent of the Legislature, not only must the literal words of the statute be examined, but also the context of those words, the public policy behind the statute, and its legislative history." *Id.*

Section 6-803(5) is ambiguous because its language is subject to more than one meaning. One reasonable interpretation is that it requires that the tort result from the parties collaborating together and intending the tortious consequences of their collaboration. Another interpretation is that the language sweeps more broadly and encompasses working toward a common objective (without close collaboration) that results in a tort even though the parties did not intend the consequences of their actions.

To resolve this ambiguity, the Court will examine the statutory language in light of the legislative intent behind the statute. Here, the statute states that the "common law" of joint and several liability is "limited to the causes of action listed in subsection (5)." At common law, the liability of joint tortfeasors was joint and several. *See Smith v. Sharp*,

354 P.2d 172 (Id.Sup.Ct. 1960) (holding that "[w]here negligent acts of two or more persons combine to cause injury to another under circumstances such that the negligence of each becomes proximate cause of the injury, the tort-feasors may become jointly and severally liable to the injured party").

The advent of tort reform and comparative negligence led some courts and legislatures to reexamine joint and several liability. They addressed the potential for an unfair result when a tortfeasor with very little fault was left liable for the entire judgment because the other tortfeasor could not be found. The Idaho Legislature apparently found that this very result occurred in the trial that was the basis for the appeal in *Hickman v. Fraternal Order of Eagles, Boise # 115,* 758 P.2d 704 (Id.Sup.Ct. 1988). The Idaho Supreme Court noted that "after the trial in *Hickman*, the Legislature amended Idaho Code § 6-803(3) to severely restrict the operation of joint and several liability." *Idaho Dept. Of Labor v. Sunset Marts, Inc.*, 91 P.3d 1111, 1116 (Id.Sup.Ct. 2004).

Given that the statute was intended to "severely restrict" the operation of joint and several liability," the Court cannot find it applicable here. The plaintiffs would apply that liability to a commercial transaction between buyer and seller when the seller aggressively pursues the sale and the buyer uses the product to cause damage. No Idaho case so holds, and the adoption of such liability here would significantly broaden the reach of the statute in contravention of the Legislature's intent.

Indeed, the Idaho Supreme Court has not taken an expansive view of the statute. In *Horner v. Sani-Top, Inc.*, 141 P.3d 1099 (Id.Sup.Ct. 2006), a child died when hit by

**Memorandum Decision & Order - 4**

counter-tops falling off a high shelf at a Home Depot store. The child's family sued the manufacturer and packager of the counter-tops (Sani-Top) and Home Depot. The Idaho Supreme Court refused to apply joint and several liability under Idaho Code § 6-803(5), finding that "Home Depot and Sani-Top were plainly not 'acting in concert' with one another." *Id*. at 1104. But this result would have been different if the interpretation urged by plaintiffs in the present case was used by the Idaho Supreme Court. Sani-Top and Home Depot shared a common objective of selling countertops to consumers just as DuPont and the BLM shared the common goal of using Oust to control invasive weeds. Sani-Top and Home Depot both should have known about the risks of countertops falling from Home Depot's high shelves, just as DuPont and the BLM both knew that Oust had the potential to kill crops. Plaintiffs' interpretation would impose joint and several liability in *Horner,* a result at odds with both the Idaho Supreme Court's decision and the Legislature's intent.

Plaintiffs argue, however, that the present case falls neatly into the statutory language because DuPont and the BLM had a common plan to obtain an Idaho 24(c) permit to allow aerial spraying, which ultimately led to the BLM committing nuisance and trespass, two torts that require intent as an element. The Court disagrees. While DuPont and the BLM collaborated to obtain a 24(c) permit, it was their lack of collaboration that the plaintiffs emphasized at the bellwether trial. Specifically, the plaintiffs argued at length that after obtaining the permit, the BLM was negligent for failing to collaborate with DuPont over the critical characteristics of Oust such as its

**Memorandum Decision & Order - 5**

persistence, toxicity, and transport within the soil. It was the BLM's failure to collaborate that led to the nuisance and trespass verdicts on which plaintiffs rely to satisfy the intentional tort requirement of the statute. A failure to collaborate over the key issues that resulted in the very torts on which plaintiffs base their claim to joint and several liability cannot constitute "acting in concert" or "pursuing a common plan" as required by Idaho Code §§ 6-803(3) & (5).

