UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TIMM ADAMS, et al., | Case No. 4:03-cv-00049-BLW |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER ON DUPONT'S MOTION FOR SUMMARY JUDGMENT ON THE PERCENTAGE LEASE ISSUE FOR THE POULSON AND WADA FARMS PLAINTIFFS** |
| v. | |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

## INTRODUCTION

The Court has before it a portion of DuPont's motions for summary judgment filed against plaintiffs that the Court will refer to as Jackman Poulson, Scott Poulson, and Wada Farms.[1]  In this decision, the Court will resolve DuPont's claim that any damages recovered by these plaintiffs must be reduced by the percentage of rent applicable to the fields in dispute.  While DuPont withdrew its challenges to certain fields in its final briefing, some fields remain in dispute.  With regard to those fields that remain in dispute, the Court will grant DuPont's motion for the reasons explained below.

## FACTUAL BACKGROUND

---

[1]  Jackman Poulson refers to Jackman and Lisa Poulson, and Jack Poulson Farms.  Scott Poulson refers to Scott E. Poulson, Dianne Poulson, and Scott E. Poulson Farms.  Wada Farms refers to Wada Farms, Inc., Cedar Farms, Inc., and Albert T. and Christine Wada.

**Jackman Poulson**

After briefing, the only remaining issues on the percentage rent issue relate to fields leased by Jackman Poulson to grow sugar beets in 2001 and 2002. One field was leased in 2001 from Everett Wood and the other in 2002 from Luis and Leah Johnson. While both leases at issue were written, neither was produced in discovery or submitted to the Court in conjunction with this motion. Poulson was questioned about the lease terms during this deposition, and was asked whether his 2001 lease on the Wood field was a "cash or crop share." *See Poulson Deposition (Dkt. 1990-60)*, at p. 40. Poulson answered that "I can't answer that for sure without looking, but I believe it was – gosh, I believe it was a crop share at that time." *Id*. The FSA Report signed by Poulson confirms that the landlord Wood was getting 20% of the crop revenue in 2001 on that sugar beet field. *See Exhibit 6 (Dkt. No. 1990-61)*. Poulson further testified that in 2002, the Johnson field was a "crop share," with the landlord Johnsons receiving 25 percent of the revenue from the sugar beets. *See Poulson Deposition, supra,* at pp. 40-41.

After DuPont filed this motion, Poulson responded with a declaration stating that his lease "was not a crop share" and that "I always paid cash, as opposed to crops, for my beet fields." *See Poulson Declaration (Dkt. No. 2013-22)* at ¶ 2. But even assuming Poulson paid his rent in cash rather than crops, his declaration does not rebut his deposition testimony, the FSA Report, and DuPont's allegations, that Poulson paid as rent to the Johnsons 25% of the crop revenue for 2002 sugar beets. And his declaration does not rebut the FSA Report and DuPont's allegations that Poulson paid as rent to Wood

20% of the crop revenue for 2001 sugar beets.  Thus, those percentage figures are unrebutted in this record.  Moreover, there is no evidence that Poulson paid as rent to either Wood or the Johnsons a fixed payment that did not depend on his crop production or revenue.

## Scott Poulson

After the briefing was completed on Scott Poulson's claim, the only issues remaining relate to Poulson's renting of the Bartholoma field in 2001.  At his deposition, Poulson was asked whether his Bartholoma lease was a crop share arrangement, and he responded that "without seeing the lease, I probably can't tell you because that one changed midstream too."  *See Scott Poulson Deposition (Dkt. No. 1990-63)* at p. 32.  He was then shown an FSA Report, signed by him, indicating that he was paying a rent of 25% of the crop revenue.  *See Exhibit 3 (Dkt. No. 1990-63).*  When asked if that FSA Report refreshed his recollection, Poulson answered that "[i]t appears to be a crop share, but I won't verify that without seeing the document [apparently referring to the lease]."  *Id*.

In its opening brief, DuPont alleges that Poulson paid 25% of the crop revenue as rent on the Bartholoma lease, and cites in support Poulson's deposition testimony and the FSA Report discussed above.  In responding, Poulson filed his declaration stating that on the Bartholoma lease, "the landlord was always paid in cash based on a percentage of crop proceeds."  *See Scott Poulson Declaration (Dkt. No. 2013-23)* at ¶ 7.

This declaration statement, in combination with the lack of any rebuttal to

DuPont's evidence of a 25% rent agreement, means that there is no genuine issue of material fact that Scott Poulson paid 25% of the crop proceeds as rent on the Bartholoma lease.

**Wada Farms**

DuPont's motion challenged three Wada Farms fields as being leased under percentage rent agreements. After all the briefing was completed, DuPont withdrew some of its challenges, leaving in dispute only the Billings parcel of the Billings/Parson field rented by Wada Farms in 2001. In his deposition, Albert Wada testified that on that field, his rent was a percentage of his crop proceeds – his rent for his potato crop was 25% of crop proceeds and his rent for grain was 33%. *See Wada Deposition* at p. 63. After DuPont filed this motion, Wada filed his declaration stating that in 2001, the year at issue here, he had "a cash lease, not a crop share." *See Wada Declaration (Dkt. No. 2001-18)* at ¶ 5. But assuming that Wada paid his rent with cash instead of crops does not alter in any way his earlier deposition testimony that his rent was a percentage of his crop proceeds. Wada has filed nothing that rebuts his deposition testimony – and DuPont's allegations – that his rent was a percentage of his crop proceeds. For other fields, no longer in dispute, Wada states in his declaration that "[r]ent was not based on a percentage of our actual crop income . . . ." *See Wada Declaration (Dkt. No. 2001-18)* at ¶ 7. But he makes no such representation for the Billings parcel of the Billings/Parson field. Finally, there is no evidence that Wada paid a fixed rent on the Billings parcel that did not depend on crop production or revenue.

**Factual Summary for Poulsons and Wada Farms**

For the Poulsons and Wada Farms, the record shows no genuine issue of material fact that for each, their rent on the fields in dispute was a percentage of crop proceeds and was not a fixed rent.

## LEGAL STANDARD

One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any

affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000). This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

## ANALYSIS

As discussed above, the Poulsons and Wada Farms agreed to pay a percentage of their crop revenue as rent. In this lawsuit, they claim they would have reaped more crop revenue in the absence of Oust contamination. If so, they would have paid more rent. Thus, any damages they receive must be reduced by the additional rent they would have owed. The lost rent would constitute damage to the landlord. But the landlord would be deprived of his claim if plaintiffs' recovery was not reduced by the additional rent they would owe, because DuPont cannot be forced to pay twice for the same damage. Thus, allowing plaintiffs to recover the full loss without reduction for the additional rent would grant a windfall to plaintiffs and unfairly deprive the landlord of a valid claim.

While the landlords are not pursuing their lost rent in this case, allowing plaintiffs to recover it still amounts to a windfall for plaintiffs. Granted, DuPont gets a windfall if the landlord does not seek his lost rent, but that windfall is due solely to the landlord's conduct and would not follow in every case.

**Memorandum Decision and Order - 6**

Plaintiffs argue that this issue is governed by *In re Watt*, 98.1 IBCR 16 (Bankr.D.Idaho 1998).  But the lease there contained both a fixed rent (due without regard to crop production or revenue) and a percentage rent.  *Id*. at 18.  The Bankruptcy Court declared the lease "a hybrid," finding that its ambiguous terms warranted a detailed examination into the intent of the parties.  *Id.* at 19.  *Watt* is inapplicable here, however, because these leases are not hybrids – no rent was due based on a fixed sum without regard to crop production or revenue.

Plaintiffs argue that these leases should be treated as fixed rent leases because they paid in cash rather than in crops.  But the amount of their cash rent payment depended on a percentage of the crop proceeds; it was not a fixed payment that was due without regard to crop production or revenue.  Hence, it makes no difference whether rent was paid with cash or crops.

Plaintiffs each filed declarations asserting that (1) they considered themselves the owner of the entire crop; (2) they paid all growing expenses; (3) the landlord had no control over any aspect of planting, irrigation, and harvesting; and (4) the landlord has been paid in full for the rent and has no claim or lien on the crops.  However, none of this alters the fact that these plaintiffs paid a percentage rent, not a fixed rent.  That fact makes all the difference, as explained above.

This motion raises a simple remedies issue with a simple answer:  More crops mean more rent, and any damage award must take this into account.  For that reason, the Court will grant this portion of DuPont's motion for summary judgment.

# ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that DuPont's motions for summary judgment (docket nos. 1978 & 1990) are GRANTED IN PART AND RESERVED IN PART. They are granted to the extent they seek to reduce any recovery by the percentage rent for the following fields: (1) With regard to the Jackman Poulson plaintiffs, the Wood field in 2001 and the Johnson field in 2002; (2) With regard to the Scott Poulson plaintiffs, the Bartholoma field in 2001; and (3) With regard to the Wada Farms plaintiffs, the Billings parcel of the Billings/Parson field. The motions are reserved in all other respects.

DATED:  October 6, 2011

**Honorable B. Lynn Winmill**
**Chief U. S. District Judge**