Plaintiffs argue that both the BLM and DuPont knew that Oust was toxic to crops, had the propensity to move off-target, would be applied to highly erodible soils in windy areas, and would be applied to millions of acres. But common knowledge is not concerted action, as discussed above, especially here where plaintiffs have argued all along that the BLM's negligence was based, at least in part, on its failure to collaborate with DuPont.

In addition, the statute requires that the "cause of action" be an "intentional or reckless tortious act." Here, plaintiffs argue that both nuisance and trespass are intentional torts, in that both require proof of an intentional act. But that definition would sweep in much of negligence where the act, but not the consequence, is intended. As discussed above, the Legislature intended to "severely restrict" joint and several liability by imposing a requirement of an intentional or reckless tortious act. The definition that more accurately satisfies the Legislature's intent is found in the *Restatement of Torts (Second)* § 8A (1965), which defines intentional tort to mean "that the actor desires to cause [the] consequences of his act, or that he believes that the consequences are

**Memorandum Decision & Order - 6**

substantially certain to result from it." The Idaho Supreme Court has cited with approval this very section of the *Restatement*. *White v University of Idaho*, 768 P.2d 827, 828 (Id.Sup.Ct. 1989) (per curiam)(citing § 8A in holding that battery is an intentional tort because the tortfeasor must intend the consequences of his act – that is, he must intend the bodily contact). Neither nuisance nor trespass require proof that the tortfeasor intended the consequences of his act or believed that the consequences were substantially certain to result from it. *See Idaho Jury Instructions 4.40 (Trespass); I.C. § 52-101 (Nuisance).* Accordingly, the torts of nuisance and trespass are not "causes of action" under Idaho Code § 6-803(3) that constitute "intentional or reckless tortious acts" under Idaho Code § 6-803(5).

Plaintiffs cite *Moon v. North Idaho Farmers Assoc.*, 2002 WL 32129530 (Id.Dist.Ct. Nov. 30, 2002)(unpublished opinion) to support their claim that only an intentional act is required. That case was brought by eight plaintiffs with pulmonary disorders challenging the practice of field burning by farmers in northern Idaho. The court resolved various issues and noted that "there are other issues of law not thoroughly explored at this juncture which will need to be addressed in the future." *Id*. at *5. One of those open issues was whether plaintiffs could avoid the requirement of showing "which farmer's ash went in which plaintiff's lungs . . . due to joint and several liability." *Id.* The Court cited Idaho Code § 6-803(5) and observed that "[i]t could be that the farmers are acting in concert. Clearly field burning is an intentional act, and since nuisance and trespass have been alleged, it is a tortious act." *Id.* That was the full extent of the court's

**Memorandum Decision & Order - 7**

comments on subsection five, and it concluded by stating that "[c]ausation and apportionment do not need to be decided at this time. They have been briefly discussed only to illustrate the fairly complex issues of law in this case." *Id*. at *6.

Obviously, the statements in this unpublished opinion are dicta, made without the benefit of full briefing and a full record. In that sense, *Moon* stands in much the same posture as this Court's decision on the motion to amend, discussed above. In that decision, like *Moon*, the Court addressed the statute in a cursory fashion, without examining in depth the intent of the Legislature and the history of the statute to explain its ambiguous language. Accordingly, the Court finds *Moon* no more helpful than its own earlier decision.

**Motion to Strike**

Plaintiffs have moved to strike the Declaration of John Cantlon submitted by DuPont and Exhibit 2 of the Declaration of Kathryn Naegeli, including a letter from Steve Ahrens to the Honorable Denton Darrington purporting to explain the purpose of Idaho Code § 6-803(5). The Court did not consider either item, and so will deem the motion moot.

**Conclusion**

For all of the reasons cited above, the Court finds, as a matter of law, that Idaho Code §§ 6-803(3) & (5) is inapplicable to this case, and that defendants DuPont and the BLM are not jointly and severally liable. Accordingly, the Court will grant the motions filed by DuPont and the BLM, and deny the plaintiffs' motion.

**Memorandum Decision & Order - 8**

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motions for partial summary judgment filed by DuPont and the BLM (docket nos. 1754 & 1760) are GRANTED.

IT IS FURTHER ORDERED, that the motion for partial summary judgment filed by plaintiffs (docket no. 1742) is DENIED.

IT IS FURTHER ORDERED, that the motion to strike (docket no. 1800) is DEEMED MOOT.

DATED: **March 30, 2011**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge